# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>STARION ENERGY INC., et al.,[1]<br><br>Debtors.<br><hr>STARTION ENERGY, INC., et al.<br><br>Plaintiffs,<br><br>vs.<br><br>THE COMMONWEALTH OF MASSACHUSETTS, MASSACHUSETTS ELECTRIC COMPANY D/B/A/ NATIONAL GRID, and NSTAR ELECTRIC COMPANY D/B/A EVERSOURCE ENERGY<br><br>Defendants. | Chapter 11<br><br>Case No. 18-12608<br><br><br><br>Adversary Case No.: |

## COMPLAINT

Plaintiff Debtor Starion Energy, Inc. and its affiliated entities (collectively, "Plaintiffs" or "Starion" and, together with their affiliated debtors and debtors in possession in the above-captioned chapter 11 cases, the "Debtors"), respectfully alleges for its complaint and claim of relief as follows:

## NATURE OF THE ACTION

---

[1] The Debtors and the last four digits of their respective tax identification numbers are: Starion Energy Inc. (0943); Starion Energy NY Inc. (4319); Starion Energy PA Inc. (1201). The Debtors' corporate headquarters is located at, and the mailing address for each Debtor is, 751 Straits Turnpike, Suite 2000, Middlebury CT 06762, Attn: Alexandrea Isaac, Esq.

1

1. This is an adversary proceeding commenced by the Debtors, pursuant to sections 105(a), 362(a) and 542(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 7001(7) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 65 of the Federal Rules of Civil Procedure made applicable hereto by Bankruptcy Rule 7065 seeking (i) injunctive relief under section 105(a), 362(a) and 542(a) of the Bankruptcy Code, to stay, retrain, and enjoin Defendants the Commonwealth of Massachusetts (the "Commonwealth"), Massachusetts Electric Company d/b/a/ National Grid ("National Grid"), and NSTAR Electric Company d/b/a Eversource Energy ("Eversource", collectively, "Defendants") by and through its Attorney General, Maura Healey (the "Attorney General") from unlawfully refusing to turn over certain property of the Debtors' estate consisting of funds in the possession of National Grid and Eversource. National Grid and Eversource are local electric distribution companies in Massachusetts and both hold assets for Starion.

2. The withheld funds are essential to the continued operation of the Debtors' power supply business. The funds paid to Debtors monthly by the National Grid and Eversource are used in the ordinary course of business to pay its debts as they come due, including salary and benefits for Debtors' employees. Without these funds, Debtors will go out of business and be forced to leave its twenty-seven employees out of work. Further, Debtors cannot continue operations without this money because it will not be able to pay the millions of dollars in costs each month to purchase wholesale energy, and thus, no energy will be available for its customers, forcing Starion to cancel its supply contracts with its approximate 47,000 customers have selected the Debtor as their retail energy supplier.

3. The Defendants unlawful possession, exercise of control and/or retention of the funds is in direct violation of section 362 of the United States Bankruptcy Code. Accordingly, Debtors respectfully seek the relief requested herein.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5. The venue of this action in this district is proper pursuant to 28 U.S.C. § 1409.

6. This adversary proceeding is initiated under Bankruptcy Rule 7001(7), and the relief requested herein may be ordered pursuant to sections 105(a), 362(a) and 542(a) of the Bankruptcy Code.

## THE PARTIES

7. Plaintiff Debtor Starion Energy, Inc. is a Delaware corporation with a principal place of business at 751 Straits Turnpike, Suite 2000, P.O. Box 845, Middlebury, CT 06762. Starion is a retail energy provider of electricity and natural gas to residential and business customers across twenty-seven utility territories located in twelve states and the District of Columbia.

8. Defendant Commonwealth is the Commonwealth of Massachusetts, by and through the Office of Attorney General Maura Healey.

9. Defendant Massachusetts Electric Company d/b/a National Grid is a Massachusetts corporation with a principal place of business at 40 Sylvan Road, Waltham, MA 02451. National Grid is a Massachusetts local electric distribution company.

10. Defendant NSTAR Electric Company d/b/a Eversource Energy is a Massachusetts corporation with a principal place of business at 80 Boylston Street, 17th Floor, Boston, MA 02199. Eversource is a Massachusetts local electric distribution company.

## FACTUAL BACKGROUND

11. On November 14, 2018 (the "Petition Date") contemporaneously with the filing of this Complaint, Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

12. Debtors are authorized to continue to operate its business and manage its properties as a debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

13. Massachusetts distribution companies, such as Eversource and National Grid, deliver electricity to electric customers in their respective service territories, and charge distribution rates to these customers. These rates are regulated and set by the Massachusetts Department of Public Utilities. All customers pay separate charges for electricity distribution and electricity supply services, such as those provided by Starion. The entities that market and sell electricity services directly to the customers are called "competitive suppliers." Competitive suppliers, such as Starion, typically do not generate electricity themselves but rather, buy electricity in the wholesale market and resell it to the retail customers. Under the Massachusetts purchase of receivables program, the electric utilities in Massachusetts, including National Grid and Eversource, pay to the suppliers, such as Starion, the energy supply portion of each Starion customer's bill as the bill is issued.

