**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| | : Case No. |
| STARION ENERGY INC., <u>et al.</u>,[1] | : |
| | : |
| Debtors. | : |
| | : Adversary Case No.: |
| | : |
| STARTION ENERGY, INC., <u>et al.</u> | : |
| | : |
| Plaintiffs, | : |
| | : |
| vs. | : |
| | : |
| THE COMMONWEALTH OF | : |
| MASSACHUSETTS, MASSACHUSETTS | : |
| ELECTRIC COMPANY D/B/A/ NATIONAL | : |
| GRID, and NSTAR ELECTRIC COMPANY | : |
| D/B/A EVERSOURCE ENERGY | : |
| | : |
| Defendants. | : |
| | : |

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

---

[1] The Debtors and the last four digits of their respective tax identification numbers are: Starion Energy Inc. (0943); Starion Energy NY Inc. (4319); Starion Energy PA Inc. (1201). The Debtors' corporate headquarters is located at, and the mailing address for each Debtor is, 751 Straits Turnpike, Suite 2000, Middlebury CT 06762, Attn: Alexandrea Isaac, Esq.

## **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................................iii

PRELIMINARY STATEMENT .................................................................................................. 1

FACTUAL BACKGROUND ....................................................................................................... 2

ARGUMENT ................................................................................................................................ 6

    I.    Plaintiffs Will Suffer Irreparable Harm If Injunctive Relief Is Not Granted..................... 6

    II.    Plaintiffs Are Likely to Succeed on the Merits................................................................ 7

        A.    Defendants' Possession of Debtors' Assets Violates Section 362 of the Bankruptcy Code .............................................................................................................................. 7

        B.    Turnover of Property of the Estate.............................................................................. 8

    III.    The Balance of Hardships and Public Interest Clearly Favor Injunctive Relief........... 8

CONCLUSION ........................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Home Mortgage Corp. v. Showcase of Agents, L.L.C. (In re American Home Mortg. Holding)*,
   458 B.R. 161 (Bankr. D. Del. 2011) ....................................................................................8

*Am. Tel. & Tel. Co. v. Winback &Conserve Program, Inc.*,
   42 F.3d 1421 (3d Cir. 1994).................................................................................................9

*Broadstripe, LCC v. Nat'l Cable Television Coop. Inc. (In re Broadstripe, LLC)*,
   402 B.R. 646 (Bankr. D. Del. 2009) ....................................................................................6

*Hertz Corp. v. ANC Rental Corp.(In re ANC Rental Corp.)*,
   2002 U.S. Dist. LEXIS 9409 (D. Del. May 22, 2002)..........................................................6

*Kos Pharms., Inc. v. Andrx Corp.*,
   369 F.3d 700 (3d Cir. 2004).................................................................................................6

*N.W. Controls v. Outboard Marine Corp.*,
   317 F. Supp. 698 (D.Del. 1970)...........................................................................................7

*Tootsie Roll Indust., Inc. v. Sathers, Inc.*,
   666 F. Supp. 655 (D. Del. 1987)..........................................................................................6

*United States v. Bell*,
   414 F.3d 474 (3d Cir. 2005).................................................................................................6

**Statutes**

11 U.S.C. § 362(a)(3)..................................................................................................................7

Bankruptcy Code section 105(a)...........................................................................................7, 8

Bankruptcy Code Section 362 .............................................................................................9, 10

Bankruptcy Code section 362(a)................................................................................................7

Bankruptcy Code Section 542 ...................................................................................................7

Bankruptcy Code section 542(a)................................................................................................7

**Other Authorities**

Bankruptcy Rule 7065 ...............................................................................................................6

3-362 *Collier on Bankruptcy* § 362.03 (16th ed. rev. 2016)...........................................................9

Fed. R. Civ. P. 65(b) ..................................................................................................................6

Plaintiffs Debtor Starion Energy, Inc. ("Plaintiffs" or "Starion" and, together with their affiliated debtors and debtors in possession in the above-captioned chapter 11 cases, the "Debtors"), by and through its undersigned attorneys, respectfully submits this Memorandum of Law in support of its Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion") against Defendants the Commonwealth of Massachusetts (the "Commonwealth"), Massachusetts Electric Company d/b/a/ National Grid ("National Grid"), and NSTAR Electric Company d/b/a Eversource Energy ("Eversource", collectively, "Defendants"), concurrently filed herewith.

## PRELIMINARY STATEMENT

Plaintiffs are pursuing this action against Defendants in order to avoid going out of business. The Commonwealth sought, and was granted, injunctive relief against Starion in a Massachusetts state court whereby the Defendants National Grid and Eversource are under court order to retain certain property of the Debtors' estate consisting of funds in the possession of National Grid and Eversource. The withheld funds are essential to the continued operation of the Debtors' retail energy supply business. Without these funds, Debtors will go out of business and be forced to leave its twenty-seven employees out of work. Further, Debtors cannot continue operations without this money because it will not be able to pay the millions of dollars in costs each month to purchase wholesale energy, and thus, no energy will be available for its customers.

The funds paid to Debtors monthly by the National Grid and Eversource are used in the ordinary course of business to pay its debts as they come due, including salary and benefits for Debtor's approximately twenty-seven employees. Without the funds, Debtors will not have the funds to maintain its employees and will be forced to lay them off. Further, Debtors will cease to have purchasing power on the wholesale market, causing it to cancel its supply contracts with the 47,000 customers who have selected the Debtors as their retail energy supplier.

1

Clearly, these actions not only constitute unlawful facts to obtain possession of and exercise control over estate property in violation of the automatic stay provisions of the Bankruptcy Code, but also threaten Debtors' customer relations, financial performance, goodwill, and survival. Plaintiffs will be irreparably harmed absent this Court's issuance of (a) an order temporarily restraining, and, following a hearing, preliminarily enjoining (i) Defendants from withholding Plaintiffs' assets, and (ii) Defendants from violating the automatic stay provisions of section 362 of the Bankruptcy Code; and (b) on order compelling Defendants to turn over Debtors' assets.

## FACTUAL BACKGROUND

Massachusetts distribution companies, such as Eversource and National Grid, deliver electricity to electric customers in their respective service territories, and charge distribution rates to these customers. *See* Thomas Stiner Declaration, attached hereto as "Exhibit A", ¶ 5. These rates are regulated and set by the Massachusetts Department of Public Utilities. *Id.* All customers pay separate charges for electricity distribution and electricity supply services, such as those provided by Starion. *Id.* at ¶ 6. The entities that market and sell electricity services directly to the customers are called "competitive suppliers." *Id.* Competitive suppliers, such as Starion, typically do not generate electricity themselves but rather, buy electricity in the wholesale market and resell it to the retail customers. *Id.* Under the Massachusetts purchase of receivables program, the electric utilities in Massachusetts, including National Grid and Eversource, pay to the suppliers, such as Starion, the energy supply portion of each Starion customer's bill as the bill is issued. *Id.* at ¶ 8.

On October 15, 2018, the Commonwealth filed suit against Starion and others in the Superior Court of Massachusetts, Civil Action No. 18-3199H (the "Massachusetts Action"), alleging unfair or deceptive acts or practices in violation of G.L. c. 93A consumer protections act, breach of the covenant of good faith and fair dealing, and violation of the Massachusetts

Telemarketing Solicitation Act. Ex. A, ¶ 9. Contemporaneously with the filing of its complaint, the Commonwealth filed an Emergency Motion for Attachment on Trustee Process to attach assets of Starion held by National Grid and Eversource, and an Emergency Motion for Preliminary Injunction. *Id.* at ¶ 10. By filing the complaint and motions, the Commonwealth sought to secure credits due to Starion that are generated with Eversource and National Grid in the ordinary course of Massachusetts's purchase of receivables program. *Id.* The Motion for Attachment sought to attach credits that were in the current position of National Grid and Eversource, and the Motion for Preliminary Injunction requested an order authorizing and requiring National Grid and Eversource to hold as additional security for the Commonwealth credits due to Starion that would come into National Grid and Eversource's possession in the future. *Id.* at ¶ 11. In total, the Commonwealth sought to secure up to $30.6 million through its two Motions. On October 24, 2018, the Superior Court granted the Commonwealth's Motions, ordering that the injunction will remain in full force and effect until November 16, 2018 at 5:00 PM or further order of the court. *Id.* at ¶ 12. As of November 13, 2018, National Grid held $2,478,936.33 of Starion's assets. *Id.* at ¶ 13. As of November 5, 2018, Eversource held $1,094,162.02 in Starion's assets. *Id.* Thus, as of November 13, 2018, a total of $3,573,098.35 in Starion's assets were being held. *Id.*

The grant of the attachment and injunction against payment of Starion's funds in the possession of National Grid and Eversource has put severe strain on Starion's liquidity and ultimately will put Starion out of business, leaving twenty-seven people out of work as a result. *See* Ex. A. at ¶ 20. Starion must purchase energy on the wholesale market in order to supply energy to its customers, and the approximate monthly cost for Starion to purchase this energy varies by month, but was approximately $8.5 million in August, of which approximately $2.5 million was for wholesale purchases to serve Massachusetts customers. Ex. A. at ¶ 17. For the first eight

3

months of 2018, Starion's wholesale energy cost to supply its Massachusetts customers was $17.8 million, excluding the costs of Renewable Energy Certificates. *Id.*

 Starion must use the funds it receives to pay the millions of dollars in costs each month required to purchase wholesale energy. *Id.* at ¶ 18. Without funds, it cannot purchase energy and thus cannot supply energy to its customers. *Id.* It is essential that Starion receive the $30.6 million due to it in order to keep its business running.

The funds received by National Grid and Eversource are used in the ordinary course of business to pay Starion's debts as they come due, including salary and benefits for Starion's employees. *Id.* at ¶ 19-20. Without access to these funds, Starion will be unable to maintain its employees and will be forced to lay them off and will be unable to pay all of its debts. *Id.* Ultimately, Starion will cease to have purchasing power on the wholesale market, resulting in canceling its supply contracts with its customers. Ex. A. at ¶ 20.

By way of additional background, the Massachusetts Action largely revolves around Starion's variable rate product. Energy customers can choose variable basic service or fixed basic service. *Id.* at ¶ 7. Variable basic service rates change every month to reflect anticipated wholesale prices of electricity those months, while fixed basic service rates remain the same. *Id.* Variable rates are legal in Massachusetts and are supported and regulated by the Massachusetts Department of Public Utilities ("DPU"). *Id.* at ¶ 14.

Notwithstanding the support from the Massachusetts DPU, the Massachusetts Attorney General is determined to shut down the variable rate product and the competitive energy supplier business, recently making a statement to this effect at a press conference and press release. *See* "*AG Healey Calls for Shut Down of Individual Residential Competitive Supply Industry to Protect Electric Customers,*" available at https://www.mass.gov/news/ag-healey-calls-for-shut-down-of-

4

individual-residential-competitive-supply-industry-to-protect (last visited November 14, 2018); Ex. A at ¶ 15. The Attorney General has also attempted to push legislation in Massachusetts to achieve her stated goal of shutting down every company like Starion. Ex. A. at ¶ 16. Ultimately, the Massachusetts legislature rejected this legislation. *See* S.B. No. 2545-2018, Amendment S2545-8-R1, "An Act to promote a clean energy future," 190th General Court (Ma. 2018); Ex. A at ¶ 16.

Further, a class action in the Connecticut Superior Court at Hartford, styled *Gruber v. Starion Energy, Inc.*, Docket No. HHD-CV-17-6075408-S (the "Class Action"), also involved the variable rate product sold by Starion. Specifically, the Class Action alleged that Starion charged variable rate customers in the applicable service territories rates that were not, in fact, connected to the wholesale price for power. Instead, it was alleged that the rates went up to match spikes in the underlying market price but remained at the inflated rate even after the wholesale power price dropped, leading to premiums greater than the wholesale price itself. Starion has and continues to deny the allegations and the fundamental premise of the Class Action.

