## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| STARION ENERGY, INC., et al., [1] | Case No. 18-12608 (MFW) |
| Debtors. | Adversary Case No. 18-50932 |
| | Jointly Administered |
| STARION ENERGY, INC., et al. | **Hearing:   December 17, 2018 2PM** |
| Plaintiffs, | |
| vs. | |
| THE COMMONWEALTH OF MASSACHUSETTS, MASSACHUSETTS ELECTRIC COMPANY D/B/A/ NATIONAL GRID, and NSTAR ELECTRIC COMPANY D/B/A EVERSOURCE ENERGY | |
| Defendants. | |

## THE COMMONWEALTH OF MASSACHUSETTS' OPPOSITION TO THE DEBTORS' MOTION FOR TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION [DKT. NO. 2]

---

[1] The Debtors and the last four digits of their respective tax identification numbers are: Starion Energy, Inc. (0943); Starion Energy NY Inc. (4319); Starion Energy PA Inc. (1201). The Debtors' corporate headquarters is located at, and the mailing address for each of the Debtors is: 751 Straits Turnpike, Suite 2000, Middlebury CT 06762, Attn: Alexandrea Isaac, Esq.

# **TABLE OF CONTENTS**

TABLE OF CONTENTS……………………………………………………………..…………..ii

TABLE OF AUTHORITIES …………………………………………………………...…..iii

BACKGROUND …………………………………………………………………..…………...2

THIS COURT SHOULD DENY STARION'S REQUEST FOR A PRELIMINARY
INJUNCTION COMPELLING THE TURNOVER OF THE HELD FUNDS……………..…..6

   A.  Starion Cannot Show a Reasonable Likelihood of Success on the Merits…………………7

      1.  The Bankruptcy Petition Should Be Dismissed for Bad Faith. ……………….…………7

      2.  Starion's Motion Fails to Provide Evidence to Show a Reasonable Likelihood
         of Success on the Merits……………………………………………………..…….8

   B.  Starion Cannot Show Irreparable Harm………………………………………………13

   C.  The Balance of Hardships Favors Denial of Starion's Request for Preliminary Injunction.15

   D.  The Public Interest Does Not Favor Granting the Injunction ……………………………..17

CONCLUSION ……………………………………………………………………………18

## **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*In re Levitz Furniture Inc.*, 267 B.R. 516 (Bankr. D. Del. 2000) ………………………………..7

*Gerardi v. Pelullo*, 16 F.3d 1363 (3d Cir. 1994) ……………………………………….……...7

*In re Am. Film Tech., Inc.*, 175 B.R. 847 (Bankr. D. Del. 1994) ………................................7, 18

*In re Gathering Restaurant, Inc.*, 79 B.R. 992 (Bankr. N.D. Ind. 1986) …………………………7

*In re Integrated Telecom Express, Inc.*, 384 F.3d 108 (3d Cir. 2004) …………………………....7

*In re Morris*, 115 B.R. 752 (Bankr. E.D.N.Y. 1990) …………………………………………….…9

*In re Student Fin. Corp.*, 335 B.R. 539 (D. Del. 2005) ……………………………….………..9, 10

*In re Am. Bus. Fin. Servs., Inc.*, 361 B.R. 747 (Bankr. D. Del. 2007) ……………..…......9, 10, 11

*In re Carlos A. Rivera, Inc.*, 130 B.R. 377 (Bankr. D.P.R. 1991) …………………………………..9

*Cohen v. Wasserman,* 238 F.2d 683 (1st Cir. 1956) ……………………...………………......9, 10

*Peck v. Jenness*, 48 U.S. 612 (1849) ………………………………………………………………10

*Kahler v. Town of Marshfield*, 347 Mass. 514 (1964) ……………………………………..…...10

*Hanford v. Codman*, 266 Mass. 93 (1929) ………………………………………………....…….10

*In re Am. Home Mortg. Holdings*, 388 B.R. 69 (Bankr. D. Del. 2008) …………...……………10

*In re Heritage Highgate, Inc*., 679 F.3d 132 (3d Cir. 2012) …………………………………….11

*In re Allen Carpet Shops, Inc.*, 25 B.R. 595 (Bankr. E.D.N.Y. 1982) …………………….......11

*In re Fairway Records, Inc.*, 6 B.R. 162 (Bankr. E.D.N.Y. 1980) ………………………...……11

*In re Linsenbach*, 482 B.R. 522 (Bankr. M.D. Pa. 2012) ……………………………………….12

*In re Hall*, 502 B.R. 650 (Bankr. D. D.C. 2014) ………………………………………......…….12

*In re Reilly*, 545 B.R. 435 (Bankr. D. Mass 2016) ……………………………………...…….12

*U.S. v. Whiting Pools, Inc.*, 462 U.S. 198 (1983) …………………………………………….12

*In re Philadelphia Consumer Disc. Co.*, 37 B.R. 946 (E.D. Pa. 1984)…………………….......12