14. On October 15, 2018, the Commonwealth filed suit against Starion and others in the Superior Court of Massachusetts, Civil Action No. 18-3199H (the "Massachusetts Action"), alleging unfair or deceptive acts or practices in violation of G.L. c. 93A consumer protections act,

breach of the covenant of good faith and fair dealing, and violation of the Massachusetts Telemarketing Solicitation Act. Contemporaneously with the filing of their complaint, the Commonwealth filed an Emergency Motion for Attachment on Trustee Process to attach assets of Starion held by National Grid and Eversource, and an Emergency Motion for Preliminary Injunction. By filing the complaint and motions, the Commonwealth sought to secure credits due to Starion that are generated with Eversource and National Grid in the ordinary course of Massachusetts's purchase of receivables program. The Motion for Attachment sought to attach credits that were in the current position of National Grid and Eversource, and the Motion for Preliminary Injunction requested an order authorizing and requiring National Grid and Eversource to hold as additional security for the Commonwealth credits due to Starion that would come into National Grid and Eversource's possession in the future. In total, the Commonwealth sought to secure up to $30.6 million through its two Motions. The Superior Court granted the Commonwealth's Motions, ordering that the injunction will remain in full force and effect until November 16, 2018 at 5:00 PM or further order of the court. As of November 13, 2018, National Grid held $2,478,936.33 of Starion's assets. As of November 5, 2018, Eversource held $1,094,162.02 in Starion's assets. Thus, as of November 13, 2018, a total of $3,573,098.35 in Starion's assets were being held. The funds that energy customers pay to Eversource and National Grid, which in turn are paid to Starion, are Starion's only source of revenue and only available cash for operating its business. The held funds represent substantially all of Starion's operating capital. For this reason, access to its funds is essential for Starion to continue operating.

15. The Massachusetts Action largely revolves around Starion's variable rate product. Energy customers can choose variable basic service or fixed basic service. Variable basic service rates change every month to reflect anticipated wholesale prices of electricity those months, while

fixed basic service rates remain the same. Variable rates are legal in Massachusetts and are supported and regulated by the Massachusetts Department of Public Utilities ("DPU").

16.     Notwithstanding the support from the Massachusetts DPU, the Massachusetts Attorney General is determined to shut down the variable rate product and the competitive energy supplier business, recently making a statement to this effect at a press conference and press release. See "AG Healey Calls for Shut Down of Individual Residential Competitive Supply Industry to Protect Electric Customers," available at https://www.mass.gov/news/ag-healey-calls-for-shut-down-of-individual-residential-competitive-supply-industry-to-protect (last visited November 14, 2018). The Attorney General has also attempted to push legislation in Massachusetts to achieve her stated goal of shutting down every company like Starion. Ultimately, the Massachusetts legislature rejected this legislation. See S.B. No. 2545-2018, Amendment S2545-8-R1, "An Act to promote a clean energy future," 190th General Court (Ma. 2018).

17.     Further, a class action in the Connecticut Superior Court at Hartford, styled Gruber v. Starion Energy, Inc., Docket No. HHD-CV-17-6075408-S (the "Class Action"), also involved the variable rate product sold by Starion. Specifically, the Class Action alleged that Starion charged variable rate customers in the applicable service territories rates that were not, in fact, connected to the wholesale price for power. Instead, it was alleged that the rates went up to match spikes in the underlying market price but remained at the inflated rate even after the wholesale power price dropped, leading to premiums greater than the wholesale price itself. Starion has and continues to deny the allegations of the Class Action.

18. Nevertheless, the Class Action was able to be settled late 2017[2] and provided a settlement for all individual residential and small business consumers enrolled in a Starion variable rate electric plan in connection with property located in certain states, including Massachusetts, from 2010 through May 24, 2017. Therefore, the variable rate customers (the same customers at issue in the pending Massachusetts Action) have already received restitution, and any additional action in regard to the variable rate customers, such as the Massachusetts Action, is better characterized as wholly punitive in nature, pursued by the Massachusetts Attorney General in an effort to achieve her admitted goal of shutting down Starion and every other company like it.

19. The grant of the attachment and injunction against payment of Starion's funds in the possession of National Grid and Eversource has put severe strain on Starion and will put Starion out of business, and approximately twenty-seven people will be out of work as a result. Starion must purchase energy on the wholesale market in order to supply energy to its customers, and the approximate monthly cost for Starion to purchase this energy varies by month, which totaled $17.8 million for the first eight months of 2018 for Massachusetts customers alone, excluding the costs of Renewable Energy Certificates. Starion must use the funds it receives to pay the millions of dollars in costs each month required to purchase wholesale energy. Without funds, it cannot purchase energy and thus cannot supply energy to its customers. It is essential that Starion receive the $30.6 million due to it in order to keep its business running.