Nevertheless, the Class Action was able to be settled late 2017[2] and provided a settlement for all individual residential and small business consumers enrolled in a Starion variable rate electric plan in connection with property located in certain states, including Massachusetts, from 2010 through May 24, 2017. Therefore, the variable rate customers (the same customers at issue in the pending Massachusetts Action) have already received restitution, and any additional action in regard to the variable rate customers, such as the Massachusetts Action, is better characterized as wholly punitive in nature, pursued by the Massachusetts Attorney General in an effort to achieve her admitted goal of shutting down Starion and every other company like it.

---

[2] The Settlement Agreement is attached hereto as "Exhibit B".

## **ARGUMENT**

Plaintiffs have satisfied its burden to justify the issuance of a temporary restraining order against Defendants' improper and unlawful acts. The Court is empowered to issue a temporary restraining order pursuant to Federal Rule of Civil Procedure 65(b), made applicable to this proceeding by Bankruptcy Rule 7065. Fed. R. Civ. P. 65(b). This Court also has the power pursuant to section 105(a) of the Bankruptcy Code to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." *See* 11 U.S.C. § 105(a).

The standards for obtaining a temporary restraining order and a preliminary injunction are essentially the same. *Tootsie Roll Indust., Inc. v. Sathers, Inc.*, 666 F. Supp. 655, 658 (D. Del. 1987). A party must show (1) a reasonable likelihood of success on the merits; (2) that it will be irreparably harmed without such relief; (3) that such harm outweighs the potential harm to the nonmoving party; and (4) that granting the relief is in the public interest. *Id.*; *United States v. Bell*, 414 F.3d 474, 478 n.4 (3d Cir. 2005); *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). Courts must balance "the probabilities of ultimate success at final hearing with the consequences of immediate irreparable injury" in determining whether to approve injunctive relief. *Broadstripe, LCC v. Nat'l Cable Television Coop. Inc. (In re Broadstripe, LLC)*, 402 B.R. 646, 655 (Bankr. D. Del. 2009) (citation and internal quotations omitted). All four factors are satisfied here.

## I.     **Plaintiffs Will Suffer Irreparable Harm If Injunctive Relief Is Not Granted**

Plaintiffs will be forced out of business if the relief is not granted. For this reason, it is entitled to injunctive relief. *See Hertz Corp. v. ANC Rental Corp.(In re ANC Rental Corp.)*, 2002 U.S. Dist. LEXIS 9409, at *6 (D. Del. May 22, 2002). Plaintiffs cannot continue to operate their business without the flow of funds necessary to purchase wholesale power. This Circuit has held

6

that "[w]here the economic loss involved would be so great as to threaten destruction of the moving party's business, a preliminary injunction should be issued to maintain the status quo." *N.W. Controls v. Outboard Marine Corp.*, 317 F. Supp. 698, 703 (D.Del. 1970).

The attachment and injunction against payment of Debtors' monies in the possession of National Grid and Eversource will put Debtors out of business and cause twenty-seven people to be out of work. Debtors do not have any extra capital to keep its business running without the benefit of the money due to it, some $30.6 million in total. As described above, Debtors must purchase energy on the wholesale market to supply energy to its customers. This expenditure costs millions of dollars, and without money flowing into the company, Debtors will not be able to purchase energy and thus, no energy will be available for its approximate 47,000 customers.

## II.        Plaintiffs Are Likely to Succeed on the Merits

The Complaint and declaration set forth facts establishing that there is a reasonable likelihood that Plaintiffs will succeed on the merits of the claims set forth in the Complaint, including (i) violation of section 362(a) of the Bankruptcy Code; (ii) injunctive relief under section 105(a) of the Bankruptcy Code; and (iii) injunctive relief under section 542(a) of the Bankruptcy Code.

### A. Defendants' Possession of Debtors' Assets Violates Section 362 of the Bankruptcy Code

Section 362(a)(3) prohibits any act to "obtain possession of" or "exercise control over" property of the debtor's estate. 11 U.S.C. § 362(a)(3). A debtor's rights and interests in its assets in the form of funds is clearly property of the debtor's estate" expressly protected against termination or other interference by section 362(a)(3) of the automatic stay. *See* 11 U.S.C. § 362(a)(3) (the automatic stay protects against "any act to obtain possession of property of the estate

or of property from the estate or to exercise control over property of the estate"); *see also* 3-362 *Collier on Bankruptcy* § 362.03 (16th ed. rev. 2016).

Accordingly, once the debtor files its chapter 11 case, section 362(a)(3) of the stay prohibits any act by the non-debtor that deprives the debtor of its property. Such acts are automatically stayed, even if they might otherwise be authorized by contract or state law.

### B. Turnover of Property of the Estate

Section 542 of the Bankruptcy Code "requires an entity in possession of property of the estate to deliver the property … to the trustee." *Am. Home Mortgage Corp. v. Showcase of Agents, L.L.C. (In re American Home Mortg. Holding)*, 458 B.R. 161, 169 (Bankr. D. Del. 2011). Here, because the funds held by National Grid and Eversource are property of the estate, it must be turned over pursuant to section 542.

In this case, as discussed above, the funds held by National Grid and Eversource is the Debtors' property. It is undisputed that these funds belong to Debtors unconditionally. As such, Defendants must turn over this property, and their continued possession of the funds interferes with the property rights of the Debtors' estate, and violates the automatic stay imposed by section 362(a)(3) of the Bankruptcy Code.

### III.    The Balance of Hardships and Public Interest Clearly Favor Injunctive Relief

As described above, unless Defendants are enjoined from violating the automatic stay under section 362 of the Bankruptcy Code and compelled to turn over the funds, Plaintiffs will suffer immediate and irreparable harm. Debtors will go out of business without receiving the funds owed to it and will be completely unable to operate their business. As an energy supplier, Debtors purchase energy on the wholesale market and supplies that energy to its customers. If Debtors lack funds, it loses its purchase ability, and therefore will be unable to purchase power, and its

8

customers will be automatically transitioned back to the utility for basic service. The fact is that Starion must use the funds that flow to it from National Grid and Eversource in order to purchase the energy it needs each month to supply energy to its customers.

Further, without the funds from National Grid and Eversource, Debtor will be unable to pay salary and benefits for its twenty-seven employees and will ultimately be forced to lay off its employees. It will likewise be unable to pay its creditors and have to decide which to pay and not pay, but ultimately ceasing to make any payments.

On the other hand, Defendants will not be harmed at all if the injunction is granted. The Commonwealth will remain in the same position it has been before, and National Grid and Eversource will resume the status quo of paying Debtors the funds due to it on regular intervals. The Commonwealth claimed in the state court below that it was concerned about recovering a potential judgment because of concern that Debtors may leave the Commonwealth to avoid judgment. However, Debtors have not taken any action to remove itself from the Commonwealth and has no intention of so doing.

The Third Circuit has noted that as a practical matter, "if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Am. Tel. & Tel. Co. v. Winback &Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994). Withholding Debtors' assets does not serve the public interest in any way. Rather, it harms the public interest. Indeed, if the injunction is not granted, Debtors will be forced out of business and its customers will lose their preferred energy supplier. Further, Debtors' employees, approximately twenty-seven people, will lose their jobs should the injunction be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, Starion Energy, Inc. respectfully requests that the Court issue a temporary restraining order and preliminary injunction (a) staying, restraining, and enjoining the Defendants from withholding Debtors' assets, (b) enjoining Defendants from violating the automatic stay provisions of section 362 of the Bankruptcy Code; and (c) and order compelling the Defendants to turn over the withheld assets to Debtors.

Dated: November 14, 2018          GELLERT SCALI BUSENKELL & BROWN, LLC
       Wilmington, Delaware

                                */s/* Michael Busenkell

                                Michael Busenkell (No. 3933)
                                Ronald S. Gellert (No. 4259)
                                Sarah M. Ennis (No. 5745)
                                1201 N. Orange St., Ste. 300
                                Wilmington, Delaware 19801
                                Phone: (302) 425-5806 Facsimile: (302) 425-5814
                                Email:  mbusenkell@gsbblaw.com
                                                    rgellert@gsbblaw.com
                                                    sennis@gsbblaw.com

                                *Proposed Attorneys for Starion Energy, Inc. Debtors and Debtors-in- Possession*

10

# **<u>EXHIBIT A</u>**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>STARION ENERGY INC., et al.,[1]<br><br>Debtors.<br>_____<br><br>STARTION ENERGY, INC., et al.<br><br>Plaintiffs,<br><br>vs.<br><br>Defendants.<br>_____ | : Chapter 11<br>:<br>: Case No.<br>:<br>:<br>:<br>: Adversary Case No.:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## DECLARATION OF THOMAS STINER

I, Thomas Stiner, declare and state as follows:

1.      I the Controller of Starion Energy, Inc. ("Starion" or "Debtors"). I have worked for Starion since approximately September 2010.

2.      I make this Declaration in support of the *Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction* (the "Motion") and *Plaintiffs' Memorandum of Law* (the "Brief") in support thereof. [2]

---

[1] The Debtors and the last four digits of their respective tax identification numbers are: Starion Energy Inc. (0943); Starion Energy NY Inc. (4319); Starion Energy PA Inc. (1201). The Debtors' corporate headquarters is located at, and the mailing address for each Debtor is, 751 Straits Turnpike, Suite 2000, Middlebury CT 06762, Attn: Alexandrea Isaac, Esq.

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion or the Brief, as applicable.

3.       Except as otherwise indicated, all statements set forth in this Declaration are based upon: (a) my personal knowledge; (b) information supplied to me by other members of the Debtors' management that I believe in good faith to be reliable; (c) my review of relevant documents; or (d) my opinion based upon my experience and knowledge of the Debtors' operations.  If called upon to testify, I could and would testify competently to the facts set forth in this Declaration. The Debtors have authorized me to submit this Declaration.

4.       I received my degree from Bloomsburg University in 1976, and I have more than 25 years of experience in controllership. I am responsible for the financial accounting and treasury duties for Starion.

5.       Massachusetts distribution companies, such as Eversource and National Grid, deliver electricity to electric customers in their respective service territories, and charge distribution rates to these customers. These rates are regulated and set by the Massachusetts Department of Public Utilities.

6.        All customers pay separate charges for electricity distribution and electricity supply services, such as those provided by Starion. The entities that market and sell electricity services directly to the customers are called "competitive suppliers." Competitive suppliers, such as Starion, typically do not generate electricity themselves but rather, buy electricity in the wholesale market and resell it to the retail customers.

7.       Customers can choose variable basic service or fixed basic service. Variable basic service rates change every month to reflect anticipated wholesale prices of electricity those months, while fixed basic service rates remain the same.

8.      Under the Massachusetts purchase of receivables program, the electric utilities in Massachusetts, including National Grid and Eversource, generally pay to the suppliers, such as Starion, the energy supply portion of each Starion customer's bill as the bill is issued.

9.      On   October   15,   2018,   the   Commonwealth   of   Massachusetts   (the "Commonwealth") by and through its Attorney General, Maura Healey (the "Attorney General") filed suit against Starion and others in the Superior Court of Massachusetts, Civil Action No. 18-3199H, alleging unfair or deceptive acts or practices in violation of G.L. c. 93A consumer protections act, breach of the covenant of good faith and fair dealing, and violation of the Massachusetts Telemarketing Solicitation Act.

10.     Contemporaneously with the filing of their complaint, the Commonwealth filed an Emergency Motion for Attachment on Trustee Process to attach assets of Starion held by National Grid and Eversource, and an Emergency Motion for Preliminary Injunction.  By filing the complaint and motions, the Commonwealth sought to secure credits due to Starion that are generated with Eversource and National Grid in the ordinary course of Massachusetts's purchase of receivables program.

11.     The Motion for Attachment sought to attach credits that were in the current position of National Grid and Eversource, and the Motion for Preliminary Injunction requested an order authorizing and requiring National Grid and Eversource to hold as additional security for the Commonwealth credits due to Starion that would come into National Grid and Eversource's possession in the future.