**Statutes – Bankruptcy Code**

11 U.S.C. § 362(b)(4)……………………………………………………………...…5, 7

11 U.S.C. § 362(a)(3)……………………………………………………………...….8

11 U.S.C. § 101(37)……………………………………………………………….…9

11 U.S.C. § 101(32)………………………………………………………………….9

11 U.S.C. § 542………………………………………………...……..9, 10, 11, 12, 13

11 U.S.C. § 506(a)……………………………………………………………….11

11 U.S.C. § 363(e)………………………………………………………....11, 12

11 U.S.C. § 361…………………………………………………………11, 12

11 U.S.C. § 361(3)…………………………………………………………12

**Statutes – Massachusetts General Laws**

G.L. c. 93A …………………………………………………………………3, 15

G.L. c. 93A, § 4 …………………………………………………………………17

The Commonwealth of Massachusetts (the "Commonwealth"), by and through its Attorney General, Maura Healey (the "Attorney General"), hereby opposes the motion of Starion Energy, Inc., Starion Energy NY Inc., and Starion Energy PA Inc. (collectively, "Starion") for a temporary restraining order and a preliminary injunction ("Motion") [Dkt. No. 2 (Case No. 18-50932]. The Court should reject Starion's request to undo a pre-petition attachment in favor of the Commonwealth, lawfully entered by a Massachusetts state trial court to help secure a likely judgment in the Attorney General's pending consumer protection enforcement action against Starion.[2]

Specifically, the pre-petition attachment was the result of a request by the Commonwealth for two distinct methods of preliminary relief necessary to secure the anticipated judgment in the Commonwealth's favor: (1) attachment by trustee process of credits currently held by the electric distribution companies and due to be paid to Starion; and (2) a preliminary injunction to attach successive credits received by the electric distribution companies for future payment to Starion, up to $30.6 million, an amount which represented the Commonwealth's conservative estimate of damages. While the Superior Court did not grant attachment of up to $30.6 million, as requested, the Superior Court did grant attachment with respect to the $3,989,352.09 that accrued between October 24, 2018 and November 13, 2018. *See* Ex. A;[3] Order, Nov. 20, 2018 [Dkt No. 7 (Case No. 18-50932)].

---

[2] As set forth in more detail, *supra* at p. 5, on November 20, this Court granted Starion's motion for temporary restraining order and preliminary injunction as to the possible *post-petition* attachment of Starion's assets. Order, Nov. 20, 2018 [Dkt. No. 7 (Case No. 18-50932)]. The Commonwealth does not seek reconsideration of the Court's order and thus limits its Opposition to addressing only Starion's request that funds attached *pre-petition* be released to it.

[3] All exhibit references are to the exhibits attached to the Declaration of Nathan Forster, also filed on December 10, 2018.

As discussed at greater length below, Starion's request for a preliminary injunction from this Court to negate the state court's orders attaching approximately $4 million held by two Massachusetts electric distribution companies for the account of Starion should be denied. Starion is unable to show a reasonable likelihood of success on the merits, because (a) Starion's case should be dismissed as a petition filed in bad faith and (b) under Massachusetts law, the Commonwealth holds a valid lien on the $4 million in attached funds, and thus title to the property is disputed.  Starion also cannot show irreparable harm, as Starion does not require the $4 million to operate its business; whereas the injunction will cause substantial harm to the Commonwealth by seriously diminishing the Commonwealth's ability to vindicate its authority and hold a serial bad actor to account.  Finally, Starion is unable to show that public policy weighs in favor of the injunction because the public interest in preserving the orders of the Massachusetts state court far outweigh Starion's suspect claims that the injunction is necessary for the good of its employees and customers.

## I.   BACKGROUND

On October 15, 2018, prior to the filing of this bankruptcy proceeding, the Attorney General filed a civil action in Massachusetts Superior Court against Starion Energy, Inc. ("Starion Inc.") and certain related parties not involved here.  *Commonwealth v. Starion Energy, Inc., et al.*, No. 183199-H (Super. Ct. filed Oct. 15, 2018) (the "Massachusetts Action").  In its complaint, based on a three year Attorney General investigation, the Commonwealth alleged that Starion Inc.'s entire business model is essentially a "bait and switch" scheme, whereby Starion Inc. promised Massachusetts customers "rate reductions" on their electricity supply, but instead substantially *increased* the rates of Massachusetts customers who signed up based on Starion

Inc.'s representations.[4]  Complaint, ¶¶ 62–99 [Dkt. No. 20-1 (Case No. 18-12608)].[5]  The

Commonwealth also alleged that Starion Inc. and the other defendants violated the

Commonwealth's telemarketing laws by, *inter alia*, calling customers on the Massachusetts Do

Not Call List and making illegal "robocalls."  *Id.*, ¶ 104.  Contemporaneously with filing the

complaint, the Attorney General also sought attachment of certain accounts receivable in

Massachusetts—namely current credits due Starion Inc. and already in the possession of electric

distribution companies National Grid and Eversource, and future credits expected to come into

their possession—totaling up to $30.6 million, which represented a conservative estimate of the

amount which the Commonwealth is likely to win as consumer restitution and/or civil penalties

for Starion's unfair and deceptive acts.  *See* Ex. B.

The Superior Court held a hearing on the Commonwealth's motions on October 24, 2018.