20. The funds received by National Grid and Eversource are used in the ordinary course of business to pay Starion's debts as they come due, including salary and benefits for Starion's employees. If the funds cease, Starion will be unable to maintain its employees and will be forced

---

[2] The Settlement Agreement is attached as "Exhibit B" to *Plaintiffs' Memorandum of Law in Support of its Motion for Temporary Restraining Order and a Preliminary Injunction*.

to lay them off and will be unable to pay all of its debts. Ultimately, Starion will cease to have purchasing power on the wholesale market, resulting in canceling its supply contracts with its customers. Starion's bankruptcy filing was precipitated by its failure to receive the funds due to it each month by National Grid and Eversource.

**COUNT I**

**VIOLATION OF SECTION 362(a) OF THE BANKRUPTCY CODE**
**(Against All Defendants)**

21. Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

22. Section 362(a) of the Bankruptcy Code operates as a stay, "applicable to all entities," of, *inter alia*, (i) "the commencement or continuation… of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;" and (ii) "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

23. The ability of Debtors to operate as an energy supplier has been, and will continue to be, significantly limited, and eventually, eliminated, by the withholding of the funds it is entitled to receive from National Grid and Eversource.

24. At the behest of the Commonwealth, Defendants Eversource and National Grid have retained, and will continue to retain, assets of Debtors; namely, the funds due to it each month. The violation of the automatic stay at this crucial time will ultimately result in Debtors laying off its twenty-seven employees, failure to pay its debts, and finally, result in Debtors going out of business, losing its purchasing power and being forced to cancel its supply contracts with its customers.

25. Plaintiffs are entitled to monetary damages and injunctive relief due to Defendants' violation of the automatic say under section 362 of the Bankruptcy Code, which ongoing violations include withholding of the Debtors' current and future assets.

## COUNT II

### INJUNCTIVE RELIEF UNDER SECTION 105(a) OF THE BANKRUPTCY CODE
**(Against All Defendants)**

26. Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

27. Section 105(a) of the Bankruptcy Code authorizes the court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

28. The relief requested herein is necessary to protect Debtors' ability to efficiently and effectively administer the above captioned cases and to preserve the property of its estate.

29. In the absence of entry of the requested injunctive relief, Debtors and its estate will be imminently and irreparably harmed.

30. The balance of harm is in favor of the Debtors. Absent the relief requested, Debtors will be greatly harmed. In contrast, the Defendants' will not suffer any irreparable harm.

31. The public interest weighs in favor of the issuance of a temporary restraining order and injunction. The injunctive relief requested herein will serve the public interest by allowing Debtors to continue to operate its business, retain its employees, and continue to provide electricity to its many customers. Additionally, the public interest will be served by promoting compliance with the congressional purpose of the automatic stay and furthering the Debtors' ability to administer the above captioned cases and to preserve its assets.

32. For the reasons stated herein, Debtors are entitled to a temporary restraining order and preliminary injunction staying, restraining, and enjoining the Defendants from withholding Debtors' assets.

## COUNT III

## INJUNCTIVE RELIEF UNDER SECTION 542(a) OF THE BANKRUPTCY CODE

33. Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

34. Section 541(a) of the Bankruptcy Code defines "property of the estate" to include, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case … wherever located and by whomever held," including interest in property acquired after the commencement of the case. 11 U.S.C. § 541(a)(1), (7).

35. Section 542(a) of the Bankruptcy Code provides that "an entity, other than a custodian in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title … shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a).

36. For the reasons stated herein, pursuant to section 542 of the Bankruptcy Code, Defendants should be required to immediately turn over the withheld funds to the Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, for all of the foregoing reasons, Plaintiffs respectfully request relief as follows:

1. A temporary restraining order and preliminary injunction staying, restraining, and enjoining the Defendants from withholding Debtors' assets, and compelling the Defendants to turn over the withheld assets to Debtors;

2. Awarding Plaintiffs monetary damages for ongoing violations of the automatic stay pursuant to section 362(a) of the Bankruptcy Code;

3. An order granting such other and further relief as the Court may deem just and proper.

Dated: November 14, 2018      GELLERT SCALI BUSENKELL & BROWN, LLC
Wilmington, Delaware

                          */s/ Ronald S. Gellert*
                          Michael Busenkell (No. 3933)
                          Ronald S. Gellert (No. 4259)
                          Sarah M. Ennis (No. 5745)
                          1201 N. Orange St., Ste. 300
                          Wilmington, Delaware 19801
                          Phone: (302) 425-5806
                          Facsimile: (302) 425-5814
                          Email: mbusenkell@gsbblaw.com
                                         rgellert@gsbblaw.com

                          *Proposed Attorneys for Starion Energy, Inc. Debtors and Debtors-in- Possession*