12.     In total, the Commonwealth sought to secure up to $30.6 million through its two Motions. On October 24, 2018, the Superior Court granted the Commonwealth's Motions,

ordering that the injunction will remain in full force and effect until November 18, 2018 at 5:00 PM or further order of the court.

13.     As of November 13, 2018, National Grid held $2,478,936.33 of Starion's assets. As of November 5, 2018, Eversource held $1,094,162.02 in Starion's assets. Thus, as of November 13, 2018, a total of $3,573,098.35 in Starion's assets were being held.

14.     The aforementioned variable rate product is essentially what is at issue in the Massachusetts litigation. Variable rates are legal in Massachusetts and are supported and regulated by the Massachusetts Department of Public Utilities ("DPU").

15.     Notwithstanding the support from the Massachusetts DPU, the Massachusetts Attorney General is determined to shut down the variable rate product and the competitive energy supplier business, recently making a statement to this effect at a press conference and press release. *See* "*AG Healey Calls for Shut Down of Individual Residential Competitive Supply Industry to Protect Electric Customers*," available at https://www.mass.gov/news/ag-healey-calls-for-shut-down-of-individual-residential-competitive-supply-industry-to-protect (last visited November 14, 2018).

16.     The Attorney General has also attempted to push legislation in Massachusetts to achieve her stated goal of shutting down every company like Starion. Ultimately, the Massachusetts legislature rejected this legislation. *See* S.B. No. 2545-2018, Amendment S2545-8-R1, "An Act to promote a clean energy future," 190th General Court (Ma. 2018).

17.     Starion must purchase energy on the wholesale market in order to supply energy to its customers, and the approximate monthly cost for Starion to purchase this energy varies by month, but was approximately $8.5 million in August, of which approximately $2.5 million was for wholesale purchases to serve Massachusetts customers. For the first eight months of 2018,

Starion's wholesale energy cost to supply its Massachusetts customers was $17.8 million, excluding the costs of Renewable Energy Certificates.

18.     Starion must use the funds it receives to pay the millions of dollars in costs each month required to purchase wholesale energy. Without funds, it cannot purchase energy and thus cannot supply energy to its customers.

19.     The funds received from National Grid and Eversource are used in the ordinary course of business to pay Starion's debts as they come due, including salary and benefits for Starion's employees.

20.     Without access to the funds received from National Grid and Eversource, Starion will be unable to maintain its employees and will be forced to lay them off and will be unable to pay all of its debts. Ultimately, Starion will cease to have purchasing power on the wholesale market, resulting in canceling its supply contracts not only with the Massachusetts residential customer, but *all* Starion customers. Starion currently has approximately 31,173 residential customers, of whom approximately 15,509 who began with Starion as fixed rate customers and did not purchase a variable rate product and therefore have nothing to do with the Massachusetts Action, but will nonetheless be negatively affected by having their supply contracts canceled.

21.     The funds that energy customers pay to Eversource and National Grid, which in turn are paid to Starion, are a significant source of revenue and available cash for operating its business. The held funds represent a substantial component of Starion's operating capital. For this reason, access to its funds is essential for Starion to continue operating.

22.     Attached as Exhibit A is a spreadsheet containing a cash flow projection analysis. Except for the non-payment of the funds from National Grid and Eversource, the analysis assumes a business-as-usual scenario, wherein payments are made to vendors for customer acquisition, the

existing selling, general and administrative cost structure is maintained and so on. The forecast shows the estimated cash balance at the end of each month from November 2018 through April 2019. Although there are a number of assumptions that can vary from actual conditions, the analysis shows the cash balance at the end of December 2018 to be negative $3.8 million.

23.    The Massachusetts injunction requires Starion to continue to provide services to its customers while the case is pending and the funds are being held. However, as described above, Starion requires the cash flow from the funds in order to pay its expenses and purchase power on the wholesale market both in Massachusetts and elsewhere. Therefore, by virtue of the funds being held, Starion will very soon become unable to pay its expenses to keep servicing its customers and will be forced to shut down entirely.

I declare under penalty of perjury under laws of the United States of America that the foregoing is true and correct.

Dated: 11/14/18

THOMAS STINER

# **<u>EXHIBIT A</u>**

Exhibit

Under Current Order- 100% POR Diverted

| | Nov | Dec | Jan | Feb | Mar | Apr |
|---|---|---|---|---|---|---|
| MA revenues | 3,016,086 | 3,546,298 | 4,127,551 | 3,411,362 | 3,479,262 | 2,901,199 |
| MA COGS | 2,707,560 | 3,786,145 | 5,376,538 | 4,450,739 | 3,579,099 | 2,691,979 |
| Cash under current order | 407,814 | (3,809,601) | (4,535,033) | (6,664,743) | (14,031,347) | (20,385,584) |

Proposed Treatment-90% of POR Paid

| | Nov | Dec | Jan | Feb | Mar | Apr |
|---|---|---|---|---|---|---|
| MA revenues | 3,016,086 | 3,546,298 | 4,127,551 | 3,411,362 | 3,479,262 | 2,901,199 |
| MA COGS | 2,707,560 | 3,786,145 | 5,376,538 | 4,450,739 | 3,579,099 | 2,691,979 |
| Cash with 90% of revenues paid | 3,122,291 | 2,096,545 | 5,085,909 | 6,026,424 | 1,791,156 | (1,952,002) |

# **<u>EXHIBIT B</u>**

Docket No. X03 HHD-CV-17-6075408-S

| | | |
|---|---|---|
| LYDIA GRUBER, | : | SUPERIOR COURT |
| on behalf of herself and all others | : | |
| similarly situated, | : | JUDICIAL DISTRICT OF HARTFORD |
|     *Plaintiff,* | : | |
| | : | |
|     *v.* | : | |
| | : | |
| STARION ENERGY, INC. | : | |
|     *Defendant.* | : | |

## SETTLEMENT AGREEMENT

### DEFINITIONS

1. As used in this Settlement, the following terms have the meaning specified below:

a. "Action" means the action entitled Gruber v. Starion Energy, Inc., Docket No. HHD-CV-17-6075408-S, pending in the Connecticut Superior Court at Hartford.

b. "Claims Period" shall mean the period of time during which the Settlement Class Members must file a Claim Form and shall begin within 20 days of the Notice Date and shall conclude on the later of: (i) the Effective Date or (ii) one-hundred and twenty (120) days following the Notice Date.

c. "Class Member(s)" means all persons who are members of the Class as described in Paragraph 20 of this Settlement.

d. "Class Period" shall mean the entire period during which Defendant sold electricity supply to Class Members in any of the Service Territories.

e. "Class Representatives" shall mean Lydia Gruber, Louise Ferdinand, Melissa Penellatore, Diana Windley, Case Martin, and Douglas Siedenburg.

f. "Complaint" means the Class Action Complaint dated January 30, 2017, which has a Return Date of February 21, 2017.

g. "Court" means the Connecticut Superior Court, Judicial District of Hartford.

h. "Defendant's Counsel" means Keith E. Smith and Charles A. Zdebski of Eckert Seamans Cherin & Mellott, LLC, Two Liberty Place, 50 South 16th St., 22nd Floor, Philadelphia, PA 19102.

i. "Defendant" or "Starion" means Starion Energy, Inc., acting by itself and through its subsidiaries and related entities, including but not limited to Starion Energy PA, Inc., and Starion Energy NY, Inc.

j. "Effective Date" of the Settlement shall occur after the Court has entered its Final Approval Order and such order has become final upon the later of: (1) the period within which to file an appeal has expired without the filing of any appeal, or (2) in the event that an appeal from the Final Approval Order is filed, a final order has been entered disposing of the appeal and any time for seeking leave to appeal or times for further appeal has expired..

k. "Escrow Account" means an interest-bearing account established by Plaintiffs' Counsel in accordance with the terms and conditions set forth in Paragraphs 27-28 of this Settlement.

l. "Final Fairness Hearing" means the hearing in the Action for the Court to consider final approval of this Settlement and the entry of Judgment.

m. "Judgment" means the Final Judgment to be entered in the Action in connection with the Settlement after the Final Fairness Hearing.

n. "Notice" means the Notice of Pendency of Proposed Settlement of Class Action, Settlement Hearing and Fee and Expense Application to be sent to Class Members, which will be sent to Class Members pursuant to the Preliminary Approval Order.

o. "Notice Date" shall mean the date, not more than 45 days after the entry of the Preliminary Approval Order, when Notice to the Class shall be substantially complete.

p. "Plaintiff" means Lydia Gruber.

q. "Preliminary Approval Order" means the Order Preliminarily Approving Settlement and Providing for Notice to the Class Members.

r. "Proposed Class Counsel" means Robert A. Izard, Craig A. Raabe and Seth R. Klein of Izard, Kindall & Raabe, LLP, 29 South Main St, Suite 305, West Hartford, CT, 06107 and Jeremy Heisler, Andrew Melzer, Michael D. Palmer and David Tracey, of Sanford Heisler Sharp, LLP, 1350 Avenue of the Americas, 31st Floor, New York, NY, 10019.

s. "Released claims" means all claims and other matters released in and by Paragraphs 41-44 of this Settlement.

t.  "Released Parties" means Starion and each of its present and former parents, subsidiaries, divisions, affiliates, predecessors, successors and assigns and all of the present and former directors, officers, employees, agents, attorneys, and shareholders of Starion and each of its and their present and former parents, subsidiaries, divisions, affiliates, predecessors, successors and assigns.

u.  "Releasing Parties" means Plaintiff and the Class Members who have not opted out of the Settlement and each of their respective spouses, executors, representatives, heirs, predecessors, successors, bankruptcy trustees, guardians, wards, joint tenants, tenants in common, tenants by the entirety, co-borrowers, agents, attorneys and assigns, and all those who claim through them or who assert claims on their behalf.

v.  "Service Territories" means Connecticut, District of Columbia, Delaware, Illinois, Maryland, Massachusetts, New Jersey, New York, Ohio and Pennsylvania.

w.  "Settlement Administrator" means the entity retained by Plaintiffs to provide notice of the proposed settlement to Class Members and to administer the claims and settlement fund distribution process.

x.  "Settlement Fund" means the $2,580,000.00 to be paid by Starion and placed in escrow in accordance with the terms of this Settlement.

y.  "Settling Parties" means Plaintiff and Defendant.

4

## RECITALS

**GRUBER FEDERAL CASE**

2.      Plaintiff, on behalf of herself and all others similarly situated, commenced an action captioned *Gruber v. Starion energy, Inc.,* Docket No. 3:14-cv-01828, on or about December 5, 2014, in the United States District Court for the District of Connecticut.  Plaintiff filed an Amended Complaint in that docket on April 28, 2015 (the "Gruber Federal Complaint").    Defendant moved to dismiss the Gruber Federal Complaint on June 22, 2015; Plaintiff opposed Defendant's motion on July 13, 2015; and the Court held oral argument and denied Defendant's motion on August 13, 2015.

3.      In connection with the Gruber Federal Complaint, the parties conducted extensive document and fact discovery, including production of approximately 5000 pages of documentation by Starion (including relevant financial and transactional spreadsheets) and fact depositions of Plaintiff Gruber and of Thomas Stiner, Defendant's CFO and corporate designee.

4.      The parties also conducted extensive expert analyses and discovery in connection with the Amended Federal Complaint, including service of an expert report and damages analysis by Plaintiff and the deposition of one of Plaintiff's retained experts by Defendant.

**WINDLEY FEDERAL CASE**

5.      On or about November 13, 2014, Diana Windley, a New York resident, commenced an action captioned Diana Windley v. Starion Energy, et al*.,* Docket No. 1:14-cv-09053, in the United States District Court for the Southern District of New York

5

("Windley Action"). Plaintiff filed amended complaints on or about February 26, 2015, August 24, 2015, and September 28, 2015, which, among other things, added New Jersey resident Douglas Siedenburg and Massachusetts resident Case Martin as plaintiffs.