At the hearing, Judge Ricciuti made clear—almost immediately—that he was "not looking to put

---

[4] In its Motion, Starion implies that Massachusetts regulators (the Massachusetts Department of Public Utilities, or "DPU") have approved of Starion's scheme to lure customers with an artificially low rate that is later adjusted to a variable rate that is consistently much higher than any rate the customer may have been charged for basic service from the electric distribution company.  Motion, 4 [Dkt No. 1 (Case No. 18-50932)].  While it is true that variable rates are entirely lawful in Massachusetts, neither the DPU nor G.L. c. 93A authorize the type of "bait and switch" scheme executed by Starion, which the Commonwealth estimates caused Massachusetts customers to unwittingly pay at least $30.6 million more to Starion than they would have paid if they had remained on basic service.  *See* Ex. B.  Indeed, Starion's unlawful marketing activities generated a large number of complaints fielded by the Attorney General, the DPU, and the electric distribution companies.  The complaints in Massachusetts largely echoed complaints regarding Starion in other jurisdictions, prompting similar investigations.  *See, e.g., In the Matter of the Investigation into the Solicitation Practices of Starion Energy PA, Inc.*, Delaware Public Services Commission, Docket No. 395-13, Order No. 8477, Initiating Order (filed Oct. 24, 2013); *In the Matter of the Investigation into the Business and Solicitation Practices of Starion Energy in the District of Columbia*, Public Service Commission of the District of Columbia, Formal Case No. 1105, Order No. 17369 (Feb. 2014); *In the Matter of the Investigation into the Marketing Practices of Starion Energy PA, Inc.*, Public Service Commission of Maryland, Case No. 9324, Order No. 86211 (March 7, 2014).

[5] Throughout this opposition, "Dkt. No." refers to the docket for Starion Energy, Inc., Case No. 18-12608, unless otherwise noted.

the company out of business today," and that "I'm going to craft a middle road that doesn't do what either of you want me to do, which is consistent with the public interest which I think is the Court's job." Ex. C, 6–7.  Following the hearing, Judge Ricciuti found, on a preliminary basis, that the Commonwealth had met the standards for its attachment and injunction motions.  The Superior Court entered an order granting the Commonwealth's motions, directing National Grid and Eversource that, "beginning as soon as possible," they "shall maintain in their possession all assets that are or will become due to Starion and not distribute those assets to Starion or anyone acting on their behalf," pending further proceedings. Ex. D.  A further hearing was held in Superior Court on November 5, 2018, nearly all of which focused on the question of Starion's ability, as a business, to continue to operate while accounting for the attachment of its accounts receivables in Massachusetts. *See* Tr., Nov. 5, 2018 [Dkt. No. 58-4].  The Superior Court thereafter issued two additional orders extending its earlier order to attach all funds due to Starion. *See* Ex. E; Ex. A.  The Superior Court was due to issue a further order on the Commonwealth's motions on November 16, 2018. *See* Ex. A.

In the meantime, Starion filed a petition in this Court on the evening of November 14, 2018—fewer than forty-eight hours before the anticipated order from the Superior Court. *In re Starion Energy, Inc., et al.* ("Petition") [Dkt. No. 1 (Case No. 18-12608)].  Starion's Petition represented that Starion Inc., Starion Energy PA Inc., and Starion Energy NY Inc., collectively had $53 million in total assets with fewer than $7 million in liabilities.[6]  Petition, 19 [Dkt. No.

---

[6] At the Court's December 6, 2018 hearing on Starion's motion for financing, Starion's controller, Thomas Stiner, testified that he believed Starion had less than $53 million in assets because the Petition "double counted" assets among Starion Inc. and its two subsidiaries.  As a result, Mr. Stiner testified, on a consolidated basis, Starion had approximately $30 million in assets. Nevertheless, $30 million is over four times the value of Starion's total reported liabilities of $7 million.

1]; Starion Energy PA Inc. Petition, 17 [Dkt. No. 1 (Case No. 18-12609)]; Starion Energy NY

Inc. Petition, 17 [Dkt. No. 1 (Case No. 18-12611)].   Together with its Petition, Starion filed the

instant Motion, which sought, *inter alia*, the dissolution of the amounts previously attached by

the Superior Court.

On the morning of November 16, 2018, this Court held a hearing on Starion's first day

motions, including the Motion at issue here.  The Court made an oral ruling that the

Massachusetts Action could proceed temporarily under the exception to the automatic stay

codified at 11 U.S.C. § 362(b)(4).  The Court also made clear that any effort to attach property of

Starion post-petition is stayed.  With regard to the pre-petition funds, the Court declined to grant

Starion's request for an immediate temporary restraining order.  Instead, the Court indicated that

it would make a decision in connection with the status of the pre-petition funds following further

briefing and an additional hearing.  On November 20, 2018, this Court entered an order

("Order") reflecting the rulings made from the bench during the November 16 hearing.  [Dkt.

No. 7 (Case No. 18-50932)].   Consequently, under the Order, all funds attached in the

Massachusetts Action pursuant to orders entered prior to the November 14, 2018 date upon

which the Petition was filed ("Petition Date") were to continue to be held ("Held Funds"); all

funds accruing after the Petition Date were to flow to Starion Inc.  Order, ¶ 2.