6. On or about November 2, 2015, Defendant moved to dismiss the Windley Action. Plaintiff opposed Defendant's motion on November 24, 2015, and the Court held oral argument on December 17, 2015. On January 8, 2016, the court dismissed Douglas Siedenburg's claims, but otherwise denied Defendant's motion.

7. On January 27, 2016, Douglas Siedenburg filed a Motion for Clarification of Order of Dismissal and requested that the court issue a Rule 54(b) certification permitting him to immediately appeal. On or about March 4, 2016, the court denied the motion, requiring Mr. Siedenburg to postpone his appeal.

8. The parties in the Windley Action conducted extensive document and fact discovery, including production of approximately 3000 pages of documentation by Starion and fact depositions of Diana Windley and Case Martin.

**SETTLEMENT NEGOTIATIONS**

9. Plaintiff and Defendant engaged in several negotiation sessions, both telephonically and in-person, concerning the allegations in the Gruber Federal Complaint and Windley Action, including two in-person mediation sessions on October 26, 2016, and November 7, 2016, before Judge Diane M. Welsh (Ret.), United States Magistrate Judge for the Eastern District of Pennsylvania.

10.     The parties reached a settlement in principle at the November 7, 2016, mediation session of the Class Claims.  The parties thereafter signed a memorandum of understanding dated December 29, 2016.  For non-substantive reasons unrelated to the merits of Plaintiff's claim, and with the informed consent of United States District Court Judge Stefan R. Underhill (the presiding judge in the Gruber federal action), Plaintiff agreed, *inter alia,* that Plaintiff would withdraw the Gruber Federal Complaint and file a substantively identical state complaint in Connecticut state court.

11.     On December 22, 2016, the Windley Action was stayed based upon the parties' settlement negotiations.

**CONNECTICUT SUPERIOR COURT CLASS ACTION**

12.     Plaintiff subsequently initiated this Action on or about January 30, 2017, by filing the State Complaint in the Superior Court for the Judicial District of Hartford.

13.     In the State Complaint, Plaintiff alleges that she entered into a contract with Defendant for electricity supply which permitted Defendant to charge a variable rate that fluctuated to reflect changes in wholesale power market.  Plaintiff further alleges that the variable rates Starion in fact charged her – and other variable rate customers in the Service Territories – were not, in fact, connected to the wholesale price for power. Instead, the rates went up to match spikes in the underlying market price but remained at the inflated rate even after the wholesale power price dropped, leading to premiums greater than the wholesale price itself.  The Complaint alleges that these practices constituted (i) a violation of the unfair trade practices statutes in Connecticut and each

of the other Service Territories as well as (ii) a violation of the covenant of good faith and fair dealing.

14.    Starion denies the allegations of the Complaint and believes that the claims in the Action are without merit.  Nevertheless, for the purpose of avoiding the burden, expense, risk, and uncertainty of continuing to litigate the Action, and for the purpose of putting to rest the controversies raised or which could have been raised in the Action, and without any admission of any liability or wrongdoing whatsoever, Starion desires to settle the Action and all claims asserted or which could have been asserted in or subsumed by the Action on the terms and conditions set forth in this Settlement.

15.    Plaintiff, the Class Representatives, and Proposed Class Counsel believe that the claims asserted in the Action have merit.  Plaintiff, the Class Representatives, and Proposed Class Counsel, however, recognize and acknowledge the risks, expense and length of continued proceedings necessary to prosecute the Action against Starion through motion practice, trial, and potential appeals.  Proposed Class Counsel have also taken into account the uncertain outcome and the risks of further litigation, the difficulties and delays inherent in such litigation, and Defendant's ability to pay a judgment substantially in excess of the Settlement.  Proposed Class Counsel believe that the Settlement confers substantial benefits upon the Settlement Class.  Plaintiff, the Class Representatives, and Proposed Class Counsel have determined that the Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

16.     The Settling Parties, by and through their respective duly authorized counsel of record, hereby agree that the Action, and all matters and claims in the Complaint, and all matters and claims arising out of or related to the allegations or subject matter of the Complaint and Action, shall be settled, compromised, and dismissed, on the merits and with prejudice, upon the below terms and conditions.

## TERMS OF THE SETTLEMENT

17.     In consideration of the complete and final settlement of the Action, and under the terms and conditions herein, the Settling Parties agree as follows.

**Settlement Consideration**

18.    <u>Monetary Consideration:</u>    Subject to approval by the Court, the total monetary consideration to be provided by Defendant pursuant to the Settlement shall be two million, five hundred and eighty thousand dollars ($2,580,000.00). The Settlement Fund shall include all sums to be paid for a complete release of all claims of the Class and as to all Service Territories, including all attorneys' fees, attorneys' costs, and notice and claims administration costs, all as to be approved by the court.  Starion will advance the cost of Notice to the Class as set forth in Paragraphs 21-26 below. Payment of the remainder of the Settlement Fund shall be made following the conclusion of the Claims Period and within ten (10) days of the Claims Administrator providing the parties with a declaration that the Claims Administration of the class settlement is complete, which declaration shall include a summary of the claims made and a spreadsheet of the amounts to be distributed to each Claimant.

19.    <u>Non-Monetary Consideration</u>:    Starion agrees to the entry of injunctive relief in the form of contract language modification to its variable rate contracts, which contract modifications shall be subject to regulatory approval. The variable rate contract's language in each jurisdiction in the Service Territories shall be modified to include a prominently-displayed provision stating that savings under the contract are not guaranteed.    The variable rate contracts in the Service Territories will be further modified to include a provision that provides further explanation of market conditions to identify the specific electricity service markets in which Starion operates that may be factors in Starion's determination of electricity rates.    This provision and the injunctive

10

relief to be agreed upon shall be conditioned upon Starion obtaining regulatory approval of the contract modifications, if necessary, in each jurisdiction in which it operates and in which the contract language will be in effect. Regulatory approval of any contract modifications shall take precedence over injunctive relief, and the parties agree to seek modification of any injunctive relief to comply with the requirements of any regulatory agency. The injunction will provide that Starion has six months from the Effective Date to seek regulatory approval, if necessary, to implement any agreed upon variable rate contract modifications. The injunction relief will expire three years from the Effective Date. The Parties additionally agree to the releases and covenants set forth in Paragraphs 41-44 below.

**Certification of the Settlement Class**

20.    For settlement purposes only, the Settling Parties agree to request that the Court certify a Settlement Class defined as follows:

> All persons who were or are customers of Starion Energy, Inc.; Starion Energy PA, Inc.; or Starion Energy NY, Inc. in Connecticut, the District of Columbia, Delaware, Illinois, Maryland, Massachusetts, New Jersey, New York, Ohio, or Pennsylvania, and were enrolled in a Starion variable rate electric plan at any time within the applicable statutes of limitations preceding the filing of this action through and including the date upon which the Court issues the Preliminary Approval Order. (the "Class").

> Excluded from the Settlement Class are Starion Energy, Inc.; Starion Energy PA, Inc.; or Starion Energy NY, Inc.; any of their respective parents, subsidiaries, or affiliates; any entity controlled by any of them; any officer, director, employee, legal representative, predecessor, successor, or assignee of Starion Energy, Inc.; Starion Energy PA, Inc.; or Starion Energy NY, Inc.;

11

and any current or former customer who previously received from
Starion Energy, Inc.; Starion Energy PA, Inc.; or Starion Energy
NY, Inc. any payment resolving a claim similar to those asserted in
the Class Actions; any current or former customer who is party to a
Starion variable rate electric plan contract that contains an
arbitration clause (unless the customer expressly waives any and
all arbitration rights that may exist under that arbitration clause);
and the judicial officers assigned to this litigation; and members of
their staffs and immediate families.

Starion agrees to waive any arbitration clause that may exist in any Claimant's contract

only with regard to Claimants who submit valid Claim Forms that waive the Claimant's

own arbitration rights and only for the period of time covered by the Class Period, and

for no other persons or time periods whatsoever.

**Preliminary Approval & Notice to the Class**

21.    The Parties shall file a motion for preliminary approval in the Action, which

motion shall attach this Settlement. The Parties shall request that, after the Notice is

given, the Court, in accordance with Section 9-9 of the Connecticut Rules of Court hold

the Final Fairness Hearing and finally approve the Settlement and enter the Judgment.

At or after the Final Fairness Hearing, Proposed Class Counsel will request that the

Court approve the proposed Plan of Allocation, the Fee and Expense Application and

the Class Representatives' Case Contribution Awards.

22.    Plaintiff shall retain a Settlement Administrator to be approved by the

Court.

23.    The parties will cooperate in developing a form of notice acceptable to the

Settlement Administrator and the court that will provide a fair, reasonable and adequate

notice to class members in the most efficient and cost-effective manner possible.  The notice may include postcard notice to class members at the best available address and notice by email where reliable email addresses are available.

24.     Starion will cooperate with Proposed Class Counsel and the Settlement Administrator to provide class member data for notice and claims purposes in a form that the data can be utilized by plaintiffs' experts and/or the Settlement Administrator in providing notice to class members and for administering the class settlement and Settlement Fund distribution.  To the extent within its custody or control, Starion, within ten (10) business days of the entry of the Preliminary Approval Order and to the extent not previously provided, shall provide Plaintiff with the following information from its business records for each class member: (a) name; (b) current, or most recent, address; (c) and working email addresses, where Starion has them.

25.     Within thirty (30) days of the entry of the Preliminary Approval Order, the Settlement Administrator shall (a) post the Class Notice, substantially in the form shown as Exhibit A, on a dedicated Settlement Website; (b) send the email notice, substantially in the form shown in Exhibit B, to all Class Members for whom Defendant provided an email address pursuant to Paragraph 24 above or for whom an email address is otherwise available; and (c) mail a copy of the postcard notice, substantially in the form shown in Exhibit C, to all Class Members for whom Defendant did *not* provide an email address but for whom mailing addresses are available.  To the extent that any email notice pursuant to clause (b) above is returned to the Settlement Administrator as undeliverable, the Settlement Administrator shall send postcard notice to such Class

Member(s) where a mailing address is available within ten (10) days of the notification of non-delivery.  Notice to the Class shall be substantially completed by the Notice Date.

26.     It is expressly understood and agreed to by Settling Parties that neither Plaintiff, nor Class Representatives, nor Proposed Class Counsel are responsible for payment of the fees, costs, or expenses associated with effectuation of notice. The Settlement Administrator shall be paid from the Settlement Fund Escrow Account.

**Establishment of the Settlement Fund**

27.     Within ten (10) business days of the entry of the Preliminary Approval Order, Plaintiff shall establish an escrow account into which Plaintiff shall deposit all payments made by Defendant under this Settlement as provided pursuant to paragraph 18..

28.     Except as provided pursuant to paragraphs 33-36 below, funds in the escrow account shall be kept in a federally-insured account or invested in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof (the "Instruments"), and shall reinvest the proceeds of these Instruments as they mature in similar Instruments at their current market rates.   Any fees to be paid to third parties in connection with the investment of the Settlement Fund as required by the terms of this Paragraph will be paid from the Settlement Fund.

29.    No monies shall be disbursed from the Settlement Fund, except as provided in this Settlement, by an order of the Court, or by the joint written instructions of Defendants' Counsel and Proposed Class Counsel.

30.    The Settlement Fund held in the Escrow Account shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the Court's jurisdiction, until such time as such funds shall be distributed pursuant to the Settlement or further order of the Court.

31.    The Parties agree to treat the Settlement Fund at all times as a "qualified settlement fund" within the meaning of United States Treasury Reg. § 1.468B-1.  All taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Defendant and Defendant's Counsel with respect to income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes ("Taxes") shall be paid out of the Settlement Fund.  Defendants and Defendant's Counsel shall not have any liability or responsibility for the Taxes.  The Settlement Fund shall indemnify and hold Defendants and Defendant's Counsel harmless for Taxes (including, without limitation, Taxes payable by reason of any such indemnification).  Further, Taxes and expenses incurred in connection with the preparation of any tax returns or compliance with tax laws shall be treated as, and considered as, Third Party Notice and Claim Administration Costs and shall be timely paid out of the Settlement Fund without prior order from the Court.  Defendant and its counsel are not responsible

and shall not have any liability for the administration of the Settlement Fund.   The

Parties agree to cooperate with each other and with their respective tax attorneys and

accountants to the extent reasonably necessary to carry out the provisions of this

Section.