On the afternoon of November 16, 2018, the Superior Court held a status conference to

determine the consequences of the Petition on the Massachusetts Action.  During the hearing,

counsel for the Commonwealth conveyed to the Superior Court the rulings of this Court from

earlier in the day.  On November 19, 2018, the Superior Court issued an order in the

Massachusetts Action directing the utilities to hold assets in conformance with this Court's oral

rulings, as later reflected in its November 20 Order.  Regarding the Held Funds, the

Massachusetts order stated:

> (1) the trustee defendants National Grid and Eversource shall
> maintain in their possession all assets due to Starion that have
> come into their possession as of 11:59 PM on November 13, 2018
> and not distribute those assets to Starion or anyone acting on its
> behalf;
>
> (2) the trustee defendants shall not restrain any further assets of
> Starion unless so ordered by the federal bankruptcy court
> overseeing Starion's bankruptcy, by this Court or by other
> authority.

Ex. F, 1.  Thus, the overall effect of Starion's Petition and the orders in the Massachusetts Action

and this Court is to maintain the Massachusetts attachment of approximately $4 million and

otherwise provide that funds due to Starion Inc. from electric distribution companies in

Massachusetts shall be paid to Starion Inc. without impediment from November 14, 2018

through the pendency of this bankruptcy proceeding.

Pending a determination on the Commonwealth's motion to dismiss this proceeding, the

Commonwealth does not object at this point to the flow of post-petition funds to Starion Inc.

However, the Commonwealth opposes Starion's request that this Court compel the release to

Starion Inc. of the Held Funds subject to attachment in the Massachusetts Action.  The Court

should deny Starion's request because Starion fails to carry its burden for obtaining a preliminary

injunction.

## II.    THIS COURT SHOULD DENY STARION'S REQUEST FOR A PRELIMINARY INJUNCTION COMPELLING THE TURNOVER OF THE HELD FUNDS.

Starion fails with respect to all four elements for a preliminary injunction: (1) a likelihood

of success on the merits of the underlying action; (2) that Starion will suffer irreparable harm

absent injunctive relief; (3) that the injunction will not cause substantial harm to the

Commonwealth; and (4) that public policy does not weigh against an injunction. *In re Levitz Furniture Inc.*, 267 B.R. 516, 520 (Bankr. D. Del. 2000) *citing to Gerardi v. Pelullo*, 16 F.3d 1363, 1373 (3d Cir. 1994); *In re Am. Film Tech., Inc.*, 175 B.R. 847, 849 (Bankr. D. Del. 1994). Starion also fails to "establish with persuasive evidence that the extraordinary remedy is warranted." *See In re Gathering Restaurant, Inc.*, 79 B.R. 992, 999 (Bankr. N.D. Ind. 1986). Starion's "[s]peculative and conclusory allegations . . . are insufficient." *Id.* Starion's motion for preliminary injunction against the Commonwealth, along with its underlying Complaint, consist of little more than vague statements and recitations of Bankruptcy Code with almost no evidence. Because Starion is unable to meet its burden of proof for a preliminary injunction, its request should be denied.[7]

### A. Starion Cannot Show a Reasonable Likelihood of Success on the Merits.

#### 1. *The Bankruptcy Petition Should Be Dismissed for Bad Faith.*

As argued more fully in the Commonwealth's accompanying *Motion to Dismiss*, Starion is unable to show a reasonable likelihood of success on the merits because its Petition was filed in bad faith and thus should be dismissed by this Court. To establish "good faith" in a bankruptcy filing, a Petitioner must experience some form of financial distress at the time of filing and must demonstrate, among other things, that it (1) filed for a valid bankruptcy purpose, and (2) that the filing was not merely to obtain a tactical advantage. *See, e.g., In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 118–22 (3d Cir. 2004). Starion's bankruptcy Petition

---

[7] Following the filing of Starion's Motion on November 14, 2018, the Commonwealth submitted a *Motion for Determination that the Automatic Stay Provision Does Not Apply to Massachusetts' Action Against the Debtors* on November 15, 2018. [Dkt. No. 20]. The *Motion for Determination* requested that this Court confirm the automatic stay does not apply to the Massachusetts Action pursuant to 11 U.S.C. § 362(b)(4). *Id.* The Commonwealth incorporates by reference the arguments made therein and requests that this Court enter a final order confirming the exception for the Massachusetts Action.

meets neither of those criteria.  Starion's Petition reflects solvent and healthy companies, with a total of approximately $30 to $53 million in assets and just under $7 million in liabilities.  Nor did Starion's Petition describe any particular purpose for the requested bankruptcy relief, beyond its stated desire to thwart the consequences of being held to account in Massachusetts for its many violations of the Commonwealth's consumer protections law.  Starion's arguments before this Court regarding the merits of the Commonwealth's claims in the Massachusetts Action reflect principally Starion's effort to obtain an inappropriate second venue in hopes of achieving a better result from this Court on the Superior Court's attachment of its funds.

The facts admitted by Starion itself show that Starion's true purpose in filing its Petition is to shield its fraudulently obtained assets and cripple the ability of the courts of the Commonwealth and its chief law enforcement officer to hold Starion accountable for executing a vast "bait and switch" scheme to inflict significant financial harm on Massachusetts consumers.