32.     In the event that the Judgment is not entered or, if it is entered, it does not

become final, or if the Settlement is voided pursuant to Paragraphs 37-40 hereof, the

then-existing Settlement Fund (less amounts then due and owing for Third Party Notice

and Claims Administration Costs) shall be returned and paid to Defendant free and

clear of any further obligations pursuant to this Settlement.

**Distribution From the Settlement Fund**

33.     Prior to the Effective Date, Proposed Class Counsel may only direct the

disbursement of money from the Settlement Fund for the following purposes:

   a. Payment of costs reasonably incurred by the Settlement Administrator for

      the purposes of providing Notice to the Class in accordance with the terms

      of this Settlement, on an as-incurred basis;

   b. For payment of taxes and expenses of the Settlement Fund.

34.     The parties will cooperate in developing a claim form acceptable to the

Settlement Administrator and the court that will provide a method for the Claimant to

provide the information required of the Settlement Administrator to process the Claim

Form and make distributions from the Common Fund in the most efficient and cost-

effective manner possible (the "Claim Form"). The Claim Form will require the Claimant

to sign (or, in the case of claims made on-line on the Claims Administrator's website,

electronically sign), the Claim Form with an attestation under penalty of perjury that: (i) they (or their business) are/were a named account holder with Starion Energy, Inc.; Starion Energy PA, Inc.; or Starion Energy NY, Inc. during the Class Period; (ii) they did not already receive a payment resolving a claim similar to those asserted in the Class Actions; (iii) they did not have and are not now seeking to have their account balance discharged due to bankruptcy or receivership; and (iv) they acknowledge that submission of the Claim Form waives any opt-out rights that they may otherwise have. To be considered valid and timely, all Claim Forms must be postmarked or electronically submitted during the Claims Period.

35.    Within thirty (30) days of the Effective Date, Starion shall provide Plaintiff with the total number of kwh of power that each Class Member who submitted a valid Claim Form used during each "Eligible Month" (defined in paragraph 36(d) below).

36.    After Effective Date, Proposed Class Counsel may direct the disbursement of money from the Settlement Fund for the following additional purposes:

   a. For payment of the costs reasonably incurred by the Settlement Administrator for purposes of notice and claims administration, on an as-incurred basis.

   b. As provided in paragraph 47, for the payment of any court-approved awards to Class Representatives;

   c. As provided in Paragraph 46, for payment of any court-approved awards of attorneys' fees and/or expenses to Proposed Class Counsel.

d. For payment of shares of the Settlement Fund (net of all attorneys' fees and expenses) to Class Members who have submitted valid Claim Forms, based upon the power used by each claimant in each "Eligible Month" multiplied by the amount of the over or under charge in each month to determine an amount of damages for each class member each month. The "Eligible Months" shall be agreed upon by the parties based upon a simple calculation of the months in which Starion's electricity sales exceeded its total costs plus margin.  In the event that claims made exceed the value of the net Settlement Fund after deducting all Settlement Costs (including the costs of notice and administration of the settlement and attorneys' fees and costs incurred by Class Counsel and Service Awards as may be approved by the Court), each Claimant would receive a *pro rata* share of the net Settlement Fund based on his or her calculated loss.  However, Claimants whose calculated loss totals less than $3 will not receive any payment. Distribution of the Common Fund may include electronic payments in a manner proposed by the Claims Administrator and approved by the Court.

e. As provided in paragraphs 50-52, for payment of any portion of the Settlement Fund remaining after all other obligations have been satisfied to a *cy pres* recipient.

**Termination of Settlement**

37.     If the Court does not certify the Settlement Class, or changes or alters the composition of the Settlement Class in any way not acceptable to Defendant or Plaintiffs, in their sole discretion, or otherwise fails to enter a Final Approval Order substantially in the form attached hereto as Exhibit D, Defendant and Plaintiffs each shall have the right to terminate the Settlement by serving on the opposing Settling Party and filing with the Court a notice of termination within ten (10) days of its receipt of notice of the Court's ruling.

38.     Plaintiff and Defendant shall cooperate to achieve approval of the Settlement.   In the event that the Court does not approve the Settlement, and the Court's determination is upheld on appeal to the highest applicable judicial authority, the Settlement shall terminate and shall be void and of no further effect.   Any certification of the Settlement Class by the Court will be vacated; and the Settling Parties will be returned to their positions quo ante with respect to all facets of the Action.

39.     In the event of a termination, the balance of the Escrow Account shall be immediately refunded and remitted to Defendant.   Defendant shall have no right to seek reimbursement from Plaintiffs or Proposed Class Counsel for any funds distributed from the Escrow Account or for money spent or costs incurred for Notice or Claims Administration.

40.     The Agreement and the settlement may be voided, at the election of Starion and in its sole discretion, if Settlement Class Members with claims for Damage Remedy totaling more than $250,000.00 have opted out of the Settlement Class.

Copies of all opt-out forms received shall be delivered to counsel for Defendant no later than fourteen days before the Final Fairness Hearing.

**Releases**

41.    As of the Effective Date, the Releasing Parties, and each of them, shall be deemed to have fully released and forever discharged the Released Parties, and each of them, of and from any and all rights, claims, liabilities, action, causes of action, costs and attorneys' fees, demands, damages and remedies, known or unknown, liquidated or unliquidated, legal, statutory, declaratory or equitable, that Releasing Parties ever had, now have, or may have in the future, that result from, arise out of, are based upon, or relate to in any way the conduct, omissions, duties or matters alleged or that could have been alleged in the Complaint, concerning variable rates for electricity supply during the Class Period.

42.    Plaintiff, Class Representatives, and other Class Members may hereafter discover facts other than or different from those that they know or believe to be true with respect to the subject matter of the claims released pursuant to the terms of this Paragraph, or the law applicable to such claims may change. Nonetheless, Plaintiff, Class Representatives and each Class Member who does not opt-out expressly agrees that, as of the Effective Date, he/she shall have waived and fully, finally, and forever settled and released any known or unknown, suspected or asserted or unasserted, liquidated or unliquidated, contingent or non-contingent claims with respect to all of the matters described in or subsumed by this Paragraph and Paragraph 41 of this

20

Settlement. Further, each of those individuals agrees and acknowledges that he/she shall be bound by this Settlement, including by the releases contained in this Paragraph and in Paragraph 41 of this Settlement, and that all of their claims in the Action shall be released, whether or not such claims are concealed or hidden; without regard to subsequent discovery of different or additional facts and subsequent changes in the law; and even if he/she never receives actual notice of the Settlement, never submits a Claim Form, or never receives a distribution of funds from the Settlement.  The foregoing shall be construed to operate as a waiver and release of any and all provisions, rights and benefits conferred either by Section 1542 of the California Civil Code, or by any statute of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code.

43.    Releasing Parties, and each of them, shall be enjoined from prosecuting any equitable or legal proceeding against any Released Party with respect to any of the Released Claims or any of the actions taken by a Released Party that are authorized or required by this Settlement Agreement or by the Judgment.  The Court shall retain jurisdiction to enforce the judgment, releases, and bar to suits contemplated by this Settlement and by the Judgment.

44.    Defendant, and successors in interest thereto, covenants and agrees (i) not to file or maintain against any Plaintiff(s), Class Representative, Plaintiff's Counsel, or Proposed Class Counsel for any claim arising from or related to the prosecution or resolution of this Action and stipulate and agree that the covenants and agreements

herein shall be a complete defense to any such claims against any Plaintiff(s), Class Representative, Plaintiff's Counsel, or Proposed Class Counsel.

## No Admission of Liability

46. The Parties understand and agree that this Settlement Agreement embodies a compromise settlement of disputed claims, and that nothing in this Settlement Agreement, including the furnishing of consideration for this Settlement Agreement, shall be deemed to constitute any finding of wrongdoing by any of the Released Parties, or give rise to any inference of wrongdoing or admission of wrongdoing or liability in this or any other proceeding. This Settlement Agreement and the payments made hereunder are made in compromise of disputed claims and are not admissions of any liability of any kind, whether legal or factual. Moreover, Defendant specifically denies any such liability or wrongdoing. Neither the fact nor the terms of this Settlement Agreement shall be offered or received in evidence, in any action or proceeding for any purpose, except (i) in an action or proceeding arising under this Settlement Agreement or arising out of or relating to the Preliminary Approval Order or the Final Order, or (ii) in an action or proceeding where the Releases or the Covenants Not to Sue provided pursuant to this Settlement Agreement may serve as a bar to the prosecution of such action or proceeding as well as to any recovery in such action or proceeding.

## Attorneys' Fees, Expenses and Case Contribution Awards

46. Proposed Class Counsel shall petition the Court for reimbursement of reasonable costs and expenses and for an award of attorneys' fees, not to exceed one-

third of the Settlement Fund. Defendants will not take any position on any fee motion submitted by Class Counsel, provided that Class Counsel does not move for an award of attorneys' fees in excess of one-third of the Settlement Fund, and Defendants will not take any position on any motion for reimbursement of litigation expenses reasonably incurred in prosecuting the Action. Any award of Attorneys' fees and expenses shall be paid from the Escrow Account in its entirety within ten (10) days of the Order awarding fees and expenses.

47.    Application for Case Contribution Awards. Class Counsel may apply to the Court for a Case Contribution Award for Class Representatives payable from the Settlement Fund in an amount not to exceed $2000 each, and Class Representatives shall be entitled to receive such compensation from the Settlement Fund to the extent awarded by the Court (or as modified, if necessary, following any appeal). Defendants expressly agree to take no position with respect to the Case Contribution Award. No Case Contribution Award may be paid to any Class Representative before the Effective Date.

48.    Post-Award Expenses. Class Counsel may make a supplemental application to the Court for an award of expenses with respect to post-Settlement proceedings and administration, and any such award shall be payable from the Settlement Fund.

49.    In the event that the Court or any court with appellate jurisdiction over this Action fails to award attorneys' fees and expenses pursuant to Paragraph 46 hereof or to award a Case Contribution Award pursuant to Paragraph 47 hereof, or fails to awards

attorneys' fees and expenses in the amount sought by Class Counsel or to award Case Contribution Award in the amount sought by Class Representatives, such decision shall not provide cause for Plaintiff to withdraw, void or nullify this Settlement Agreement.

## Cy Pres Distribution

50.     If there are funds remaining in the Escrow Account after the distributions are completed pursuant to Paragraphs 33-36 of this Settlement, the Settlement Administrator shall distribute all such remaining funds through the cy pres distribution. All funds resulting from returned or un-cashed checks shall remain in an account maintained by the Settlement Administrator for six months, at which time the money will be distributed through the cy pres distribution.  In the event that all funds remitted from Escrow Account to the Settlement Administrator are paid to Class Members, no cy pres distribution will be made.

51.     The cy pres shall be distributed to a nonprofit organization(s) selected by Class Counsel with Defendant's consent, which shall not be unreasonably withheld, and approved by the Court.  Should the parties be unable to agree on the recipient(s) they shall present their respective prospective recipients to the Court, with any supporting materials and argument, and the Court shall decide the recipient(s).

52.     The cy pres distribution shall be paid as soon as is practicable following the distribution of funds to Class Members.

## General Provisions

53.     If contacted about this Agreement, the settlement contemplated hereby or the subject of this settlement, Starion shall refer potential Settlement Class Members to

24

the Claims Administrator, Class Counsel or the established toll free number and/or website applicable to this settlement.

54.    A Special Master will be selected by the Parties and presented to the Court for approval at the Final Fairness Hearing.    The Special Master shall be responsible for resolving disputes arising as a result of the claims process, if any.  Fees, if any, of the Special Master shall be paid from the Settlement Fund.