### 2.   *Starion's Motion Fails to Provide Evidence to Show a Reasonable Likelihood of Success on the Merits.*

Even if Starion somehow survives the Commonwealth's motion to dismiss this proceeding,  the Court nevertheless should deny Starion's Motion because Starion is not reasonably likely to succeed on the merits.[8]  At issue in Starion's Motion are the Held Funds that were attached *pre-petition* pursuant to lawful orders issued by the Superior Court.  Starion claims that the property of the estate—presumably, the Held Funds—must be turned over pursuant to 11

---

[8] In its Motion, Starion first claims a reasonable likelihood of success on the merits because 11 U.S.C. § 362(a)(3) "prohibits any act by the non-debtor that deprives the debtor of its property." Motion, 8.  As established above, all post-petition funds generated in Massachusetts have flowed freely to Starion without encumbrance by the Commonwealth or any other entity.  Additionally, the Commonwealth has not taken any action in relation to the Held Funds following the filing of the Petition.  Accordingly, there is no action for this Court to "enjoin," and the Court should deny Starion's request for a preliminary injunction as to this issue.

U.S.C. § 542, stating "the funds held by National Grid and Eversource is the Debtors' property. It is undisputed that these funds belong to Debtors unconditionally." Motion, 8. Starion is wrong. The funds do not "belong to Debtors unconditionally," because they have been attached by the Superior Court to provide security for anticipated judgment in the Commonwealth's favor in an action to enforce its consumer protection laws.[9] Indeed, the attachments entered by the court in the Massachusetts Action have provided the Commonwealth with a valid pre-petition lien on the funds; as a result, title to the property is disputed and turnover is not required at this time under 11 U.S.C. § 542.[10] *See In re Student Fin. Corp.*, 335 B.R.539, 554 (D. Del. 2005); *In re Am. Bus. Fin. Servs., Inc.*, 361 B.R. 747, 761 (Bankr. D. Del. 2007).

In order to determine whether a creditor has acquired a lien on the attached property, a bankruptcy court will look to the laws of the state in which the attachment issues. *See In re Carlos A. Rivera, Inc.*, 130 B.R. 377, 379 (Bankr. D.P.R. 1991), *citing Cohen v. Wasserman*, 238 F.2d 683, 686 (1st Cir. 1956). In *Cohen v. Wasserman*, the First Circuit found that in Massachusetts, the "mesne process[11] attachment…creates a valid lien on the property attachment from the time attachment is made." 238 F.2d at 686. The *Cohen v. Wasserman* court further explained that, in Massachusetts, attachment of property on mesne process "doubtless creates an immediate lien," consistent with an earlier Supreme Court holding reflecting Massachusetts' law

---

[9] Significantly, the Superior Court had to find that the Commonwealth demonstrated a reasonable likelihood of success on the merits in order to grant the requested injunctive relief.

[10] *See* 11 U.S.C. § 101(37) (defining the term "lien" as a "charge against or interest in property to secure payment of a debt or performance of an obligation."); *In re Morris*, 115 B.R. 752, 755 (Bankr. E.D.N.Y. 1990) *quoting* 11 U.S.C. § 101(32) ("A 'judicial lien' is defined as a "lien obtained by judgment, levy, sequestration or other legal or equitable process or proceeding.").

[11] "Mesne Process" refers to the "process which may be issued after commencement of the action and before the entry of final judgment." Black's Law Dictionary (9th ed.).

that "an attachment on mesne process created a lien equal in statute to a common law lien." *Id.*, *citing Peck v. Jenness*, 48 U.S. 612 (1849).

The Supreme Judicial Court of Massachusetts echoed this interpretation, reiterating:

> By the law of Massachusetts, an attachment of property on mesne process is a specific charge upon the property, for the security for the debt sued for, and the property is set apart and placed in the custody of the law, for that purpose, subject only to the condition that the attaching creditor shall obtain judgment in the suit, take out execution and levy it upon the property so held, within a limited time.

*Kahler v. Town of Marshfield*, 347 Mass. 514, 516 (1964); *see also Hanford v. Codman*, 266 Mass. 93, 97 (1929) (finding attachment by trustee process of accounts receivable to create a "valid security").

Hence, based on Massachusetts law, at the time the Superior Court issued its orders in the Massachusetts Action attaching the funds, a valid lien in favor of the Commonwealth was created on the Held Funds. *See Cohen*, 238 F.2d at 686. Thus, title to the Held Funds is very much in dispute and the ultimate disposition of the Held Funds is the subject of an ongoing enforcement action regarding, *inter alia*, fraudulent marketing practices of Starion. *See, e.g., In re Student Fin. Corp.*, 335 B.R. at 554; *In re Am. Bus. Fin. Servs., Inc.*, 361 B.R. at 761. "In order to state a claim for turnover of property under § 542, a plaintiff must allege that transfer of the property has already been avoided or that the property is otherwise undisputed property of the bankruptcy estate." *In re Student Fin. Corp*, 335 B.R. at 554. Starion is not entitled to turnover under § 542 because it cannot show that the property at issue is "undisputed." *See id; In re Am. Home Mortg. Holdings*, 388 B.R. 69, 94 (Bankr. D. Del. 2008). Rather, the Held Funds are the subject of a valid lien by the Commonwealth and, in order to collect those Held Funds, Starion must obtain a judgment in its favor. *See In re Am. Bus. Fin. Servs., Inc.*, 361 B.R.

at 761 (rejecting Trustee's assertion of a right to turnover where the money at issue was "cash to which the Trustee cannot claim title, but rather must get a judgment to collect.").