55.    This Settlement constitutes the entire agreement between and among the Settling Parties with respect to the settlement of the Action.  This Settlement shall not be construed more strictly against one party than another merely because it may have been prepared by counsel for one of the Settling Parties, it being recognized that, because of the arm's length negotiations resulting in the Settlement, all Settling Parties hereto have contributed substantially and materially to the preparation of the Settlement. This Settlement supersedes all prior negotiations and agreements and may not be modified or amended except by a writing signed by the Settling Parties, Proposed Class Counsel, and Defendant's Counsel.

56.    Each Settling Party to the Settlement warrants that they are acting on their independent judgment and upon the advice of his, her or its own counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other person, other than the warranties and representations expressly made in the Settlement. All captions used in the Settlement are for reference and convenience only and shall not be used in interpreting the Settlement.

57.    The Settling Parties, Proposed Class Counsel, and Defendant's Counsel shall not engage in any conduct or make any statements, directly or indirectly, (a) to encourage, promote, or solicit Class Members or their counsel to request exclusion from the Settlement Class or to object to the Settlement.

58.    The Settlement shall be binding upon, and shall inure to the benefit of, the Settling Parties, the Class Members, the Releasees, and the respective heirs, administrators, successors, and assigns of each of them. Except as provided in the foregoing sentence, nothing in this Settlement is intended to create any legally enforceable rights in any other person or to make any other person, including, but without limitation, an agreed-upon recipient of cy pres funds pursuant to Paragraphs 44-46 of this Settlement, a beneficiary of this Settlement.

59.    The Settling Parties, Proposed Class Counsel, and Defendant's Counsel: (i) acknowledge that it is their intent to consummate this agreement; (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement, and to exercise their best efforts to accomplish the terms and conditions of this Settlement; and (iii) shall execute all documents and perform any additional acts necessary and proper to effectuate the terms of the Settlement.

60.    This Settlement shall be construed, enforced and administered in accordance with the laws of the State of Connecticut without reference to its conflict of laws principles.

61.    All Settling Parties and Class Members submit to the continuing jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

62.    This Settlement may be executed in counterparts, each of which shall be deemed to be an original, but all of which together constitute one and the same instrument.

IN WITNESS WHEREOF, the Settling Parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

Dated this the _____th day of April, 2017.

Robert A. Izard
Craig A. Raabe
Seth R. Klein
IZARD KINDALL & RAABE LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
Tel: (860) 493-6292


Jeremy Heisler
Andrew Melzer
Michael Palmer
David Tracey
SANFORD HEISLER SHARP, LLP
1350 Avenue of the Americas, 31st Fl.
New York, NY 10019
Tel: (646) 402-5650

*Attorneys for Plaintiff and the Class*

STARION ENERGY, INC.
P.O. Box 845
Middlebury, CT 06742

By (print): _Ruzhdi Dauti_

Title (print): _President_

*Defendant*


APPROVED AS TO FORM:


Keith E. Smith
Charles A. Zdebski
ECKERT SEAMANS CHERIN & MELLOTT, LLC
Two Liberty Place

27

# EXHIBIT A

<u>Superior Court for the State of Connecticut</u>
<u>Judicial District of Hartford</u>

# If you were a customer of Starion Energy's variable rate electricity supply services you could receive a cash payment from a class action settlement.

*A court authorized this Notice. This is not a solicitation from a lawyer.*

- A settlement has been reached with Starion Energy, Inc. and its related entities Starion Energy PA, Inc. and Starion Energy NY, Inc. (collectively, "Starion" or "Defendant") about the electricity supply rates charged by Starion to its *variable rate* customers. The settlement offers payments to eligible claimants who were variable electric rate customers through **[_date of preliminary approval]**.

- Your legal rights are affected whether you act, or do not act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| SUBMIT A CLAIM | Fill out a form to qualify for a payment. |
| EXCLUDE YOURSELF | Get no benefits from the settlement. This is the only option that allows you to start or remain part of any other lawsuit against Starion about the legal claims in this case. |
| OBJECT | Write to the Court about why you do not like the settlement. |
| GO TO A HEARING | Ask to speak in Court about the fairness of the settlement. |
| DO NOTHING | Give up your rights to sue Starion about the legal claims in this case. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the settlement. If it does, and after any appeals are resolved, benefits will be distributed to those who qualify. Please be patient.

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** ...................................................................................................... **PAGE 3**

    1. Why is this Notice being provided?

    2. What is this lawsuit about?

    3. Why is this a class action?

    4. Why is there a settlement?

**WHO IS IN THE SETTLEMENT** ....................................................................................... **PAGE 3**

    5. How do I know if I am part of the settlement?

    6. Are there exceptions to being included?

    7. What if I am not sure whether I am included in the settlement?

**THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY** ..................................... **PAGE 4**

    8. What does the settlement provide?

    9. How will the claims be decided?

**HOW TO GET BENEFITS—SUBMITTING A CLAIM** ................................................................. **PAGE 5**

    10. How do I ask for a payment?

    11. When will I get my payment?

    12. What am I giving up to get a payment?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ............................................................... **PAGE 6**

    13. If I exclude myself, can I get anything from this settlement?

    14. If I do not exclude myself, can I sue later?

    15. How do I get out of the settlement?

**THE LAWYERS REPRESENTING YOU** .............................................................................. **PAGE 6**

    16. Do I have a lawyer in the case?

    17. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** ................................................................................. **PAGE 7**

    18. How do I tell the Court if I do not like the settlement?

    19. What is the difference between objecting and asking to be excluded?

**THE COURT'S FAIRNESS HEARING**.................................................................................. **PAGE 8**

    20. When and where will the Court decide whether to approve the settlement?

    21. Do I have to come to the hearing?

    22. May I speak at the hearing?

**IF YOU DO NOTHING** ................................................................................................. **PAGE 8**

    23. What happens if I do nothing?

**GETTING MORE INFORMATION** ...................................................................................... **PAGE 8**

    24. How do I get more information?

## BASIC INFORMATION

| 1.   Why is this Notice being provided? |
|---|

A Court authorized this Notice because you have a right to know about a proposed settlement of this class action lawsuit and about all of your options before the Court decides whether to give "final approval" to the settlement. This Notice explains the lawsuit, the settlement, your legal rights, what benefits are available, who may be eligible for those benefits, and how to get them.

Judge Ingrid Moll of the Complex Litigation Docket of the State of Connecticut Superior Court, Judicial District of Hartford, is overseeing this class action. The case is known as *Gruber v. Starion, Inc.*, Case No. X03-HHD-CV-17-6075408-S.

The person who sued, Lydia Gruber, is called the "Plaintiff," and the company she sued, Starion, is called the "Defendant."

| 2.   What is this lawsuit about? |
|---|

The lawsuit alleges that Starion falsely claimed in its contracts with customers that its variable rate for electricity supply services would "reflect" the "cost of electricity" that Starion "obtained from all sources," which Plaintiff alleges constituted a representation that Starion's price for variable rate electricity would fluctuate in accord with Starion's cost of procuring that electricity. Plaintiff further alleges that, contrary to this representation, Starion in practice failed to decrease its variable rate when wholesale market rates went down. The lawsuit further alleges that Starion's variable rate customers suffered monetary damages as a result of this alleged misconduct.

Starion denies all of Plaintiff's claims and says that it did nothing wrong. Starion specifically states that it followed all terms of its contracts with customers, and that Plaintiff's claims are without factual or legal merit.

| 3.   Why is this a class action? |
|---|

In a class action, one or more people called "Settlement Class Representatives" (in this case Lydia Gruber, Louise Ferdinand, Melissa Penellatore, Diana Windley, Case Martin, and Douglas Siedenburg) assert claims on behalf of themselves and other people who have similar claims. All of these people are a "Settlement Class" or "Settlement Class Members." One court resolves the issues for all Class Members, except for those who timely exclude themselves from the Class.

| 4.   Why is there a settlement? |
|---|

The Court did not decide in favor of Plaintiff or Defendant. Instead, both sides agreed to settle this case to avoid the cost and risk of a trial. The proposed settlement does not mean that any law was broken or that the Defendant did anything wrong. Defendant denies all legal claims in this case. Settlement Class Representatives and their lawyers think the proposed settlement is best for all Settlement Class Members. A more detailed history of this case is set forth in the Settlement Agreement, available at **[_www. WEBSITE.com]**.

## WHO IS IN THE SETTLEMENT

To see if you will be affected by the settlement or if you can get a payment from it, you first have to determine if you are a Settlement Class Member.

**5.   How do I know if I am part of the settlement?**

The Court decided that the Settlement Class includes all individual residential and small business consumers enrolled (either initially or through "rolling over" from a fixed rate plan) in a Starion variable rate electric plan in connection with a property located within Connecticut, the District of Columbia, Delaware, Illinois, Maryland, Massachusetts, New Jersey, New York, Ohio or Pennsylvania (the "Service Territories") at any time from 2010 through and including the **[_PRELIMINARY APPROVAL DATE]**.

**6.   Are there exceptions to being included?**

Yes. The following are not included in the settlement: Starion, the officers, directors, employees, and legal representatives of Starion; any entity in which Starion has a controlling interest; any parent, subsidiary, affiliate, predecessor, successor or assignee of Starion; the judge to whom this case is assigned and any member of the judge's immediate family; any current or former customer who previously received from Starion Energy, Inc.; Starion Energy PA, Inc.; or Starion Energy NY, Inc. any payment resolving a claim similar to those asserted in this class action; any current or former customer who is party to a Starion variable rate electric plan contract that contains an arbitration clause (unless the customer expressly waives any and all arbitration rights that may exist under that arbitration clause); any heirs, assigns and successors of any of the above persons or organizations in their capacity as such; and anyone who timely submits a valid request to be excluded from the Settlement Class (*see* "Excluding Yourself from the Settlement," below).

**7.   What if I am not sure whether I am included in the settlement?**

If you are not sure whether you are in the Settlement Class, or have any other questions about the settlement, visit the settlement website at www.WEBSITE.com or call the toll free number, 1-8NN-NNN-NNNN.

## THE SETTLEMENT BENEFITS — WHAT YOU GET IF YOU QUALIFY

If the settlement is approved and becomes final, it will provide benefits to Settlement Class Members.

**8.   What does the settlement provide?**

Starion has agreed to pay a total of $2,580,000 into a Settlement Fund.  Following the Fairness Hearing (as discussed in "The Court's Fairness Hearing" below) and "final approval" by the Court, the Settlement Fund will pay cash awards to Class Members who have filed a valid claim, as well as (a) attorneys' fees, costs, and expenses; (b) incentive payments to the Settlement Class Representatives; and (c) third party costs to provide notice and to administer the settlement. Details on all of the settlement benefits are in the Settlement Agreement, which is available at www.WEBSITE.com.

**9.   How will the claims be decided?**

Upon final approval, individual Starion customers who have filed a Claim Form ("claimants") will be eligible to receive a share of the Settlement Fund based upon the power used by each claimant in each "Eligible Month" multiplied by the amount of the over- or under- charge in each month (as determined by the parties with assistance from electricity industry experts) to determine an amount of damages for each class member each month.  The "Eligible Months" shall be based upon a simple calculation of the months in which Starion's electricity sales exceeded its total costs plus margin based upon Starion's financial records.  In the event that claims made exceed the value of the net Settlement Fund after deducting all Settlement Costs (including the costs of notice and administration of the settlement and attorneys' fees and costs incurred by Class Counsel and Service Awards as may be approved by the Court), each Claimant would receive a *pro rata* share of the net Settlement Fund based on his or her calculated loss.  Because each potential claimant used a different amount of electricity and because we do not know the number of eligible claimants who will file valid claims, we cannot estimate the per-person recovery.  However, claimants whose calculated loss totals less than $3 will not receive any payment.

## HOW TO GET BENEFITS – SUBMITTING A CLAIM

### 10.  How do I ask for a payment?

To ask for a payment you must complete and submit a Claim Form.  You may visit www.WEBSITE.com to fill out a Claim Form online or to download a Claim Form that you can print.  You can also request that a Claim Form be mailed to you by calling 1-8NN-NNN-NNNN.