Accordingly, the Held Funds should continue to be set aside—untouched by either the Commonwealth or Starion—until such time as a final judgment is entered. *See id.*   In the event that this Court does not dismiss Starion's Petition and this proceeding continues, any monetary judgment that the Commonwealth acquires against Starion Inc. in the Massachusetts Action will be treated as a claim in this Court.

Alternatively, if this Court determines that turnover of the Held Funds is required, because the Commonwealth has acquired a lien on the Held Funds, the Commonwealth is a secured creditor of Starion pursuant to 11 U.S.C. § 506(a) and thus entitled to adequate protection under 11 U.S.C. § 363(e).  *See, e.g., In re Heritage Highgate, Inc.*, 679 F.3d 132, 139 (3d Cir. 2012) (pursuant to 11 U.S.C. § 506(a), an "allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property."); *In re Allen Carpet Shops, Inc.*, 25 B.R. 595, 602 (Bankr. E.D.N.Y. 1982) (describing the adequate protection available pursuant to 11 U.S.C. § 363(e) as "designed primarily to 'protect the collateral of secured creditors while debtor or a trustee continues to operate the business.'") (internal citations omitted).

Starion asserts that the Held Funds must be turned over pursuant to 11 U.S.C. § 542, which requires any party in possession of undisputed property of the estate at the time of the filing of the petition to deliver the property to the trustee.  *See In re Fairway Records, Inc.*, 6 B.R. 162, 164 (Bankr. E.D.N.Y. 1980).  "However, if the possessory party can show that it holds a valid claim or interest in the property, turnover is interdicted unless the party's interest is adequately protected in accord with the provision of [11 U.S.C. §] 361."  *Id.; see also In re*

- 11 -

*Linsenbach*, 482 B.R. 522, 528 (Bankr. M.D. Pa. 2012) (explaining that compelling the turnover of property before an opportunity for the granting of adequate protection would render the right to adequate protection "meaningless"); *In re Hall*, 502 B.R. 650, 660 (Bankr. D. D.C. 2014) (finding that a creditor could be irreparably harmed and lose its right to adequate protection if it is required to turn over the asset without an opportunity to seek adequate protection); *In re Reilly*, 545 B.R. 435, 447 (Bankr. D. Mass 2016) (finding no violation of the automatic stay where creditor failed to release its trustee process attachments of funds in Debtors' accounts); *cf. U.S. v. Whiting Pools, Inc.*, 462 U.S. 198 (1983) (upholding turnover under § 542 where creditor was provided adequate protection for its interests).

11 U.S.C. § 361 allows for adequate protection to be provided in a number of ways, including by the granting of any relief, with certain exceptions, that would result in the creditor's realization of the indubitable equivalent of its interest in the property. 11 U.S.C. § 361(3); *see, e.g., In re Philadelphia Consumer Disc. Co.*, 37 B.R. 946, 951 & n 7 (E.D. Pa. 1984).  Here, in the event that this Court determines that turnover is required under § 542, the appropriate form of adequate protection would be to keep the funds where they are now.  Starion has not shown a need for the funds to operate its business or to pay off creditors.  Instead, the significant amount of assets as compared to liabilities in Starion's Petition indicates that Starion could pay the Commonwealth's $4 million claim in full if and when that claim is adjudicated by this Court. Accordingly, even if this Court were to decide that turnover is required under § 542, the Court should deny Starion's motion—thus allowing the Held Funds to stay in place—in order to ensure adequate protection of the Commonwealth's interest in Starion's property pursuant to 11 U.S.C. § 361(3).  The Commonwealth also reiterates that any monetary judgment that the

Commonwealth acquires against Starion Inc. in the Massachusetts Action will be treated as a claim in this Court.

### B.  Starion Cannot Show Irreparable Harm.

Starion has not met its burden to prove that it will suffer irreparable harm if the $4 million pre-petition attachment is not returned to the estate.  To-date, Starion has provided ***no*** evidence that it would be irreparably harmed if the estate is denied access to the $4 million in Held Funds.  Starion falsely claims only that it must receive "the $30.6 million due to it in order to keep its business running."[12]  Declaration of Thomas Stiner in Support of First Day Motions, ¶ 26 [Dkt. No. 4]; Motion, 6–7.  However, as set forth above, Starion will, pursuant to the orders of this Court and the Massachusetts Superior Court, be receiving *all* accounts receivable accrued in its accounts at National Grid and Eversource from November 14, 2018, through the pendency of this bankruptcy proceeding.  As this Court has made clear, no further assets of Starion will be attached.