The deadline to file your claim online is **Month DD, 20YY**.  If filing a paper claim, you must mail your Claim Form postmarked no later than **Month DD, 20YY** to:

> ***Starion* Claims Administrator**
> P.O. Box xxxx
> City, ST  xxxxx-xxxx

### 11.  When will I get my payment?

Claimants who submit valid Claim Forms may receive payments by mail or by an electronic payment method proposed by the Claims Administrator and approved by the Court.  Starion customers who do not submit Claim Forms will not receive a payment.  Payments will be made only if the Court grants "final approval" to the settlement and after any appeals are resolved (*see* "The Court's Fairness Hearing," below).  It is uncertain when any appeals made will be resolved, and resolving them can take time.  Please be patient.

### 12.  What am I giving up to get a payment?

If the settlement becomes final, Settlement Class Members who submit Claim Forms or do nothing at all will be releasing Starion from all of the claims described and identified in paragraphs __-__ of the Settlement Agreement. This means you will no longer be able to sue Starion regarding any of the claims described in the Settlement Agreement.

The Settlement Agreement is available at www.WEBSITE.com. The Settlement Agreement provides more detail regarding the release and describes the Released Claims and Released Parties with specific descriptions in necessary, accurate legal terminology, so read it carefully. You can talk to the law firms representing the Settlement Class listed in the section "The Lawyers Representing You" for free or you can, at your own expense, talk to your own lawyer if you have any questions about the Released Claims or what they mean.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want to participate in this proposed settlement and you want to keep the right to sue Starion about the legal issues in this case, then you must take steps to get out of the settlement. This is called asking to be excluded from, or sometimes called "opting out" of, the Settlement Class.

### 13.  If I exclude myself, can I get anything from this settlement?

No. If you exclude yourself, you may not apply for any benefits under the settlement and you cannot object to the proposed settlement. If you ask to be excluded, however, you may sue or be part of a different lawsuit against Starion in the future. You will not be bound by anything that happens in this lawsuit.

**14.  If I do not exclude myself, can I sue later?**

No.  Unless you exclude yourself, you give up the right to sue Starion for all of the claims that the proposed settlement resolves. You must exclude yourself from this Settlement Class to start your own lawsuit or be part of any different lawsuit relating to the claims in this case.

**15.  How do I get out of the settlement?**

To exclude yourself from the proposed settlement, you must send a letter or other written document by mail saying that you want to be excluded from *Gruber v. Starion* and you must list your public electric utility account number(s) for the period(s) during which you were enrolled with Starion Energy.  In addition, your exclusion request must include, for each account listed:

   (1) The full names and current addresses of everyone whose name is on the account.
   (2) A statement of intention to exclude everyone whose name is on the account from the Settlement Class.
   (3) The signature of everyone whose name is on the account.

Be sure to include your full name, address, signature, and date.  You must mail your request for exclusion postmarked by **Month DD, 20YY** to:

> ***Starion* Claims Administrator**
> P.O. Box xxxx
> City, ST  xxxxx-xxxx

You cannot ask to be excluded on the phone, by email, or at the website.

## THE LAWYERS REPRESENTING YOU

**16.  Do I have a lawyer in the case?**

The Court appointed Izard Kindall & Raabe LLP, West Hartford, CT, 06107, 860-493-6292 and Sanford Heisler, LLP, 1350 Avenue of the Americas, 31st Floor, New York, NY, 10019, 646-402-5650  as "Settlement Class Counsel" to represent you and other Settlement Class Members. You will not be charged for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your own expense.

**17.  How will the lawyers be paid?**

Settlement Class Counsel will ask the Court for attorney's fees not to exceed one-third (33⅓%) of the Settlement Fund, along with payment of reasonable costs and expenses. Settlement Class Counsel will also request an incentive payment of $2,000 for the Settlement Class Representatives Lydia Gruber, Louise Ferdinand, Melissa Penellatore, Diana Windley, Case Martin, and Douglas Siedenburg for their services on behalf of the Settlement Class.  The Court will award amounts it deems appropriate.  Payments approved by the Court will be made from the Settlement Fund.

Please visit www.WEBSITE.com for additional detail on Settlement Class Counsel's attorney's fee request.

## OBJECTING TO THE SETTLEMENT

**18.  How do I tell the Court if I do not like the settlement?**

You can object to the settlement if you do not like some part of it.  You must give reasons why you think the Court should not approve the settlement. To object, send a letter saying that you object to the proposed settlement in *Gruber v. Starion*, Case No. X03-HHD-CV-17-6075408-S. You must include:

(1)  your full name, address, and telephone number;
(2)  all reasons for the objection;
(3)  the names of all attorneys representing you, if any;
(4)  the names of all attorneys representing you who will appear at the Fairness Hearing (*see* "The Court's Fairness Hearing," below), if any;
(5)  a list of all people you will call to testify at the Fairness Hearing, if any;
(6)  a statement saying whether you will appear and/or testify at the Fairness Hearing; and
(7)  your signature or the signature of your duly authorized attorney or other duly authorized representative (along with documentation of such representation).

Mail the objection to each of the following three addresses so that it is postmarked no later than **Month DD, 20YY**.

| COURT | SETTLEMENT CLASS COUNSEL | DEFENDANT'S COUNSEL |
|---|---|---|
| Chief Clerk's Office Hartford Judicial District State of Connecticut Superior Court 95 Washington Street Hartford, CT 06106 | Seth R. Klein, Esq. Izard Kindall & Raabe LLP 29 South Main Street Suite 305 West Hartford, CT 06107 | Keith Smith, Esq. Eckert Seamans Cherin & Mellott LLC Two Liberty Place 50 South 16th St., 22nd Floor Philadelphia, PA 19102 |

**19.  What is the difference between objecting and asking to be excluded?**

Objecting is simply telling the Court that you do not like something about the settlement. You can object only if you stay in the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class. If you exclude yourself, you cannot object to the settlement and you will not be eligible to apply for any benefits under the settlement because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

**20.  When and where will the Court decide whether to approve the settlement?**

The Court will hold a Fairness Hearing at **__:__ .m.** on **Month DD, 20YY**, at the Connecticut Superior Court, Judicial District of Hartford, Court Room No. **000**, 95 Washington Street, Hartford, CT 06106. At the Fairness Hearing, the Court will consider whether the proposed settlement is fair, reasonable, and adequate. The Court may also consider Settlement Class Counsel's request for attorneys' fees, costs, and expenses, and incentive awards. If there are objections, the Court will consider them. After the Fairness Hearing, the Court will decide whether to approve the proposed settlement and how much to award to Settlement Class Counsel as fees, costs, and expenses, and incentive awards.

The Fairness Hearing may be moved to a different date without additional notice, so it is recommended that you periodically check www.WEBSITE.com for updated information.

**21.  Do I have to come to the hearing?**

No. Settlement Class Counsel will answer any questions the Court may have.  However, you are welcome to attend the hearing at your own expense. If you send in a written objection, you do not have to come to the Fairness Hearing to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend the Fairness Hearing, but their attendance is not necessary.

**22.  May I speak at the hearing?**

Yes.  To speak at the Fairness Hearing, you must send a letter or other written document saying that it is your "Notice of Intent to Appear" in *Gruber v. Starion*, Case No. X03-HHD-CV-17-6075408-S. Be sure to include your name, address, telephone number, and your signature. You also must include information about what you intend to say at the hearing.  If you intend to have your attorney represent you at the hearing, please indicate this and provide the full name and contact information for your attorney.  Also, please list anyone you or your attorney will call to testify at the hearing. Please send copies of your "Notice of Intent to Appear" to the Court, Settlement Class Counsel, and Defendant's Counsel as listed in Question 18 above. It must be postmarked no later than **Month DD, 20YY**.   You cannot speak at the hearing if you exclude yourself from the settlement.

## IF YOU DO NOTHING

**23.  What happens if I do nothing**

Unless you exclude yourself, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Starion about the claims in this case, ever again.

## GETTING MORE INFORMATION

**24.  How do I get more information?**

This Notice summarizes the proposed settlement.  More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement at www.WEBSITE.com.  You also may call with questions or have a Claim Form mailed to you by calling 1-8NN-NNN-NNNN.  In addition, you may direct questions to Settlement Class Counsel (Izard Kindall & Raabe LLP) at 860-493-6292.

# EXHIBIT B

From:    *Gruber v. Starion Energy* Claims Administrator
To:      «First1» «Last1»
Subject: Notice of Class Action Lawsuit and Proposed Settlement

# NOTICE OF CLASS ACTION LAWSUIT AND PROPOSED SETTLEMENT

THE COURT HAS AUTHORIZED THIS NOTICE. THIS IS NOT A SOLICITATION FROM A LAWYER.
YOU MAY RECEIVE MONEY FROM A SETTLEMENT

- **If you were a customer of Starion Energy, Inc. and paid a variable rate for electric supply services, your rights may be affected by this class action settlement.**

- **Plaintiffs claim that the variable rates charged by Starion Energy violate the terms of its contracts with its customers. The court has not decided who is right or wrong. Instead, the parties agreed to settle the case to avoid the risk and cost associated with further litigation.**

- **Eligible Class Members who submit a valid Claim Form will be eligible to receive a payment from the $2,580,000 settlement fund.**

- **Go to [website] for more details.**

**What is this?**  This is a Notice of a proposed settlement in a class action lawsuit.  This Notice explains your legal rights.

**What is this lawsuit about?**  This settlement would resolve the lawsuit captioned *Gruber v. Starion Energy, Inc.*, Case No. HHD-CV-17-6075408-S, filed in the Superior Court of the State of Connecticut.  The lawsuit alleges that Starion Energy falsely claimed in its contracts with customers that its variable rate for electricity supply services would fluctuate based on the "cost of electricity obtained from all sources," but in practice failed to decrease its variable rate when wholesale cost of electricity went down.  Starion Energy denies all of Plaintiff's claims and says that it did nothing wrong.  Starion Energy specifically states that it followed all terms of its contract with customers, and that Plaintiff's claims are without factual or legal merit.  The Court has not ruled on the merits of Plaintiff's claims or Starion Energy's defenses.

**Why am I getting this Notice?**  You were identified as someone who was a variable electric rate customer of Starion Energy with regard to a property located in Connecticut, District of Columbia, Delaware, Illinois, Maryland, Massachusetts, New Jersey, New York, Ohio and Pennsylvania.

**What does the settlement provide?**  Starion Energy has agreed to pay a total of $2,580,000 into a Settlement Fund.  The Settlement Fund will pay cash awards to Class Members who have filed a valid claim, as well as (a) attorneys' fees, costs, and expenses; (b) incentive payments to the lead plaintiff and class representatives; and (c) third party costs to provide notice and to administer the settlement. Upon final approval, individual Starion Energy customers who have filed a Claim Form ("claimants") will be eligible to receive a share of the Settlement Fund based upon the power used by each claimant in each "Eligible Month" multiplied by the amount of the over- or under- charge in each month (as determined by the parties with assistance from electricity industry experts) to determine an amount of damages for each class member each month.  The "Eligible Months" shall be based upon a simple calculation of the months in which Starion Energy's electricity sales exceeded its total costs plus margin based upon Starion Energy's financial records.  In the event that claims made exceed the value of the net Settlement Fund after deducting all Settlement Costs (including the costs of notice and administration of the settlement and attorneys' fees and costs incurred by Class Counsel and Service Awards as may be approved by the Court), each Claimant would receive a *pro rata* share of the net Settlement Fund based on his or her calculated loss.  Because each potential claimant used a different amount of electricity and because we do not know the number of eligible claimants who will file valid claims, we cannot estimate the per-person recovery.  However, claimants whose calculated loss totals less than $3 will not receive any payment. The Lead Plaintiff and class representatives will request an incentive payment not to exceed

$2,000 each for their work in representing the Class, and Class Counsel will ask the Court to approve an award up to one-third (33⅓%) of the Settlement Fund for attorneys' fees, plus costs.