Starion appears to assert that even the attachment of this modest $4 million amount will result in harm to it, allegedly because the lack of these funds may give rise to liquidity concerns, or might force reductions in labor.  Starion's claim that denial of the injunction will cause it irreparable harm is belied by the record before the Court.  Starion is highly solvent—Starion's own Petition reflects that Starion Inc., together with its wholly owned subsidiaries, has anywhere

---

[12] Starion omits several details in its Motion.  For example, the $30.6 million figure is based on the Commonwealth's measure of damages in the Massachusetts Action, not on any order by the Superior Court.  *See* Ex. B.  The Superior Court informed the parties to the Massachusetts Action that it would consider Starion's ability to pay in crafting the appropriate amount that should be attached.  *See* Ex. C at 6–7 ("I'm not looking to put the company out of business today.  I'm also not looking to let the company walk out of here with that money that's being held by the trustee processes, the trustee defendants rather, freely accessible by them.").

between $30 million and $53 million in assets, and liabilities of just under $7 million.  Money currently flows into the company from each of the jurisdictions in which it operates, including Massachusetts.  The significance of the accounts receivable Starion receives should not be discounted; based on Starion's own numbers, *see* Motion, 3-4, Starion's cost to supply Massachusetts customers is about $2.2 million per month [$17.8M / 8 months = $2.2M].  Meanwhile, in just under three weeks—October 24 to November 13—Starion's accounts receivable in Massachusetts amounted to $4 million.  *See* Order, ¶ 1.  Additionally, Starion recently received an interim order from this Court approving financing for a multi-million-dollar line of credit, *see* Order (Interim) Approving Secured Postpetition Financing [Dkt. No. 65], and Starion will continue to receive money in the form of proceeds from the Spark Energy transaction, up to $10.7 million total.[13]  *See* Asset Purchase Agreement ("APA") [Dkt. No. 58-1].

As Mr. Stiner testified in the Massachusetts Action, the funds from the Spark transaction were earmarked to go to equity rather than to pay employees or otherwise pay the Company's operating costs.[14]  Tr., 14:1–13, Nov. 5, 2018 [Dkt. No. 58-4].  And, indeed, Starion was sufficiently solvent to make payments to some of its minority shareholders, notwithstanding its lack of access to the Held Funds.  Specifically, Starion's Amended Statement of Affairs, pp. 12-13, reflects payments of $3,882,275.02 made to minority shareholders prior to the filing of the

---

[13] Mr. Stiner testified on December 6 that Starion only expects to receive approximately $7.1 million from the Spark transaction, but the Asset Purchase Agreement with Spark Energy clearly provides for up to $10.7 to be provided to Starion; indeed, $10.7 million should have already been placed in an Escrow Account in order to satisfy the terms of the Asset Purchase Agreement. *See* APA, § 2.6 [Dkt. No. 58-1].  For each successfully transferred customer, Starion will collect money from the Escrow Account, up to $10.7 million. *Id.*

[14] Mr. Stiner testified: "The company looked at this as an opportunity to redeem shares of minority shareholders who had put money in early in the company's existence…so the expectation was to use a portion of the Spark proceeds to redeem them."  Tr., 14:5–11, Nov. 5, 2018 [Dkt. No. 58-4].

bankruptcy petition.  [Dkt. No. 55]; *see* <u>Ex. G</u> (listing shareholders of Starion).  The total

payment of $3,882,275.02 voluntarily made to these minority shareholders is almost exactly the

same amount as the Held Funds, $3,989,352.09.  *See* Order, ¶ 1.  These funds—which, according

to the Amended Statement of Affairs, were paid to the shareholders sometime *after* Starion was

given notice of the Commonwealth's intent to sue on July 27, 2018—could simply have been

redirected to the extent that the $4 million was somehow necessary for Starion to operate.

Starion will not suffer irreparable harm without access to the Held Funds.

### C.  The Balance of Hardships Favors Denial of Starion's Request for Preliminary Injunction.

Starion claims that the Commonwealth will not be harmed if the injunction is granted.

As evidence therefor, Starion claims that the Commonwealth's concerns about Starion—namely,

that Starion will leave the state and thus avoid judgment in the Massachusetts Action—are

unfounded, stating "Debtors have not taken any action to remove itself from the Commonwealth

and has no intention of so doing."  Motion, 9.  This statement directly contradicts the testimony

of Starion's controller, Thomas Stiner, in Superior Court on November 5, 2018.  On that date,

Mr. Stiner testified that during negotiations with Spark Energy between "July or August" and the

time of the Asset Purchase Agreement on October 19, 2018, Starion offered to sell *all* of its

customer contracts to Spark Energy, including those in Massachusetts.[15]  Tr., 13:24-25, 21:5-11,

Nov. 5, 2018 [Dkt. No. 58-4]; APA [Dkt. No. 58-1].  Further, Mr. Stiner testified that the

Massachusetts contracts—which make up the entirety of Starion's assets in Massachusetts—

---

[15] Mr. Stiner testified that discussions with Spark Energy about the sale of Starion's customer contracts began in the July–August time period, which, not coincidentally, is the same timeframe in which the Commonwealth served Starion with a notice of violation of G.L. c. 93A and provided Starion with the Commonwealth's theory of liability and its conclusion that Starion caused consumers in the Commonwealth at least $30.6 million in harm.  *See* <u>Ex. H</u>.

were not included in the sale solely due to Spark Energy's decision not to purchase those

contracts.  *Id.*

      Starion, contrary to the representations made to this Court in its papers, very recently

undertook *significant* steps towards removing itself entirely from the Commonwealth and its

flight was only thwarted by a business decision made by Spark Energy.[16]  It is clear that the

Commonwealth's concerns regarding the ability to secure a judgment against Starion are well-

founded.  Immediately following the formal July 27, 2018 notice of action by the

Commonwealth, Starion began discussions with Spark Energy to divest its assets, and entered

into an agreement to sell all of its customer contracts in six out of the ten states in which it

operated; moreover, in September, it appears that several homes listed as the residential

addresses of individual Starion shareholders were the subject of significant transactions. *See*

APA, § 1(xiii) [Dkt. No. 58-1]; *see, e.g.*, Connecticut Land Records Webpage [Dkt. No. 58-12].