**How do I get a payment?** To ask for a payment you must complete and submit a Claim Form. You may visit www.WEBSITE.com to fill out a Claim Form online or to download a Claim Form that you can print. You can also request that a Claim Form be mailed to you by calling 1-8NN-NNN-NNNN. The deadline to file your claim online is **Month DD, 20YY**. If filing a paper claim, you must mail your Claim Form postmarked no later than **Month DD, 20YY** to: *Gruber v. Starion Energy* Claims Administrator, P.O. Box xxxxx, City ST xxxxx-xxxx.

**Do I have to be included in the settlement?** If you do not want to be part of the settlement and you want to keep the right to sue or continue to sue Starion Energy on your own, then you must exclude yourself from the settlement. You will not get any money from this settlement if you exclude yourself. The Court will exclude any Class Member who properly requests exclusion by sending a letter or other written document by mail saying that you want to be excluded from *Gruber v. Starion Energy.* Your exclusion request must also list your public electric utility account number(s) for the period(s) during which you were enrolled with Starion Energy and must include, for each account listed: (1) The full names and current addresses of everyone whose name is on the account; (2) A statement that everyone whose name is on the account satisfies the criteria set forth above to be a Settlement Class Member (as defined in the full Notice available at www.WEBSITE.com); (3) A statement of intention to exclude everyone whose name is on the account from the Settlement Class; and (4) The signature of everyone whose name is on the account. Be sure to include your full name, address, signature, and date. You must mail your request for exclusion postmarked by **Month DD, 20YY** to: *Gruber v. Starion Energy* Claims Administrator, P.O. Box xxxxx, City ST xxxxx-xxxx. You cannot ask to be excluded on the phone, by email, or at the website.

**If I don't like something about the settlement, how do I tell the Court?** If you don't exclude yourself from the settlement, you can object to any part of it. You must file your objection with the Court, and mail your written objection to Class Counsel and Starion Energy's counsel by **[date]**. You may enter an appearance through an attorney if you so desire, but you do not have to do so. Complete details about how to object are set forth in the full Notice available on at **[www.WEBSITE.com]**.

**What if I do nothing?** If you do nothing, you will not be eligible for a payment. All Class Members that do not opt out will be bound by the settlement and the decisions of the Court, and will release Starion Energy (and the other Released Parties defined in the Settlement Agreement available at **[www.WEBSITE.com]**) from all Released Claims (as also defined in the Settlement Agreement).

**When is the Final Approval Hearing?** The Court will hold a hearing in this case to consider whether to approve the settlement at __:___ .m. on **Month DD, 20YY**, at the Connecticut Superior Court, Judicial District of Hartford, Court Room No. 000 , 95 Washington Street, Hartford, CT 06106. You may go to the hearing, but you do not have to.

**How do I get more information about the settlement?** This email Notice contains limited information about the settlement. For more information, to view additional settlement documents (including the Settlement Agreement and the full Notice), and to review additional information concerning your rights and/or the filing of a claim, visit www.WEBSITE.com or call 1-XXX-XXX-XXXX.

# EXHIBIT C

# NOTICE OF CLASS ACTION LAWSUIT AND PROPOSED SETTLEMENT

THE COURT HAS
AUTHORIZED
THIS NOTICE

THIS IS NOT A
SOLICITATION
FROM A LAWYER

See important notice
on the other side.

DCX

*Gruber v. Starion Energy*
**Claims Administrator**
P.O. Box xxxx
City, ST  xxxxx-xxxx

«Barcode»

Postal Service: Please do not mark barcode

Claim#: DCX-«ClaimID»-«MailRec»
«First1» «Last1»
«CO»
«Addr2»
«Addr1»
«City», «St»  «Zip»
«Country»

# NOTICE OF CLASS ACTION LAWSUIT
## AND PROPOSED SETTLEMENT

THE COURT HAS AUTHORIZED THIS NOTICE.
THIS IS NOT A SOLICITATION FROM A LAWYER.

YOU MAY RECEIVE MONEY FROM A SETTLEMENT.

- **If you were a customer of Starion Energy, Inc. and paid a variable rate for electric supply services, your rights may be affected by this class action settlement.**

- **Plaintiffs claim that the variable rates charged by Starion Energy violate the terms of its contracts with its customers.  The court has not decided who is right or wrong. Instead, the parties agreed to settle the case to avoid the risk and cost associated with further litigation.**

- **Eligible Class Members who submit a valid Claim Form will be eligible to receive a payment from the $2,580,000 settlement fund.**

- **Go to [website] or call 1-8XX-XXX-XXXX for more details.**

# EXHIBIT D

Docket No. X03 HHD-CV-17-6075408-S

| | | |
|---|---|---|
| LYDIA GRUBER, | : | SUPERIOR COURT |
| on behalf of herself and all others | : | |
| similarly situated, | : | JUDICIAL DISTRICT OF HARTFORD |
| *Plaintiff,* | : | |
| | : | |
| *v.* | : | |
| | : | |
| STARION ENERGY, INC. | : | |
| *Defendant.* | : | |

## [PROPOSED] ORDER AND FINAL JUDGMENT

This matter coming to be heard on the Plaintiff's Motion for Certification of Settlement Class and Approval of Class Action Settlement ("Motion") together with the supporting papers filed by Lydia Gruber ("Plaintiff"), individually and on behalf of the Settlement Class, and having heard and considered the evidence and arguments of counsel, the Court makes the findings and grants the relief set forth below.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1.      The Court incorporates by reference the definitions set forth in the Settlement Agreement.

2.      The Court has subject matter jurisdiction of this matter and all claims asserted against Starion Energy, Inc., acting by ittself and through its subsidiaries and related entities, including but not limited to Starion Energy PA, Inc., and Starion Energy NY, Inc. ("Starion").

### Notice to the Class

3.      The Court finds that the form, content, and method of dissemination of Notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient

1

notice of the proposed settlement, the terms and conditions set forth in the Settlement

Agreement, and these proceedings to all persons entitled to such notice, and said notice fully

satisfied the requirements of due process.

### Class Certification

4.     Plaintiff's motion requests certification of a Settlement Class defined as:

> All persons who were or are customers of Starion Energy, Inc.; Starion
> Energy PA, Inc.; or Starion Energy NY, Inc. in Connecticut, the District of
> Columbia, Delaware, Illinois, Maryland, Massachusetts, New Jersey, New
> York, Ohio, or Pennsylvania, and were enrolled in a Starion variable rate
> electric plan at any time within the applicable statutes of limitations
> preceding the filing of this action through and including the date upon
> which the Court issues the Preliminary Approval Order. (the "Class").

> Excluded from the Settlement Class are Starion Energy, Inc.; Starion
> Energy PA, Inc.; or Starion Energy NY, Inc.; any of their respective
> parents, subsidiaries, or affiliates; any entity controlled by any of them;
> any officer, director, employee, legal representative, predecessor,
> successor, or assignee of Starion Energy, Inc.; Starion Energy PA, Inc.; or
> Starion Energy NY, Inc.; and any current or former customer who
> previously received from Starion Energy, Inc.; Starion Energy PA, Inc.; or
> Starion Energy NY, Inc. any payment resolving a claim similar to those
> asserted in the Class Actions; any current or former customer who is party
> to a Starion variable rate electric plan contract that contains an arbitration
> clause (unless the customer expressly waives any and all arbitration rights
> that may exist under that arbitration clause); and the judicial officers
> assigned to this litigation; and members of their staffs and immediate
> families.

5.     The Court makes the following findings of fact with respect to the proposed

Settlement Class:

> a.   There are questions of law and fact common to the Settlement Class;

> b.   Plaintiffs' claims are typical of the claims of members of the Settlement Class;

> c.   Plaintiffs and Settlement Class Counsel will fairly and adequately represent the
>      interests of the Settlement Class. There are no conflicts of interest between
>      Plaintiffs and members of the Settlement Class;

2

      d.   Questions of law and fact common to Settlement Class Members predominate over any questions affecting only individual members of the Settlement Class; and

      e.   Certification of the Settlement Class is superior to other methods for the fair and efficient adjudication of this controversy.

     6.     Accordingly, the Court certifies the Settlement Class as defined in Paragraph 4 of this Order, for settlement purposes only, pursuant to Sections 9-7 and 9-8(3) of the Connecticut Practice Book.  The names of those persons who timely submitted a valid request to be excluded, and who are therefore not members of the certified Settlement Class by virtue of that request for exclusion, are identified in Exhibit A to this Order.  Such persons shall neither share in the distribution of the Settlement Fund nor receive any benefits of the terms of the Settlement Agreement, and shall not be bound by this Judgment Order.

     7.     As provided for in the Settlement Agreement, Starion waives any arbitration clause that may exist in any Claimant's contract only with regard to Claimants who submit valid Claim Forms that waive the Claimant's own arbitration rights and only for the period of time covered by the Class Period, and for no other persons or time periods whatsoever.

     8.     As provided for in the Settlement Agreement, if the Settlement Agreement is terminated in accordance with its terms, then the Settlement Agreement, and the certification of the Settlement Class provided for herein, will be vacated and the Action shall proceed as though the Settlement Class had never been certified, without prejudice to any party's position on the issue of class certification or any other issue.

**Approval of the Settlement**

     9.     The Court finds that the terms of the Settlement Agreement are in all respects, fair, adequate, reasonable, proper, and in the best interests of the Settlement Class, and therefore approves the Settlement.

10.     The Settlement Agreement, and each and every term and provision thereof, shall be deemed incorporated herein as if explicitly set forth herein and shall have the full force and effect of an order of this Court.

11.     By entry of this Final Judgment Order Plaintiffs and all Settlement Class Members who have not opted out of the Settlement and each of their respective spouses, executors, representatives, heirs, predecessors, successors, bankruptcy trustees, guardians, wards, joint tenants, tenants in common, tenants by the entirety, co-borrowers, agents, attorneys and assigns, and all those who claim through them or who assert claims on their behalf, shall be deemed to have fully released and forever discharged the Released Parties, and each of them, of and from any and all rights, claims, liabilities, action, causes of action, costs and attorneys' fees, demands, damages and remedies, known or unknown, liquidated or unliquidated, legal, statutory, declaratory or equitable, that Releasing Parties ever had, now have, or may have in the future, that result from, arise out of, are based upon, or relate to in any way the conduct, omissions, duties or matters alleged or that could have been alleged in the Complaint, concerning variable rates for electricity supply from June 1, 2013, until July 31, 2016.

### Approval of the Plan of Allocation

12.     The Court finds that the Plan of Allocation is in all respects, fair, adequate, reasonable, proper, and in the best interests of the Settlement Class, and therefore approves the Plan of Allocation.  The Court directs the Notice and Claims Administrator, KCC Class Action Services, LLC, to process all claims and make payments to Settlement Class Members in accordance with the Plan of Allocation, with the costs of notice and claims administration to be paid from the Settlement Fund after review and approval by Settlement Class Counsel.

4

13.     The Court approves payment of the costs of calculating Settlement Class Member payments pursuant to the Plan of Allocation and of distribution of those proceeds to Settlement Class Members out of the Settlement Fund.

**Final Order and Dismissal with Prejudice**

14.     In accordance with the terms of the Settlement Agreement, *Gruber v. Starion Energy, Inc.,* No. X03 HHD-CV17-6075408-S (Conn. Super., Hartford Jud. Dist., CLD) is dismissed with prejudice.

15.     Without affecting the finality of this Judgment in any way, the Court retains continuing jurisdiction over the Settling Parties and the Settlement Class for the administration, consummation, and enforcement of the terms of the Settlement Agreement.

16.     In the event the Effective Date does not occur, this Judgment Order shall be rendered null and void and shall be vacated and, in such event, as provided in the Settlement Agreement, this Judgment and all orders entered in connection herewith shall be vacated and null and void.

SO ORDERED.

_____
Hon. Ingrid L. Moll
Judge of the Superior Court


Dated: _____, 2017

5

**Exhibit A**

**Persons Excluded from the Settlement Class by Request**