And, when faced with an enforcement action in the Massachusetts Superior Court, Starion

sought to shield itself from judgment by filing a bad faith bankruptcy petition in this Court.

Starion's actions show that the loss of the security represented by the Held Funds would make it

much less likely that the Commonwealth will be able to hold Starion accountable for its multiple,

serious violations of the Commonwealth's consumer protection laws, or obtain judgment in an

---

[16] Starion also sought to mislead the Superior Court on this point.  At the initial hearing on
October 24, despite Starion's recent (undisclosed) negotiations with Spark Energy, Starion
argued that preliminary relief was not needed because "the company has been here" and "[t]he
company's not going anywhere, we haven't gone anywhere…" Ex. C, 13:15–23.  Starion also
represented that "[t]he government can get a judgment in Massachusetts and come to
Connecticut and enforce a judgment if it needs to do that."  *Id.* at 15:25–16:3. Starion did not
disclose to the Superior Court the existence of the Asset Purchase Agreement with Spark
Energy—which had been entered into only five days earlier—and thus failed to mention that
Starion had sold to Spark all of its customer contracts in Connecticut.  *See id.*

amount that would even begin to make whole the Massachusetts consumers duped by Starion's unscrupulous and unlawful actions.

Significantly, Starion's proposed injunction would also cause harm to the Commonwealth's ability to enforce consumer protection laws in future cases. Under G.L. c. 93A, § 4, the Attorney General does not bring an action simply to provide restitution to affected customers—it also brings an action to vindicate the authority of the Commonwealth and deter other bad actors from violating the Commonwealth's consumer protection laws. *See* G.L. c. 93A, § 4. Indeed, as Starion points out in its Motion, the Commonwealth is not concerned with Starion alone—consumers in the Commonwealth have lost millions upon millions of dollars due to unfair and deceptive acts committed by numerous competitive suppliers. Starion's requested relief would not only unravel the Commonwealth's efforts to secure restitution for customers affected by Starion's bad acts, but it would also significantly weaken the deterrent effect that flows from the Superior Court's orders by rendering those orders a nullity, thus providing other suppliers a roadmap to avoid accountability for the serious financial harm inflicted upon Massachusetts consumers. Given the paucity of evidence of harm to Starion, the balance of the harm clearly favors denial of the Motion.

### D.  The Public Interest Does Not Favor Granting the Injunction.

Granting Starion's requested further injunction would not favor the public interest. To the extent that the "public interest" element in the context of bankruptcy proceedings means "the promoting of a successful reorganization," Starion has not made any showing that the $4 million in Held Funds is necessary for a successful reorganization, as more fully described *supra* Section II.B. *See In re Am. Film Tech., Inc.*, 175 B.R. at 849.

Rather, Starion claims that, without an injunction, its employees will lose their jobs and its customers will lose their "preferred provider."[17] Motion, 9.  However, Starion itself has demonstrated that preserving its employees' jobs or its customers' "preferred provider" are not important to it.  Only three months ago, Starion sought to transfer all of its customers to another supplier, which would have left all of its customers with a provider who they did not choose.  Tr., 21:5–11, Nov. 5, 2018 [Dkt. No. 58-4].  Further, the sale of all of Starion's customer contracts would have left Starion with no obvious need for a workforce of twenty-seven employees to maintain a business that no longer had any assets or a clear plan for moving forward.[18]

Moreover, to the extent that the Court considers the public interest beyond the affirmation of a plan, there exists a strong public interest in preserving the orders of the Massachusetts state court, made on the application of the sovereign, for the benefit of its public.  Such public interest outweighs any public interest in protecting against speculative harms that Starion itself is not particularly interested in preventing.

## III.    CONCLUSION

Starion has failed to provide the necessary showing for a preliminary injunction.  Accordingly, for the foregoing reasons, the Commonwealth respectfully requests that this Court deny Starion's request for turnover of the Held Funds.

---

[17] Starion admits that if it goes out of business, its customers will not lose their electricity; rather, they will continue to receive electricity in the form of basic service from their electric distribution company.  Motion, 8-9.

[18] At the December 6 hearing, Mr. Stiner testified that the company has a plan for moving forward; but Starion has offered no other evidence to support this contention, which stands in stark contrast to Starion's recent actions, including selling most of its assets and buying out a number of minority shareholders.

COMMONWEALTH OF MASSACHUSETTS

MAURA HEALEY
ATTORNEY GENERAL

By:      /s/ *Nathan C. Forster*
         Nathan C. Forster, BBO #666435
         Elizabeth A. Anderson, BBO #688135
         Alexander M. Early, BBO #691028
         Assistant Attorneys General
         Energy and Environment Bureau
         Energy and Telecommunications Division
         Office of the Attorney General
         One Ashburton Place
         Boston, MA 02108
         (617) 727-2200
         Nathan.Forster@state.ma.us
         Elizabeth.A.Anderson@state.ma.us
         Alexander.Early@state.ma.us

Dated:  December 10, 2018