```
                                              Volume I
                                              Pages: 1-46
                                              Exhibits: 0


              COMMONWEALTH OF MASSACHUSETTS


SUFFOLK, SS.                          SUPERIOR COURT DEPARTMENT
                                      OF THE TRIAL COURT
*******************************
COMMONWEALTH OF MASSACHUSETTS *
     Plaintiff               *
v.                           * DOCKET NUMBER 1884CV03199
                             *
STARION ENERGY INC. ET AL    *
     Defendant               *
*******************************
              HEARING
              BEFORE THE HONORABLE MICHAEL D. RICCIUTI


APPEARANCES:
For the Plaintiff:
Office of the Attorney General
One Ashburton Place
Boston, Massachusetts  02108
By:  Nathan C. Forster, Esq.
     Alexander Morris Early, Esq.


For the Defendant, Starion:
Eckert Seamans Cherin & Mellott LLC
Two International Place
Boston, Massachusetts  02110
By:  Craig R. Waksler, Esq.
     Shaina A. Rosenbleet, Esq.


222 Delaware Avenue
Wilmington, Delaware  19801
By:  Charles A. Zdebski, Esq.
(Appearances Continued)
                             Boston, Massachusetts
                             October 24, 2018
Recording produced by digital audio recording system. Transcript
produced by Approved Court Transcriber, Donna Holmes Dominguez
```

Appearances Continued:

Alexandrea Isaac, Esq.
General Counsel for Starion
(Appearances Continued)

For NSTAR:
Eversource Energy
800 Boylston Street
Boston, Massachusetts  02199
By:  Marissa Anne Goldberg, Esq.

For National Grid:
National Grid
40 Sylvan Road
Waltham, Massachusetts  02451
By:  Christopher S. Aronson, Esq.

**I N D E X**

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|

None - Hearing

```
 1                      P R O C E E D I N G S

 2    (Court called to order.)

 3         COURT OFFICER:  Court, all rise.

 4         Court is now in session.  You may be seated.

 5         THE CLERK:  Calling Civil Action 2018-3199, Commonwealth

 6    of Massachusetts v. Starion Energy Inc.

 7         Would Counsel identify yourselves for the Court?

 8         MR. FORSTER:  Your Honor, Nathan Forster on behalf of the

 9    Commonwealth.

10         I'm joined by my college Alexander Early.

11         THE COURT:  Good morning.

12         THE EARLY:  Good morning.

13         THE COURT:  Good morning.

14         MR. WAKSLER:  Good morning, Your Honor.

15         Craig Waksler on behalf of Starion.

16         With me is my partner, Charlie Zdebski who has a pending

17    pro hoc motion in front of you.

18         THE COURT:  It will be allowed.

19         MR. WAKSLER:  Thank you, Your Honor.

20         MR. ZDEBSKI:  Good morning, Your Honor.

21         Charlie Zdebski.  I have with me my client, General

22    Counsel of Starion Energy, Alex Isaac, and --

23         MS. ISAAC:  Good morning, Your Honor.

24         THE COURT:  All right.

25         MR. ZDEBSKI:  -- our college from Eckert, Seamans, Shaina
```

1    Rosenbleet.

2          THE COURT:  Good morning.

3          MS. ROSENBLEET:  Good morning, Your Honor.

4          THE COURT:  All right.

5          So let me set the stage for you all.  I just got, 15

6    minutes ago --

7          THE CLERK:  Your Honor?

8          THE COURT:  Yes.

9          THE CLERK:  You missed two more.

10         THE COURT:  Oh, I'm sorry.

11         MS. GOLDBERG:  No, that's okay.

12         THE COURT:  You have a back bench.

13         MS. GOLDBERG:  Yeah.  We're not -- we're not the big

14   players.  So Marissa Goldberg for Eversource Energy.  We're

15   named as a -- a trustee defendant in the case.

16         THE COURT:  Good morning.

17         MR. ARONSON:  Christopher Aronson for Mass Electric, also

18   a trustee defendant, Your Honor.

19         THE COURT:  All right.  Good morning.

20         MR. ARONSON:  Good morning.

21         THE COURT:  Thank you for being here.

22         Anyone else?

23         Now, we've got the full bench.

24         I saw the government's papers before today.  I had not

25   seen the defendant's papers before today.  I've read as much

1   of them as I can.

2        Let me sort of lay the groundwork, and then I'll let the

3   parties convince me of one thing or another.

4        In a case like this, I think the standard of proof that

5   the defendants think applies is not the standard that applies

6   for a preliminary injunction.  When the government seeks a

7   preliminary injunction, unless you can convince me otherwise,

8   you'll have to climb a high hill to do this, they've got to

9   show a likelihood of success on the merits, that there's been

10  a violation, and that the order is in the public interest.

11  They do not need to show irreparable harm.

12        With respect to the class action settlement that

13  underlies all this, I'm not persuaded at all that that bars

14  the government from doing what they want to do.  Even if that

15  barred the recovery of the underlying civil claims of the

16  claimants in Massachusetts, civil penalties and fees would

17  still dwarf the 30.6 million they're seeking, if they sought

18  every nickel of it.

19        So in my view, I don't want to have a conversation about

20  whether the number is 30.6 or something else because I think

21  the government can get there in some way or not.

22        What I want to focus on is whether or not my inclination

23  to provide some form of preliminary relief is wrong.

24        I will tell you, I would be much more persuaded by both

25  sides by something that holds the parties' positions.  I'm not

1  looking to put the company out of business today.  I'm also

2  not looking to let the company walk out of here with that

3  money that's being held by the trustee processes, the trustee

4  defendants rather, freely accessible by them.

5      So I came out on the bench that if nothing happens that

6  changes my mind, I'm going to craft a middle road that doesn't

7  do what either of you want me to do, which is consistent with

8  the public interest which I think is the Court's job.

9      So it's not casting aspersions on either one of you, but

10 the notion that -- that we're going to have a factual

11 discussion about who's right or wrong, I'm only going to hear

12 that to the extent I need to decide whether there's a

13 reasonable likelihood of success on the merits.

14     I've read what the government gave me because they gave

15 it to me earlier.

16     I think to make all of those claims go away would be

17 challenging, although use your time as you will.  It seems to

18 me that the issue that I need to resolve is much like the one

19 Judge Saylor resolved in NECC.

20     Sitting here today, in light of what has been alleged, in

21 light of what the public interest, in my view, demands, what's

22 the right next step?

23     So with that, I'm going to let the government argue

24 first, although don't cite to me the standard unless you

25 really think I've missed it or if you think the defendants are

1    bringing me down the wrong path.

2        Tell me what you think I should do in light of what I

3    just told you.

4        MR. FORSTER:  Sure, Your Honor.

5        And I just want to say I think that you hit the nail on

6    the head on the standard.

7        If you go to the case Mass. CRINC, which I believe is

8    what Your Honor was referencing, this -- what the case says is

9    when the government acts to enforce a statute or make

10   effective a declared policy of the legislature, which would

11   include all the declared policies concerning trustee process

12   and attachment, the standard of public interest and not the

13   requirements of private litigation measure the proprietary and

14   need for injunctive relief.

15       THE COURT:  I have a -- a simpler view of what Mass.

16   CRINC means, having litigated as a litigant and now as a

17   Judge.

18       It's the government seeking a restraining order.  I don't

19   think there needs to be a showing of irreparable harm.

20       On the trustee process side, I don't think in light of

21   the -- the flexibility I have under that standard, reasonable

22   likelihood the plaintiff would recover judgment seems to me to

23   reflect the same thinking that reading these two provisions

24   consistently, leads me back to the Mass. CRINC standard.

25       But continue.

1        MR. FORSTER:  Sure.

2        And -- and your -- Your Honor asked me to be brief, so

3    I'll be very brief.

4        THE COURT:  I'm going to give you the last word, so you

5    don't --

6        MR. FORSTER:  Sure.

7        THE COURT:  -- this won't be the last time you speak.

8        MR. FORSTER:  The -- the -- I'll be very short.

9        So as Your Honor noted, we put forth a very significant

10   submission with a lot of evidence from our investigation.

11   I've had a chance in the hour I've had these pleadings to flip

12   through, and you know, quite frankly, there's very little hard

13   evidence, there's no contemporary emails, there's no audio

14   recordings, there's no nothing.

15       The bulk of their submission seems to be self-serving

16   statements and affidavits --

17       THE COURT:  Well --

18       MR. FORSTER:  -- and --

19       THE COURT:  -- let me ask you this, counsel.

20       MR. FORSTER:  Sure.

21       THE COURT:  They made one claim that I am intrigued by.

22   They say that the government, despite however long you've all

23   been at this, hasn't surfaced a single alleged victim, someone

24   who would say I was misled by these folks.

25       Why shouldn't I take that seriously?

1    MR. FORSTER:  Because, Your Honor, it -- it's kind of

2  like asking for the -- for the testimony of someone that there

3  was a robbery when you got them caught on tape.

4    We have audio recordings of them making these

5  misrepresentations to customers.

6    We have deposition testimony that confirms how these

7  products work, and basically confirms that they were designed

8  to cost customers money over time.  We have the scripts.  We

9  have done a comprehensive analysis of the bill records.

10    Any testimony for -- from a person who may have received

11  these calls many years ago and may have a fuzzy recollection

12  would really be redundant of the fact that we have all of the

13  evidence right here in their own documents.

14    THE COURT:  All right.

15    MR. FORSTER:  And, you know, and -- and Your Honor, you

16  know, just to -- I want to address what your principle concern

17  is, is that what is a reasonable path forward because I -- I

18  get that we're asking for a lot of security, and we're asking

19  for it because there's a lot of harm --

20    THE COURT:  Well, but assume -- I'm not interested in

21  putting a company out of business.  I don't know if that,

22  frankly, will be the result.  The defendant alleges that but

23  there's no evidence to suggest that this penalty would put it

24  out of business.

25    But be that as it may --

1    MR. FORSTER:  And -- and -- and Your Honor, I think

2    there's actually a key admission in the -- in -- in the

3    affidavit in that regard.  That -- at paragraph 11 of -- of

4    Mr. Mr. Steiner's affidavit, which is attached as Exhibit B to

5    Starion's opposition to the Commonwealth's emergency motion

6    for preliminary injunction.  He says, "Attachment or

7    injunction against payment of Starion's moneys and the

8    possession of National Grid and Eversource will overtime put

9    Starion out of business and force it to file for bankruptcy."

10    The key words are, I think, over time.  That to me is an

11    admission that they can pay something.  Even if it's not 30.6

12    million, they can pay something, and you know, we all right

13    the only party -- unfortunately we don't have more than this,

14    but Exhibit -- I believe it's Exhibit 51.

15    THE COURT:  Of the Early affidavit?

16    MR. FORSTER:  Of the Early affidavit, reflects that in

17    2013, they made nearly 8.8 million dollars in distributions to

18    their shareholders.

19    I mean -- and this is in 2013, before they even started

20    marketing to Massachusetts.  Who knows what it is now.

21    They're certainly a company that can afford to pay

22    something very significant and secured and, you know, I -- a

23    path forward that I was planning on providing you today, and

24    I'll get right to it, is, you know, -- you know, Your Honor

25    could draft a -- you could order the attachment on trustee

1    process because there's -- there's no way that they're not --

2    there -- there -- because from my understanding from National

3    Grid and Eversource, there is approximately three million,

4    maybe a little bit more, in those accounts.  That I think is

5    an absolute bare minimum if they can pay, and it is actually

6    well below the bare minimum, and ask them to provide their

7    federal and state tax returns for the last couple of years

8    because they don't need to provide distributions to their

9    shareholders, Your Honor.

10       This is a closely held corporation.  The same people who

11   are running it are the same people that have equity, and the

12   people who are -- the people other than those people appear to

13   be employees and family members.

14       So that would give you a very good idea of what it is it

15   -- what it -- what the company's able to pay.  You could order

16   them to provide that in a week.  We could come back a week

17   later for a hearing, and then we can have an intelligent

18   discussion about how profitable the company is and what they

19   would be able to pay.

20       THE COURT:  All right.

21       I told the government you'll have the last word, so let

22   me hear from the defense.

23       MR. ZDEBSKI:  Thank you, Your Honor.

24       Charlie Zdebski for Starion Energy.  And thank you for

25   granting my pro hoc motion.

1          Your Honor, I'm going to cut right to the chase, and then

2     I want to, after that, give a little bit of background if

3     that's okay.

4          THE COURT:  Yes.

5          MR. ZDEBSKI:  Starion Energy proposed in a stipulation to

6     the government that we would not bill Massachusetts customers

7     directly so that the money would continue to flow through

8     Eversource and National Grid, that we would not cancel our

9     Massachusetts customer contracts, and we would not sell,

10    assign, or otherwise transfer our Massachusetts customers to

11    anybody else.

12         THE COURT:  Okay.

13         MR. ZDEBSKI:  The government's only response to that was

14    no, that's not enough.

15         We -- we proposed -- and you were asking for a reasonable

16    middle road, and we see that as a reasonable middle road, Your

17    Honor.  We -- the -- the company has been here.  It has been

18    operating in Massachusetts since July of 2014.  I have

19    represented Starion since 2011.

20         Ms. Isaac's been their general Counsel since 2013.

21         The company's not going anywhere, we haven't gone

22    anywhere, so we made that proposal and the government's

23    response was simply no, we're not even going to talk about it.

24         Just a little bit of context, Your Honor, this

25    investigation series of investigations have been going on for

1    three and a half years.  We got the government's notice of

2    violation on July 27th of this year.  We then immediately

3    began discussions with the government as to whether there is

4    some way it amicably resolve this situation.

5         The government asked -- in fact, I suggested to the

6    government that we enter a tolling agreement because they have

7    statute of limitations issues.  The government agreed to that,

8    and we entered a tolling agreement, which is an exhibit here.

9         We then made an offer to the government on September 11th

10   of this year, Your Honor, which we believe was a good faith

11   offer, without admitting liability, but in an attempt to

12   resolve this because the stakes are very high.

13        The government sat on that offer for four weeks.  We did

14   not hear from them.  I was here in Boston on another matter.

15   I got a phone call that I had a message on October 12th on a

16   Friday that the government was rejecting our offer unless we

17   gave them what they wanted by Monday, they were filing suit.

18        THE COURT:  Uh-huh.

19        MR. ZDEBSKI:  So the government's tactics here have been

20   bullying tactics.  They're asking as Judge, jury, and

21   executioner.

22        We --

23        THE COURT:  This --

24        MR. ZDEBSKI:  We --

25        THE COURT:  -- is not unusual.

1       MR. ZDEBSKI:  I'm not saying it's unusual at all, Your

2   Honor.

3       I'm just putting in context what we did.  I apologize --

4       THE COURT:  I don't mean to -- that to impugn the AG, but

5   the AG doesn't have to negotiate with private parties, and

6   sometimes they elect not to.

7       That -- those notice of violations gives you ten days,

8   and after the tenth day, they can do what they will.

9       MR. ZDEBSKI:  Well, that's right, Your Honor, but we got

10  the papers on a Monday afternoon.  We worked very hard to

11  respond.  We filed out -- we filed our response yesterday

12  afternoon and sent a courtesy copy to chambers.  It was

13  delivered by email to the government.

14      I don't know why they have only had it for an hour this

15  morning, but --

16      THE COURT:  I didn't get it either, so -- but be that as

17  it may.

18      THE COURT:  Well, Your Honor, so we -- we've done

19  everything reasonably possible to respond in the timeframe and

20  to act in good faith to deal with the government.

21      It's interesting that the government says that Starion

22  can pay a significant judgment and that we have the assets for

23  it, yet it things that it has to secure our assets to avoid us

24  absconding with money.

25      The government can get a judgment in Massachusetts and

1    come to Connecticut and enforce a judgment if it needs to do

2    that.  We're proposing that we'll continue to do business the

3    same way here.

4         One very unusual thing about what the government has done

5    is we find ourselves in this odd situation, unlike the cases

6    that we cited where the government has sought it enjoin the

7    violations of the statute.  Here, the government hasn't done

8    that.  They haven't sought to enjoin us from allegedly

9    committing the violations that we are supposedly committing.

10   They're going right for the money.

11        If they sought to, and Your Honor, I respectfully

12   disagree with you as to the standard that applies.

13        If they sought to enjoin the violation of the statute,

14   then no irreparable harm would have to be shown because the

15   violation of the statute itself is the irreparable harm.

16   The government has not sought that.  The government is seeking

17   the money.  They haven't sought to stop us from doing

18   business.

19        In fact, in a very odd statement in their pleadings

20   they're concerned that we might stop selling to Massachusetts

21   customers.  I thought that's what they wanted us to do, but

22   they want us to keep on doing it so that they can collect the

23   money from us from Eversource and National Grid.

24        So we find ourselves in this situation.

25        Your Honor, I'm prepared to address the merits of the

1    claim.  I'll -- I'll highlight a few things from our -- our

2    brief.

3        Three and a half years, depositions of corporate

4    representatives, hundreds of thousands of pages of documents,

5    and the government hasn't identified one transaction.

6        They also have stated that they had multiple complaints

7    about Starion from individuals who filed complaints, but

8    there's been no one instance where they have Ms. Smith who was

9    -- made a particular misrepresentation allegedly, then agreed

10   to a contract, and then suffered damage.

11       They haven't done that at all.

12       And we don't see any instance where they -- they can do

13   that because it's not in their pleadings.

14       Ms. Salera, who submitted an affidavit, claims that she

15   listened to 600 recordings.

16       Out of 600 recordings, she identified ten that were made

17   to Massachusetts, and out of those ten, they submitted four.

18   Your Honor, that's .003 percent.

19       If you assume that every call made to 130,000 customers

20   resulted in a sale, which is a big assumption, that's .003

21   percent of the sales that were made to customers have been

22   submitted supposedly as evidence to wrongdoing.

23       If you listen to those recordings, there's no

24   misrepresentations in the recordings.  The recordings say

25   we're calling to give you a rate reduction.  Starion did give

1    a rate reduction.  There's no other misrepresentation.  In

2    fact, Starion's representations say we're calling on behalf of

3    Starion Energy.  They're say we're not associated with this

4    particular -- whether it was Eversource or National Grid, and

5    in fact, the reason they have those recordings is because our

6    quality assurance people picked them up as not being up to

7    Starion's standards.

8        One of them involved a 96 or 97 year old woman, and the

9    sale was rescinded because she clearly -- she didn't

10   understand what was going on.  And another involved a sales

11   associate who -- who sort of urgently said come on, come on,

12   buy this from me, and if I may, Your Honor we mistakenly, in

13   our haste you get our papers filed, included the wrong

14   attachments to Exhibit A to the opposition to the motion for

15   attachment of trustee process.  They were internal emails from

16   my colleague, and I have the correct attachments.

17       But I'd like to hand them up to the Court just to show

18   that these were emails that flagged these audio recordings as

19   being problematic.

20       THE COURT:  I'll take them.

21       MR. ZDEBSKI:  So the four audio recordings that are

22   introduced as evidence, .003 percent of our customer base, if

23   you assume that it took two calls to get every one customer,

24   that makes that .0015 percent.  That's their basis.

25       The --

1      THE COURT:  Does the government have what you're handing

2  up, counsel?

3      MR. ZDEBSKI:  I showed it to Counsel earlier, Your Honor.

4      It was our mistake.  In our haste to get everything

5  filed, we included the wrong emails.

6      We're going to submit a -- a motion today to correct the

7  record before --

8      THE COURT:  As long --

9      MR. ZDEBSKI:  -- the Court.

10      THE COURT:  -- as the government gets this seasonably.

11      All right.

12      MR. ZDEBSKI:  The other recordings, Your Honor, that were

13  submitted to the Court, there are four alleged robocalls.

14  They're not robocalls.

15      They're ringless voicemails, and a ringless voicemail is

16  something that goes directly to someone's voicemail on their

17  cell phone.

18      At the --

19      THE COURT:  So --

20      MR. ZDEBSKI:  -- time --

21      THE COURT:  -- distinguish a ringless voicemail from a

22  robocall for me.

23      MR. ZDEBSKI:  So -- certainly, Your Honor.

24      A robocall would be where an auto dialer calls somebody's

25  number and -- and -- and typically you'll hear at the

1    beginning of the call, there's a -- there's a pause because

2    there's a hand off between the auto dialing machine and the

3    live operator who then gets on the call because they've gotten

4    the person.

5        Robocalls are forbidden under Massachusetts and -- and

6    federal law in most circumstances.

7        A ringless voicemail is something that goes right to

8    somebody's voicemail, typically on their cell phone without

9    ever going through the ringing process.  It just gets directly

10   dropped in their voicemail.  I don't understand how the

11   technology works, but that's what happens.

12       At -- at the time that those voicemails -- based on the

13   emails that are attached to them, were being considered, there

14   is no case law on ringless voicemails.

15       Since then, the FCC has been looking at them and they've

16   been considerations of whether ringless voicemails violate the

17   telephone consumer protection act and I think in other states.

18       The important thing about those calls for this Court,

19   Your Honor, is that there's no evidence at all that they were

20   ever made.

21       They deposed our director of regulatory affairs, our

22   compliance manager, Rob Bassett, those calls weren't introduce

23   to him at his deposition.

24       He wasn't asked about them.  There's -- there are four

25   attached to Mr. Early's affidavit, no suggestion, no

1  foundation, no authentication that there are calls that were

2  made from one of Starion's telemarketers and placed to anybody

3  in Massachusetts.

4       So of all the recordings that are in front of the Court,

5  we've got four from Mr. Salera's affidavit and the four from

6  Mr. Early's affidavit.

7       And that's --

8       THE COURT:  So counsel --

9       MR. ZDEBSKI:  -- the --

10      THE COURT: -- isn't that an argument that the damages may

11  not be as high as the government alleges?

12      MR. ZDEBSKI:  First, it's an argument that there are no

13  damages.

14      There's no evidence that the -- the ringless voicemails

15  were ever made.

16      In fact, we -- that was the first time I ever heard them,

17  when they got produced by the government --

18      THE COURT:  But the robocalls doesn't exactly drive the

19  government's complaint.

20      MR. ZDEBSKI:  No.  No.  You're right, Your Honor.

21      I want to -- I want to go to the damages calculation for

22  a second.  Mr. Bishop assumed or somehow divined that 90

23  percent of Starion's customers are variable rate customers, so

24  that the first issue with his calculation is that actually

25  about half of Starion's customers are variable rate customers,

1  and you'll see that in Mr. Bassett's affidavit which is

2  included as Exhibit A to our opposition to the motion for the

3  attachment process.

4      His says that our current customer account is about

5  31,000, and about 15,500 are customers who came through

6  different Starion plans.

7      The Starion plan at issue before the Court is Starion

8  Simple which is a straight variable product where the -- the

9  company -- the -- the customers ordered a month to month

10  variable rate.

11      Starion Secure is not a variable product.  It's initially

12  a fixed rate product and was subsequently changed to a

13  variable rate after notice to the customer.

14      There is also Starion Echo Green Secure which is another

15  fixed period, but it's a green product which customers choose

16  because they want to support green energy.

17      So the immediate first problem with Mr. Bishop's

18  calculation is that it directly conflicts with our records and

19  our evidence, which is that 50 percent of his calculation is

20  off.

21      So I -- I'm not here for my math skills, but if I lob off

22  half of 30.6 million, I get down to 15 million.

23      The second problem with his calculation is he's now

24  comparing apples to bananas.  We -- we are charging a

25  competitive supply rate.  This is Starion's only product that

1    is sold to the public.  Everything that goes into a product

2    that's being sold to the public has to be collected on that, a

3    reasonable rate of return, a reasonable rate of profit,

4    overhead cost, general and administrative cost, and all of

5    those other things.

6        So every competitor energy supplier bases their pricing

7    on -- on recovering those things from their competitive energy

8    supply price.

9        In contrast, companies like Eversource and National Grid

10   don't have any of those things built into their energy supply

11   rate.  They don't recover administrative costs.  They don't

12   recover a profit margin.

13       Those things are all recovered through their distribution

14   charge, which every location distribution customer pays, and

15   sometimes other charges.

16       So he's comparing a cost that is our sole means of

17   recovering money to a whole sale market -- a wholesale -- I'm

18   sorry.

19       To a -- a straight pass through price that's based on

20   regulated sale -- regulated purchases in the wholesale market

21   that Eversource and National Grid and other electric

22   distribution companies engage in.

23       They're just not related, and it's -- it's -- it -- it's

24   not reliable expert testimony to say that we can simply

25   subtract the difference between what as paid for the energy

1   supply company's cost and the wholesale -- the wholesale --

2   the electric distribution company's cost.

3       The other main issue that we have with Mr. Bishop's

4   affidavit is he assumes that the customers apparently can't

5   think for themselves.

6       He says it's well known in the industry that customers

7   don't change.

8       Well, if customers don't change, we wouldn't have 30,000

9   customers.  Customers change all the time.  Customers can

10  choose to terminate their supply service with Starion.  The

11  deposition testimony from Mr. Bassett is if they -- if they

12  cancel, there's no termination fee for cancelling.

13      So the -- Mr. Bishop didn't establish any qualifications

14  as a -- a consumer behavior expert, but at the end of his

15  testimony, he says well these customers don't -- don't change,

16  they don't go back because they simply don't understand how

17  to.

18      THE COURT:  I thought what he was saying is the customers

19  don't pay attention to anything but the total bill.

20      MR. ZDEBSKI:  He did say that, but he also says --

21      THE COURT:  I'm looking at paragraph 44.

22      And at the end of 45, he says customers typically don't

23  pay this much attention to their electric bill.

24      It doesn't seem like he's saying they don't change.  It's

25  that they're not as attentive as perhaps the Attorney General

1   is.

2      MR. ZDEBSKI:  Right.  They don't pay this much attention.

3   So -- he -- he doesn't take in -- so I'm -- I'm making the

4   inference from there that because they're not paying

5   attention, they're not changing their service.

6      I -- I don't know how Mr. Bishop knows what customers do

7   and do not do.  He apparently has been analyzing rates for

8   years.  But we haven't had a chance to engage our own expert

9   or to depose him or go through any of his expert testimony

10  because of the situation that we find ourselves in.

11     But there's no basis for Mr. Bishop to know what

12  customers do and don't do, and in fact, we did submit a study

13  that was done by the Retail Energy Supply Association that

14  says customers prefer choice and they appreciate having

15  choice, and that in markets where there's been competitive

16  energy supply, including Massachusetts, overall prices have

17  gone done.  That's consistent with the affidavit that we put

18  in of Mr. Steiner, who's our company's controller, who

19  provided testimony, and we -- we took ten examples of

20  customers whose rates at different times and in different

21  months were lower than the basic service rate, which directly

22  refutes the thesis of Mr. Bishop that our rates always went up

23  over time.

24     Mr. Steiner was deposed by the Attorney General, and they

25  identified -

1      THE COURT:  When was that --

2      MR. ZDEBSKI:  -- who --

3      THE COURT:  -- counsel?

4      When was the deposition?  Remind me?

5      MR. ZDEBSKI:  I want to say it was early this year, Your

6  Honor --

7      THE COURT: All right.

8      MR. ZDEBSKI:  -- spring of 2018.

9      THE COURT:  I know I've got a transcript of it, but I

10  just don't have it in front of me.

11      But go ahead.

12      MR. ZDEBSKI:  And they picked nine or ten examples of

13  customers whose rates went up.

14      We've provided ten examples of customers whose rates from

15  month to month were often below the basic service rate.

16      So the basis for the conclusion that all customers' rates

17  went up is simply not there.

18      The rates at times go down.  At times, they don't go

19  down, and the customers are fully informed of this because

20  they get a package, they get a welcome package, and that's

21  part of our submission to Your Honor that's -- it -- terms and

22  conditions and a welcome letter that sates that the rate is

23  variable.

24      It's a month to month variable rate.  It's based on

25  market conditions and Starion's other costs and your rate may

1    fluctuate.

2         The welcome package also explains to customers that they

3    can go to a phone number, and they can call up and they can

4    get our rates at any time that they want to get our rates.

5         So on the telemarketing issues, which we addressed and --

6    and are maybe not the bulk of the Commonwealth's claims, they

7    have scant, if any, evidence.

8         On the -- the alleged violations of 93A, we have shown

9    that there's no specific transaction that they've pointed to,

10   there's no customer who's come forward and said I've been

11   harmed.  The Commonwealth easily could have taken one of the

12   complaints that they say they have and found a customer who's

13   been harmed and show that actual harm.  And then the study

14   that we've only had six or seven days to look at is wildly off

15   in the calculation of damages as to --

16        THE COURT:  Do you all -- counsel, represent the other

17   entities and the individuals as well?

18        MR. ZDEBSKI:  Your Honor, I represent two individuals,

19   and I'm not appearing here on behalf of them today.  They have

20   not been served.

21        THE COURT:  And they are Mr. Dauti and Mr. Murtishi?

22        MR. ZDEBSKI:  Mr. Dauti and Mr. Murtishi, Your Honor.

23        THE COURT:  Does anyone represent Telelink, Telestars, or

24   Shoretech?

25        MR. ZDEBSKI:  Your -- Your Honor, I'm not sure.

1        I -- I believe appearances were entered for two of those

2    entities.  I don't think an appearance was entered for

3    Telelink.

4        THE COURT:  And those folks, whoever they are, aren't

5    here, I take it?

6        MR. ZDEBSKI:  They are not.

7        THE COURT:  All right.

8        Go ahead.

9        MR. ZDEBSKI:  Well, and Your Honor that relates to

10   another point.  Clearly the Commonwealth knows that the

11   telemarketers are potentially liable here.  They have named

12   all of them as defendants.

13       THE COURT:  But they say that the individuals control

14   them all.

15       MR. ZDEBSKI:  They -- they say that.

16       THE COURT:  But if --

17       MR. ZDEBSKI:  But they --

18       THE COURT:  -- if -- if I'm -- at this stage of the game,

19   if I'm looking at what the government has represented, they're

20   essentially representing, and I'm summarizing and probably

21   doing a poor job of it, that Mr. Murtishi, anyway, owned 100

22   percent of one of the telemarking cases -- companies, rather,

23   till 2014, then transferred it to his wife, and it began to

24   work in Massachusetts.

25       Their allegation is it's all controlled by the same group

1     of individuals.  Why shouldn't I take that seriously?

2         MR. ZDEBSKI:  You can take that seriously, Your Honor,

3     but I think you should also take seriously their allegations

4     that at many times, the callers deviated from the script.

5     There was an approved marketing script or there were approved

6     marketing scripts.  The -- those were attached as an affidavit

7     to Mr. Early's -- an Exhibit to Mr. Early's affidavit.

8         Mr. Bassett's affidavit also notes that there's a --

9         THE COURT:  Yeah.  Let me ask you about that.

10        So in -- the script that was approved is not the script

11    that's attached as tab 9 to Ms. -- Mr. Early's affidavit.

12        They seem very different.  Why is that?

13        MR. ZDEBSKI:  They are very different.

14        There was an approved script that was an exhibit to Mr.

15    Bassett's deposition, which is --

16        THE COURT:  I think it might be attached to Mr. Early's

17    affidavit --

18        MR. ZDEBSKI:  It is --

19        THE COURT:  -- as well.

20        MR. ZDEBSKI:  -- Mr. Early's affidavit.

21        THE COURT:  It might be 36, but I'm making that up.

22        MR. ZDEBSKI:  And that approved script was the one that

23    Starion believed and expected its telemarketers to be

24    following.

25        THE COURT:  So is it Starion's argument that it's not

1    responsible for its agents' --

2        MR. ZDEBSKI:  Not --

3        THE COURT:  -- alleged misconduct?

4        MR. ZDEBSKI:  Not if they were acting outside the scope

5    of their authority, Your Honor.

6        THE COURT:  Why would this be acting outside the scope of

7    their authority?

8        MR. ZDEBSKI:  Because they were directed to follow

9    particular telemarketing scripts.

10        THE COURT:  How do I conclude that?

11        MR. ZDEBSKI:  That's the evidence that we've put on.

12        Mr. Bassett has -- has put together an affidavit -- poor

13    choice of words.

14        We -- we have Mr. Bassett's affidavit that says that --

15    that we had approved marketing scripts, and that we expected

16    our telemarketers to follow those scripts.

17        We also provided training.  Mr. Bassett's deposition,

18    which is included --

19        THE COURT:  Well why, as a matter of law, would that

20    exonerate Starion?  Assume all of that's true.

21        If an agent goes beyond the scope of what the agent's

22    supposed to do by the principal doesn't take any steps to

23    ensure it doesn't happen over time, wouldn't the agent -- the

24    principal still have some liability at least hypothetically?

25        MR. ZDEBSKI:  Certainly, Your Honor.  But the principal

1     would have to either have failed to take reasonable measures

2     to know about it or have known about it and done nothing.

3          And in fact, the -- the Attorney General's own pleadings

4     show that Starion had quality control measures that they

5     regularly met with their telemarkers, that we reviewed what

6     was happening.  We listened to random calls.

7          In fact, the four calls that were submitted as part of

8     Mr. Salera's affidavit were produced by our quality assurance

9     program.  We provided training packages to our telemarketing

10    folks.

11         So Starion took reasonable measures, and that's a safe

12    harbor under the -- under the Massachusetts law, if we took

13    reasonable measures to have practices and procedures in place

14    to ensure that our telemarkers were complying with law.

15         The AG didn't even address that standard in their filing.

16         So I -- the -- the issue, Your Honor, and I'm cognizant

17    of talking too much because I know Your Honor came out here

18    saying one thing.

19         I -- I did start off by getting right to the point, I

20    hope cutting to the chase and proposing something.  But the

21    more that we look at what was put forward by the Commonwealth,

22    the more problems that we find with it.

23         THE COURT:  All right.

24         Thank you, Counsel.

25         MR. ZDEBSKI:  Thank you.

1    THE COURT:  Attorney General, is there anything you want

2  to say?

3    MR. FORSTER:  Yes, Your Honor.

4    I just want to respond very briefly to some of the claims

5  Mr. Zdebski made.

6    I'm not going to address some of the telemarketing issues

7  because, I think, as Your Honor has identified, those are not

8  the gravamen of our request for relief today.

9    I want to address what they were saying about -- about

10  the calls, and I think it's very interesting that in their

11  motion, although they allege that this motion, if granted,

12  would cause the bankruptcy of the company, they aren't able to

13  provide a single audio recording of Starion representatives

14  using the approved script that appears at Exhibit 36, and in

15  fact, every single call and if Your Honor would like, I

16  brought Ms. Salera here, and she's available if you would like

17  to ask her any questions, but I'm also willing to provide you

18  a CD with all of the recordings that she listened to for an in

19  camera review, and in every single one of those recordings

20  where the agents actually gets to the sales presentation,

21  sometimes the customer cuts him off because they said don't

22  call me, I'm on the do not call list, and they hang up.

23    They make these statements, rate reduction, rate

24  reduction, rate reduction, and if you look at our submission,

25  we have several emails that suggest that Starion knew exactly

1   what script they were using.  We have an email that literally

2   says this is the MA script, and it copies Mr. Murtishi -- Mr.

3   Murtishi.

4        We have another email, that has -- that is from Mr.

5   Robert Bassett who is -- at the time was the compliance

6   manager for Starion, red lining the script, and he doesn't --

7        THE COURT:  Where in -- in the Early affidavit do I find

8   the email?

9        MR. FORSTER:  Sure.

10       THE COURT:  And I'll take the CD of the calls.

11       MR. FORSTER:  Sure.

12       THE COURT:  As long as you're --

13       MR. FORSTER:  I -- actually I don't have it with me.

14       THE COURT:  Is -- your opponent has it though; right?

15       MR. FORSTER:  No, but I'm willing to provide him with

16   copies.

17       THE COURT:  As long as they have a copy too.

18   (Discussion off the record.)

19       THE COURT:  Thank you.

20       MR. FORSTER:  And -- and Your Honor, the Exhibits that I

21   was referring to with the emails that implicate Starion's

22   principals and managers with knowledge are Early affidavit 18,

23   19, 37, and 38.

24       THE COURT:  All right.

25       MR. FORSTER:  You know --

1      And in the real world, if this was happening, where

2  they've got a compliance department that's listening to calls

3  where they have the right to request recording of any call

4  that's made, this is not something that could just go under

5  your nose, Your Honor, and there would be some piece of paper

6  that said hey, you guys are reading the wrong script, use this

7  script instead, or don't say rate reductions.

8      And in fact, what is notable about the three emails that

9  counsel provided you, he showed them to me before the hearing,

10  and I wrote down -- they say literally nothing, except that

11  they've been flagged for the QA process, and the reason is --

12  is because they were flagged for other reasons.

13      But one of them is -- one of them has a subject line that

14  is illuminating.  It says, "Thoughts on the sale, it has been

15  rescinded as she is 97 and had no clue what she was doing."

16      It doesn't say you were reading the wrong script, you

17  shouldn't say rate reductions.

18      It was flagged because there was something else wrong

19  with it.

20      And in terms of sample size, Your Honor, we requested all

21  the calls and this is all -- these are all the calls they can

22  provide us.

23      So in any trial on this case, this would be all that the

24  fact finder would have, and what you would have, Your Honor,

25  is a case where you have self-serving statements from

1    principals and for -- self-serving statements from witnesses

2    from the company, and you'd have audio recordings of what

3    actually happened and emails suggesting that they knew exactly

4    what script, and there's no question we'd be reasonably likely

5    to succeed on the merits on a case if this was actually the

6    script that they used, notwithstanding that they had some

7    piece of paper somewhere in the company that said approved

8    script on it.

9        I also want to address Mr. Zdebski's claims concerning

10   the analysis that our witness did.  Mr. Bishop is also

11   available if you'd like to ask him any questions.

12       In terms of the discrepancy between the customer numbers

13   and the discrepancy between fixed rate and variable rate,

14   Starion has at some point in time had 130,000 different people

15   signed up for its various electricity rate plans in

16   Massachusetts.

17       As their corporate designee testified, they have a high

18   degree of turn, they lose six to seven percent of their

19   customers every month.  So the fact that they have -- the

20   customers that they have now are not representative of the

21   customers that they've had over time, and Mr. Bishop looked at

22   all of the bills and he calculated the net overcharge.

23       So to the extent that there's customers, and I -- I've

24   just seen these -- had these spreadsheets for, you know, an

25   hour, Your Honor, so I haven't had a chance to check them

1    against what was produced to us.

2          To the extent they were deprived any savings, 30.6

3    million is the net number.  So if we were only to look at the

4    customers who were harmed, that would actually be a larger

5    number, you know, and in terms of their claims about, you

6    know, it's inappropriate to compare basic service to what

7    Starion charged, well, Your Honor, those are the damages

8    because these were customers that were largely on basic

9    service, and they were lured away to this other product.

10         And moreover, if they thought that that comparison was

11   inappropriate, they shouldn't have been calling National Grid

12   and Eversource customers saying that they were going to

13   provide a rate reduction.

14         So I'm happy to address anything else that you have, Your

15   Honor, but the -- any questions that you have for me about

16   what Mr. Zdebski says, but that's what I would put forward.

17         THE COURT:  All right.

18         MR. ZDEBSKI:  Your Honor, may I briefly --

19         THE COURT:  You may.

20         MR. ZDEBSKI:  -- say something?

21         Not one transaction -- there's not one, one transaction

22   with Ms. Smith saying this was said to me, here's what I did,

23   and here's the harm that happened, and they want to impound

24   our assets.

25         They've had three and a half years to put that together.

1    I submit that that is not a likelihood of prevailing on the

2    merits.

3         Audio recordings may very well exist in the hands of the

4    third party telemarketers, Telelink, Teleshores, Shoretech,

5    and others.

6         So to suggest that the -- the world of audio recordings

7    is only what Starion has is just inaccurate.  Starion doesn't

8    make the calls, so we don't have the recordings unless they

9    come to us in the quality assurance process.  Those third

10   parties --

11        THE COURT:  Until who comes to you?

12        MR. ZDEBSKI:  Well, un -- unless they're flagged, what --

13   what may --

14        THE COURT:  By the telemarketing companies?

15        MR. ZDEBSKI:  It could be flagged by a supervisor at the

16   telemarketing company, Your Honor, or Starion has the ability

17   at times to -- to listen to calls and -- and it might be

18   flagged internally by a Starion --

19        THE COURT:  When can --

20        MR. ZDEBSKI:  -- person.

21        THE COURT:  -- Starion listen to the calls?  Is it

22   routine?

23        MS. ISAAC:  They have access at all points.

24        MR. ZDEBSKI:  They have access.  They have access at any

25   time.

1          THE COURT:  All right.

2          MR. ZDEBSKI:  And the -- the last thing, Your Honor, is I

3     -- I didn't hear counsel for the Commonwealth address the

4     proposed stipulation.

5          We've offered to continue to stand here and deal with the

6     situation and not take our money anywhere, but all I hear is

7     that the Commonwealth wants to seize the company's assets

8     without one transaction as evidence.

9          THE COURT:  All right.

10         Here's what I think I'm going to do.  I'm going to take

11    this under advisement, but not for very long.  I do want to

12    think about this in two stages, so this is -- I guess it will

13    be a preview.

14         I want to think about what very short term relief is

15    going to look like, like days, not months.  I may enter an

16    order.  I want to think about it before I do, that restrains

17    any movement of money from Eversource and NSTAR or National

18    Grid, whatever the entities are, to the defendants until I

19    have a little bit more information, particularly about the

20    impact of that -- the restraint that the government is looking

21    for on the company.

22         As I said at the outset, it is not the Court's interest

23    or intent to put the company out of business.  By the same

24    token, I'm still convinced, based on what I have read in the

25    Attorney General's filings, which I'm going to test against

1   what I got from the defendants, as to whether or not they've

2   met the standard for the injunctive relief they want.

3       So what I'm going to propose is that the parties are

4   going to pick another date where we're going to reconvene.

5   That's the date on which my very temporary relief is going to

6   expire.

7       I think for two reasons.  One, I certainly need to crawl

8   through what you all have filed, and two, you all need to.  I

9   -- I get why these things get filed the way they do, so I'm

10  not being critical.  I was there once too.

11      But now that you all have filings to read, I think you

12  all need to read them so that there needs to be a little bit

13  more clarity as to what the facts in dispute are.  I

14  understand there's going to be disputes.  That's why we have

15  trials.  So I don't expect the defendants are going to say you

16  know what, we violated the law.  They have every right to --

17  to stand their ground and say the government should prove it.

18      But by the same token, I read the Bishop affidavit with

19  some care, and what I found helpful about it is that it made

20  an attempt to quantify the alleged damage that the government

21  alleged.  Now, if the government had just said take all of

22  their money, we're not having this conversation, but what the

23  government did do, was they gave me an analysis, maybe it's

24  flawed but it's a whole lot better than nothing, where Mr.

25  Bishop, who looking at his resume seems to have enough

1    experience in this field to tell me a little bit about the

2    electric -- electricity industry, to quantify what he believed

3    the net variable overcharge was, and in reading that

4    assessment, I got it.  It seemed to me to be a damages

5    assessment based on the government's view of the evidence.

6         That doesn't mean it's the final word, but to the extent

7    that I was looking for some measure on why the government's

8    30.6 million dollar in their complaint or in their motions

9    made sense, I looked at this affidavit, and I said oh, I -- I

10   get it.

11        So I'm not saying that it's the end of the line and this

12   is all I've ever needed, but for purposes of today, I find it

13   persuasive.  I thought it was logical.  I thought it made

14   sense.  And what I was equally convinced by is the

15   government's ability, exercised rarely, but the ability

16   nonetheless to assess civil penalties for each violation under

17   two different statutes, and their complimentary sets of

18   penalties.  The telemarketing penalties are in addition to the

19   93A penalties, and they're 5,000 dollars an event, at least up

20   -- that's the maximum.

21        So the -- it doesn't -- it's not hard for the government

22   to allege -- leave aside whether they can prove it.  I'm not

23   saying they've come here to prove that there is, you know, 2

24   million violations, but if they can prove a number of

25   violations and use that multiplier and their ability to

 1   recover their own costs, the numbers get very high very

 2   quickly.

 3       So I understand the defense objections.  I'd have the

 4   same if I were you.  But I think the government's got a couple

 5   of different cards to play that I need to take into account in

 6   assessing the likelihood of success on the merits of either of

 7   their claims.

 8       So here's what I'm going to ask you to do.  I'm going to

 9   ask the lawyers to actually confer with one another as -- as

10   opposed to me on high telling you when you're going to come

11   back.  Sooner is better than later.

12       I intend to issue an order today that will live for a

13   very short period of time that will restrain National Grid and

14   Eversource in some respect from providing assets to the

15   defendants.  It will be very short, and it's going to be

16   subject to revision at this subsequent hearing.

17       I want the parties to review what I've seen and I want to

18   review it myself.

19       So I'm going to give you a chance to take a look at that.

20   I -- I would be inclined to have that date sometime next week.

21   The only day the Court is unavailable is Friday.  And it has

22   to be in the afternoon so we can accommodate our trial

23   schedule, but that would be my inclination.

24       I'm going to let the parties --

25       MS. GOLDBERG:  Your Honor --

1        THE COURT:  -- confer and talk to the clerk.

2        Yes?

3        MS. GOLDBERG: I'm here on behalf of Eversource, and I'm

4     just hearing that there may be a temporary order to restrain

5     things today.

6        We of course will comply with any order the Court gives,

7     although our systems -- you know, are antiquated and there are

8     kind of IT issues of just kind of stopping payment that's this

9     day.  I think I need a couple of days to make sure we can

10    apply that order.

11       I just don't think if an order issues --

12       THE COURT:  You're trying to avoid the contempt finding,

13    aren't you?

14       MS. GOLDBERG:  I am, to be honest, and I want to comply

15    with the order --

16       THE COURT:  Very wise.

17       MS. GOLDBERG:  Okay.

18       THE COURT:  I -- I -- I appreciate the --

19       MS. GOLDBERG:  Okay.

20       THE COURT:  -- is that a problem for you all as well?

21       MR. ARONSON:  It may be.  I think we can do a -- it

22    within a day or so or maybe two, but we will make our best

23    efforts to comply as soon as reasonably practical.

24       THE COURT:  All right.

25       I might actually use that language, that I expect

1   compliance as soon as -- as soon as possible as opposed to

2   reasonably practical.

3        If there is a problem, you all can file a motion and

4   bring it to my attention.  Forget 9A.  It would be an

5   emergency motion.  You can file that.  I'm not looking to hold

6   utilities in contempt, but I understand the realities of

7   effectuating an order, but I'll put something in the order

8   that gives you a little bit of wiggle room, but if it's a

9   problem, please bring it forward.

10       MS. GOLDBERG:  Okay.  Thank you.

11       MR. ARONSON:  Thank you, Your Honor.

12       THE COURT:  With those very preliminary thoughts,

13  anything the parties need to tell me before I let you talk to

14  one another?

15       MR. FORSTER:  Two things, Your Honor.

16       First of all, in -- in terms of this subsequent process,

17  I would re-assert sort of my request that the company provide

18  tax returns for the years in which its been doing business

19  here in Massachusetts, because we may get to a point, if Your

20  Honor is convinced at the end of the day that Mr. Bishop's

21  affidavit should win the -- win the day and Your Honor wants

22  to enter some relief that wouldn't put the company out of

23  business, we need to know how profitable the company is to

24  figure out what that relief should be.

25       And second, as more of an administrative matter, we have

1     also filed a motion for impoundment of certain materials that

2     inadvertently provided --

3         THE COURT:  I -- I allowed that.

4         MR. FORSTER:  Okay.

5         THE COURT:  So not a concern.

6         MR. FORSTER:  Perfect.

7         So then my only issue is -- is the -- the request that

8     they provide their tax returns in advance of the hearing that

9     Your Honor foresees.

10        THE COURT:  And when you say they, who is the they in

11    that sentence?

12        MR. FORSTER:  Starion Energy, Inc.

13        THE COURT:  All right.  I'll consider that.

14        Anything else, counsel?

15        MR. ZDEBSKI:  Your Honor, I -- my personal schedule is

16    that I have a matter that's been scheduled that has me away

17    Monday, Tuesday, and Wednesday of next week.

18        THE COURT:  It sounds like those days are out.

19        MR. ZDEBSKI:  I'm wondering if very early the following

20    week might be available for the Court.

21        THE COURT:  Well, I'm going to let you talk to the

22    government about that.  It's available for the Court, but the

23    day you give me is the date that the preliminary relief I'm

24    going to issue ends.

25        So in many respects, do what you need to do, choose a

```
 1   date that's sooner rather than later.

 2        As I said at the outset, and I -- I mean it, I -- I'm --

 3   I want to do what is fair, and logical, and supported by the

 4   evidence, even under this truncated schedule, so I do want

 5   more information before I permanently enjoin the two utilities

 6   from doing what they would normally do.

 7        But if you need into the following week, you know, I'll

 8   allow that.

 9        MR. ZDEBSKI:  I understand, Your Honor.  I just wanted to

10   be fully transparent, and --

11        THE COURT:  All right.  I appreciate that.

12        MR. ZDEBSKI:   Thank you.

13        THE COURT:  Thank you all very much.

14        COURT OFFICER:  Okay.

15        All rise.

16        Court stands in recess.

17

18

19

20

21

22

23

24

25                        (Adjourned)
```



**The Commonwealth of Massachusetts**
**OFFICE OF COURT MANAGEMENT, Transcription Services**

## AUDIO ASSESSMENT FORM

> ***For court transcribers:*** *Complete this assessment form for each volume of transcript produced, and include it at the back of every original and copy transcript with the certificate page, word index, and CD PDF transcript.*

**TODAY'S DATE:** October 31, 2018      **TRANSCRIBER NAME:** Donna H Dominguez

**CASE NAME:** Comm v Starion Energy et al      **CASE NUMBER:** 1884CV03199

**RECORDING DATE** October 24 2018      **TRANSCRIPT VOLUME:** 1  OF  1

---

*(circle one)* **TYPE:  CD  TAPE**      **QUALITY:  EXCELLENT   <mark>GOOD</mark>   FAIR   POOR**

*(circle all that apply)* **ISSUES** *(include time stamp):*

**background noise**              **time stamp:**_____

**low audio**                          _____

**low audio at sidebar**          _____

**simultaneous speech**          _____

**speaking away of microphone**   _____

**other:**_____       **time stamp:**_____

_____          _____

_____          _____

_____          _____

**COMMENTS:**_____
_____
_____
_____

## <u>Certificate of Accuracy</u>

I, Donna Holmes Dominguez, an Approved Court Transcriber, do hereby certify that the foregoing is a true and accurate transcript of the audio recording provided to me by the Suffolk County Superior Court regarding proceedings in the above-entitled matter.

I, Donna Holmes Dominguez, further certify that the foregoing is in compliance with the Administrative Office of the Trial Court Directive on Transcript Format.

I, Donna Holmes Dominguez, further certify that I neither am counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further that I am not financially nor otherwise interested in the outcome of the action.

_____
Donna Holmes Dominguez, ACT, CET
Notary Public, Commission Expires 5-17-24

October 31, 2018_____
Date

_(781) 575-8000_____


donna@dhreporting.com

*DH Reporting Services, Inc. (781) 575-8000*

## 0

**0015** [1] 18:24
**003** [3] 17:18,20 18:22

## 1

**100** [1] 28:21
**11** [1] 11:3
**11th** [1] 14:9
**12th** [1] 14:15
**130,000** [2] 17:19 35:14
**15** [2] 5:5 22:22
**15,500** [1] 22:5
**18** [1] 33:22
**19** [1] 33:23

## 2

**2** [1] 40:23
**2011** [1] 13:19
**2013** [3] 11:17,19 13:20
**2014** [2] 13:18 28:23
**2018** [1] 26:8
**2018-3199** [1] 4:5
**27th** [1] 14:2

## 3

**30,000** [1] 24:8
**30.6** [6] 6:17,20 11:11 22:
  22 36:2 40:8
**31,000** [1] 22:5
**36** [2] 29:21 32:14
**37** [1] 33:23
**38** [1] 33:23

## 4

**44** [1] 24:21
**45** [1] 24:22

## 5

**5,000** [1] 40:19
**50** [1] 22:19
**51** [1] 11:14

## 6

**600** [2] 17:15,16

## 8

**8.8** [1] 11:17

## 9

**9** [1] 29:11
**90** [1] 21:22

**93a** [2] 27:8 40:19
**96** [1] 18:8
**97** [2] 18:8 34:15
**9a** [1] 43:4

## "

**"attachment** [1] 11:6
**"thoughts** [1] 34:14

## A

**ability** [4] 37:16 40:15,15,
  25
**able** [3] 12:15,19 32:12
**absconding** [1] 15:24
**absolute** [1] 12:5
**access** [3] 37:23,24,24
**accessible** [1] 7:4
**accommodate** [1] 41:22
**account** [2] 22:4 41:5
**accounts** [1] 12:4
**act** [2] 15:20 20:17
**acting** [2] 30:4,6
**action** [2] 4:5 6:12
**acts** [1] 8:9
**actual** [1] 27:13
**actually** [10] 11:2 12:5 21:
  24 32:20 33:13 35:3,5 36:4
  41:9 42:25
**addition** [1] 40:18
**address** [8] 10:16 16:25
  31:15 32:6,9 35:9 36:14 38:
  3
**addressed** [1] 27:5
**adjourned** [1] 45:25
**administrative** [3] 23:4,
  11 43:25
**admission** [2] 11:2,11
**admitting** [1] 14:11
**advance** [1] 44:8
**advisement** [1] 38:11
**affairs** [1] 20:21
**affidavit** [25] 11:3,4,15,16
  17:14 20:25 21:5,6 22:1 24:
  4 25:17 29:6,7,8,11,17,20
  30:12,14 31:8 33:7,22 39:
  18 40:9 43:21
**affidavits** [1] 9:16
**afford** [1] 11:21
**afternoon** [3] 15:10,12 41:
  22

**ag** [3] 15:4,5 31:15
**agent** [2] 30:21,23
**agent's** [1] 30:21
**agents** [1] 32:20
**agents'** [1] 30:1
**ago** [2] 5:6 10:11
**agreed** [2] 14:7 17:9
**agreement** [2] 14:6,8
**ahead** [2] 26:11 28:8
**alex** [1] 4:22
**alexander** [1] 4:10
**allegation** [1] 28:25
**allegations** [1] 29:3
**allege** [2] 32:11 40:22
**alleged** [7] 7:20 9:23 19:
  13 27:8 30:3 39:20,21
**allegedly** [2] 16:8 17:9
**alleges** [2] 10:22 21:11
**allow** [1] 45:8
**allowed** [2] 4:18 44:3
**although** [4] 7:17,24 32:
  11 42:7
**amicably** [1] 14:4
**analysis** [3] 10:9 35:10 39:
  23
**analyzing** [1] 25:7
**another** [9] 6:3 14:14 18:
  10 22:14 30:10 33:4 39:4
  41:9 43:14
**antiquated** [1] 42:7
**anybody** [2] 13:11 21:2
**anyway** [1] 28:21
**apologize** [1] 15:3
**apparently** [2] 24:4 25:7
**appear** [1] 12:12
**appearance** [1] 28:2
**appearances** [1] 28:1
**appearing** [1] 27:19
**appears** [1] 32:14
**apples** [1] 22:24
**applies** [3] 6:5,5 16:12
**apply** [1] 42:10
**appreciate** [2] 25:14 42:
  18 45:11
**approved** [8] 29:5,5,10,14,
  22 30:15 32:14 35:7
**approximately** [1] 12:3
**aren't** [1] 42:13
**aren't** [2] 28:4 32:12
**argue** [1] 7:23

**argument** [3] 21:10,12 29:
  25
**aronson** [5] 5:17,17,20 42:
  21 43:11
**aside** [1] 40:22
**aspersions** [1] 7:9
**assess** [1] 40:16
**assessing** [1] 41:6
**assessment** [2] 40:4,5
**assets** [3] 15:22,23 36:24
  38:7 41:14
**assign** [1] 13:10
**associate** [1] 18:11
**associated** [1] 18:3
**association** [1] 25:13
**assume** [4] 10:20 17:19
  18:23 30:20
**assumed** [1] 21:22
**assumes** [1] 24:4
**assumption** [1] 17:20
**assurance** [3] 18:6 31:8
  37:9
**attached** [6] 11:4 20:13,25
  29:6,11,16
**attachment** [4] 8:12 11:
  25 18:15 22:3
**attachments** [2] 18:14,16
**attempt** [2] 14:11 39:20
**attention** [5] 24:19,23 25:
  2,5 43:4
**attentive** [1] 24:25
**attorney** [5] 24:25 25:24
  31:3 32:1 38:25
**audio** [8] 9:13 10:4 18:18,
  21 32:13 35:2 37:3,6
**authentication** [1] 21:1
**authority** [2] 30:5,7
**auto** [2] 19:24 20:2
**available** [4] 32:16 35:11
  44:20,22
**avoid** [2] 15:23 42:12
**away** [3] 7:16 36:9 44:16

## B

**back** [5] 5:12 8:24 12:16
  24:16 41:11
**background** [1] 13:2
**bananas** [1] 22:24
**bankruptcy** [1] 32:12
**bankruptcy."** [1] 11:9

bare [2] 12:5,6
barred [1] 6:15
bars [1] 6:13
base [1] 18:22
based [5] 20:12 23:19 26: 24 38:24 40:5
bases [1] 23:6
basic [4] 25:21 26:15 36:6, 8
basically [1] 10:7
basis [3] 18:24 25:11 26: 16
bassett [4] 20:22 24:11 30: 12 33:5
bassett's [5] 22:1 29:8,15 30:14,17
began [2] 14:3 28:23
beginning [1] 20:1
behalf [5] 4:8,15 18:2 27: 19 42:3
behavior [1] 24:14
believe [4] 8:7 11:14 14: 10 28:1
believed [2] 29:23 40:2
below [2] 12:6 26:15
bench [3] 5:12,23 7:5
best [1] 42:22
better [2] 39:24 41:11
between [4] 20:2 23:25 35: 12,13
beyond [1] 30:21
big [2] 5:13 17:20
bill [4] 10:9 13:6 24:19,23
bills [1] 35:22
bishop [9] 21:22 24:13 25: 6,11,22 35:10,21 39:18,25
bishop's [3] 22:17 24:3 43:20
bit [7] 12:4 13:2,24 38:19 39:12 40:1 43:8
boston [1] 14:14
both [1] 6:24
brief [3] 9:2,3 17:2
briefly [3] 32:4 36:18
bring [2] 43:4,9
bringing [1] 8:1
brought [1] 32:16
built [1] 23:10
bulk [2] 9:15 27:6
bullying [1] 14:20

business [9] 7:1 10:21,24 11:9 16:2,18 38:23 43:18, 23
buy [1] 18:12

---

# C

calculated [1] 35:22
calculation [6] 21:21,24 22:18,19,23 27:15
call [4] 14:15 17:19 20:1,3 27:3 32:15,22,22 34:3
called [1] 4:2
callers [1] 29:4
calling [4] 4:5 17:25 18:2 36:11
calls [16] 10:11 18:23 19: 24 20:18,22 21:1 31:6,7 32: 10 33:10 34:2,21,21 37:8, 17,21
came [3] 7:5 22:5 31:17
camera [1] 32:19
cancel [2] 13:8 24:12
cancelling [1] 24:12
cards [1] 41:5
care [1] 39:19
case [8] 5:15 6:4 8:7,8 20: 14 34:23,25 35:5
cases [2] 16:5 28:22
casting [1] 7:9
caught [1] 10:3
cause [1] 32:12
cd [2] 32:18 33:10
cell [2] 19:17 20:8
certain [1] 44:1
certainly [4] 11:21 19:23 30:25 39:7
challenging [1] 7:17
chambers [1] 15:12
chance [4] 9:11 25:8 35: 25 41:19
change [5] 24:7,8,9,15,24
changed [1] 22:12
changes [1] 7:6
changing [1] 25:5
charge [1] 23:14
charged [1] 36:7
charges [1] 23:15
charging [1] 22:24
charlie [3] 4:16,21 12:24
chase [2] 13:1 31:20

check [1] 35:25
choice [3] 25:14,15 30:13
choose [3] 22:15 24:10 44: 25
christopher [1] 5:17
circumstances [1] 20:6
cite [1] 7:24
cited [1] 16:6
civil [4] 4:5 6:15,16 40:16
claim [2] 9:21 17:1
claimants [1] 6:16
claims [8] 6:15 7:16 17:14 27:6 32:4 35:9 36:5 41:7
clarity [1] 39:13
class [1] 6:12
clearly [2] 18:9 28:10
clerk [4] 4:5 5:7,9 42:1
client [1] 4:21
climb [1] 6:8
closely [1] 12:10
clue [1] 34:15
cognizant [1] 31:16
colleague [1] 18:16
collect [1] 16:22
collected [1] 23:2
college [2] 4:10,25
come [8] 12:16 16:1 18:11, 11 27:17 37:9 40:23 41:10
comes [1] 37:11
committing [2] 16:9,9
commonwealth [7] 4:5,9 27:11 28:10 31:21 38:3,7
commonwealth's [2] 11: 5 27:6
companies [4] 23:9,22 28: 22 37:14
company [16] 7:1,2 10:21 11:21 12:18 13:17 22:9 32: 12 35:2,7 37:16 38:21,23 43:17,22,23
company's [6] 12:15 13: 21 24:1,2 25:18 38:7
compare [1] 36:6
comparing [2] 22:24 23: 16
comparison [1] 36:10
competitive [3] 22:25 23: 7 25:15
competitor [1] 23:6
complaint [2] 21:19 40:8

complaints [3] 17:6,7 27: 12
compliance [4] 20:22 33: 5 34:2 43:1
complimentary [1] 40:17
comply [3] 42:6,14,23
complying [1] 31:14
comprehensive [1] 10:9
concern [2] 10:16 44:5
concerned [1] 16:20
concerning [2] 8:11 35:9
conclude [1] 30:10
conclusion [1] 26:16
conditions [2] 26:22,25
confer [2] 41:9 42:1
confirms [2] 10:6,7
conflicts [1] 22:18
connecticut [1] 16:1
consider [1] 44:13
considerations [1] 20:16
considered [1] 20:13
consistent [2] 7:7 25:17
consistently [1] 8:24
consumer [2] 20:17 24:14
contemporary [1] 9:13
contempt [2] 42:12 43:6
context [2] 13:24 15:3
continue [4] 8:25 13:7 16: 2 38:5
contract [1] 17:10
contracts [1] 13:9
contrast [1] 23:9
control [2] 28:13 31:4
controlled [1] 28:25
controller [1] 25:18
conversation [2] 6:19 39: 22
convince [2] 6:3,7
convinced [3] 38:24 40: 14 43:20
copies [2] 33:2,16
copy [2] 15:12 33:17
corporate [2] 17:3 35:17
corporation [1] 12:10
correct [2] 18:16 19:6
cost [6] 10:8 23:4,4,16 24: 1,2
costs [3] 23:11 26:25 41:1
counsel [13] 4:7,22 9:19 13:20 19:2,3 21:8 26:3 27:

*DH Reporting Services, Inc. (781) 575-8000*

16 **31**:24 **34**:9 **38**:3 **44**:14
**couple** [3] **12**:7 **41**:4 **42**:9
**course** [1] **42**:6
**court's** [2] **7**:8 **38**:22
**courtesy** [1] **15**:12
**craft** [1] **7**:6
**craig** [1] **4**:15
**crawl** [1] **39**:7
**crinc** [3] **8**:7,16,24
**critical** [1] **39**:10
**current** [1] **22**:4
**customer** [10] **13**:9 **18**:22, 23 **22**:4,13 **23**:14 **27**:10,12 **32**:21 **35**:12
**customers** [38] **10**:5,8 **13**:6,10 **16**:21 **17**:19,21 **21**:23, 23,25,25 **22**:5,9,15 **24**:4,6, 8,9,9,9,15,18,22 **25**:6,12,14, 20 **26**:13,14,19 **27**:2 **35**:19, 20,21,23 **36**:4,8,12
**customers'** [1] **26**:16
**cut** [1] **13**:1
**cuts** [1] **32**:21
**cutting** [1] **31**:20

## D

**damage** [2] **17**:10 **39**:20
**damages** [6] **21**:10,13,21 **27**:15 **36**:7 **40**:4
**date** [5] **39**:4,5 **41**:20 **44**:23 **45**:1
**dauti** [2] **27**:21,22
**day** [7] **15**:8 **41**:21 **42**:9,22 **43**:20,21 **44**:23
**days** [5] **15**:7 **27**:14 **38**:15 **42**:9 **44**:18
**deal** [2] **15**:20 **38**:5
**decide** [1] **7**:12
**declared** [2] **8**:10,11
**defendant** [3] **5**:15,18 **10**:22
**defendant's** [1] **5**:25
**defendants** [8] **6**:5 **7**:4,25 **28**:12 **38**:18 **39**:1,15 **41**:15
**defense** [2] **12**:22 **41**:3
**degree** [1] **35**:18
**delivered** [1] **15**:13
**demands** [1] **7**:21
**department** [1] **34**:2
**depose** [1] **25**:9

**deposed** [2] **20**:21 **25**:24
**deposition** [6] **10**:6 **20**:23 **24**:11 **26**:4 **29**:15 **30**:17
**depositions** [1] **17**:3
**deprived** [1] **36**:2
**designed** [1] **10**:7
**designee** [1] **35**:17
**despite** [1] **9**:22
**deviated** [1] **29**:4
**dialer** [1] **19**:24
**dialing** [1] **20**:2
**difference** [1] **23**:25
**different** [8] **22**:6 **25**:20,20 **29**:12,13 **35**:14 **40**:17 **41**:5
**directed** [1] **30**:8
**directly** [5] **13**:7 **19**:16 **20**:9 **22**:18 **25**:21
**director** [1] **20**:21
**disagree** [1] **16**:12
**discrepancy** [2] **35**:12,13
**discussion** [3] **7**:11 **12**:18 **33**:18
**discussions** [1] **14**:3
**dispute** [1] **39**:13
**disputes** [1] **39**:14
**distinguish** [1] **19**:21
**distribution** [4] **23**:13,14, 22 **24**:2
**distributions** [2] **11**:17 **12**:8
**divined** [1] **21**:22
**documents** [2] **10**:13 **17**:4
**doing** [6] **6**:14 **16**:17,22 **28**:21 **43**:18 **45**:6
**doing."** [1] **34**:15
**dollar** [1] **40**:8
**dollars** [2] **11**:17 **40**:19
**don't** [35] **6**:19 **7**:24 **8**:18, 20 **9**:5 **10**:21 **11**:13 **12**:8 **15**:4,14 **17**:12 **20**:10 **23**:10,11, 11 **24**:7,8,15,15,16,16,19, 22,24 **25**:2,6,12 **26**:10,18 **32**:21 **33**:13 **34**:7 **37**:8 **39**:15 **42**:11
**done** [8] **10**:9 **15**:18 **16**:4,7 **17**:11 **25**:13,17 **31**:2
**down** [5] **8**:1 **22**:22 **26**:18, 19 **34**:10
**draft** [1] **11**:25

**drive** [1] **21**:18
**dropped** [1] **20**:10
**dwarf** [1] **6**:17

## E

**each** [1] **40**:16
**earlier** [2] **7**:15 **19**:3
**early** [8] **4**:10,12 **11**:15,16 **26**:5 **33**:7,22 **44**:19
**early's** [7] **20**:25 **21**:6 **29**:7, 7,11,16,20
**easily** [1] **27**:11
**echo** [1] **22**:14
**eckert** [1] **4**:25
**effective** [1] **8**:10
**effectuating** [1] **43**:7
**efforts** [1] **42**:23
**either** [5] **7**:7,9 **15**:16 **31**:1 **41**:6
**elect** [1] **15**:6
**electric** [5] **5**:17 **23**:21 **24**:2,23 **40**:2
**electricity** [2] **35**:15 **40**:2
**email** [4] **15**:13 **33**:1,4,8
**emails** [9] **9**:13 **18**:15,18 **19**:5 **20**:13 **32**:25 **33**:21 **34**:8 **35**:3
**emergency** [2] **11**:5 **43**:5
**employees** [1] **12**:13
**end** [4] **24**:14,22 **40**:11 **43**:20
**ends** [1] **44**:24
**energy** [14] **4**:6,22 **5**:14 **12**:24 **13**:5 **18**:3 **22**:16 **23**:6,7, 10,25 **25**:13,16 **44**:12
**enforce** [2] **8**:9 **16**:1
**engage** [2] **23**:22 **25**:8
**enjoin** [4] **16**:6,8,13 **45**:5
**enough** [2] **13**:14 **39**:25
**ensure** [2] **30**:23 **31**:14
**enter** [3] **14**:6 **38**:15 **43**:22
**entered** [3] **14**:8 **28**:1,2
**entities** [3] **27**:17 **28**:2 **38**:18
**equally** [1] **40**:14
**equity** [1] **12**:11
**essentially** [1] **28**:20
**establish** [1] **24**:13
**even** [6] **6**:14 **11**:11,19 **13**:23 **31**:15 **45**:4

**event** [1] **40**:19
**eversource** [12] **5**:14 **11**:8 **12**:3 **13**:8 **16**:23 **18**:4 **23**:9, 21 **36**:12 **38**:17 **41**:14 **42**:3
**everything** [3] **15**:19 **19**:4 **23**:1
**evidence** [14] **9**:10,13 **10**:13,23 **17**:22 **18**:22 **20**:19 **21**:14 **22**:19 **27**:7 **30**:11 **38**:8 **40**:5 **45**:4
**exactly** [3] **21**:18 **32**:25 **35**:3
**examples** [3] **25**:19 **26**:12, 14
**except** [1] **34**:10
**executioner** [1] **14**:21
**exercised** [1] **40**:15
**exhibit** [9] **11**:4,14,14 **14**:8 **18**:14 **22**:2 **29**:7,14 **32**:14
**exhibits** [1] **33**:20
**exist** [1] **37**:3
**exonerate** [1] **30**:20
**expect** [2] **39**:15 **42**:25
**expected** [2] **29**:23 **30**:15
**experience** [1] **40**:1
**expert** [4] **23**:24 **24**:14 **25**:8,9
**expire** [1] **39**:6
**explains** [1] **27**:2
**extent** [4] **7**:12 **35**:23 **36**:2 **40**:6

## F

**fact** [13] **10**:12 **14**:5 **16**:19 **18**:2,5 **21**:16 **25**:12 **31**:3,7 **32**:15 **34**:8,24 **35**:19
**facts** [1] **39**:13
**factual** [1] **7**:10
**failed** [1] **31**:1
**fair** [1] **45**:3
**faith** [2] **14**:10 **15**:20
**family** [1] **12**:13
**fcc** [1] **20**:15
**federal** [2] **12**:7 **20**:6
**fee** [1] **24**:12
**fees** [1] **6**:16
**few** [1] **17**:1
**field** [1] **40**:1
**figure** [1] **43**:24
**file** [3] **11**:9 **43**:3,5

filed [8] 15:11,11 17:7 18:
13 19:5 39:8,9 44:1
filing [2] 14:17 31:15
filings [2] 38:25 39:11
final [1] 40:6
find [6] 16:5,24 25:10 31:
22 33:7 40:12
finder [1] 34:24
finding [1] 42:12
first [6] 7:24 21:12,16,24
22:17 43:16
fixed [3] 22:12,15 35:13
flagged [7] 18:18 34:11,12,
18 37:12,15,18
flawed [1] 39:24
flexibility [1] 8:21
flip [1] 9:11
flow [1] 13:7
fluctuate [1] 27:1
focus [1] 6:22
folks [3] 9:24 28:4 31:10
follow [2] 30:8,16
following [3] 29:24 44:19
45:7
forbidden [1] 20:5
force [1] 11:9
foresees [1] 44:9
forget [1] 43:4
form [1] 6:23
forster [23] 4:8,8 8:4 9:1,6,
8,18,20 10:1,15 11:1,16 32:
3 33:9,11,13,15,20,25 43:
15 44:4,6,12
forth [1] 9:9
forward [6] 10:17 11:23
27:10 31:21 36:16 43:9
found [2] 27:12 39:19
foundation [1] 21:1
four [8] 14:13 17:17 18:21
19:13 20:24 21:5,5 31:7
frankly [2] 9:12 10:22
freely [1] 7:4
friday [2] 14:16 41:21
front [3] 4:17 21:4 26:10
full [1] 5:23
fully [2] 26:19 45:10
fuzzy [1] 10:11

### G

game [1] 28:18

gave [4] 7:14,14 14:17 39:
23
general [6] 4:21 13:20 23:
4 24:25 25:24 32:1
general's [2] 31:3 38:25
gets [4] 19:10 20:3,9 32:20
getting [1] 31:19
give [7] 9:4 12:14 13:2 17:
25,25 41:19 44:23
gives [3] 15:7 42:6 43:8
goldberg [9] 5:11,13,14
41:25 42:3,14,17,19 43:10
got [14] 5:5,23 6:8 10:3 14:
1,15 15:9 21:5,17 26:9 34:
2 39:1 40:4 41:4
gotten [1] 20:3
government [39] 6:6,14,
21 7:14,23 8:9,18 9:22 12:
21 13:6 14:3,5,6,7,9,13,16
15:13,20,21,25 16:4,6,7,16,
16 17:5 19:1,10 21:11,17
28:19 38:20 39:17,20,21,
23 40:21 44:22
government's [10] 5:24
13:13,22 14:1,19 21:19 40:
5,7,15 41:4
granted [1] 32:11
granting [1] 12:25
gravamen [1] 32:8
green [3] 22:14,15,16
grid [10] 11:8 12:3 13:8 16:
23 18:4 23:9,21 36:11 38:
18 41:13
ground [1] 39:17
groundwork [1] 6:2
group [1] 28:25
guess [1] 38:12
guys [1] 34:6

### H

half [5] 14:1 17:3 21:25 22:
22 36:25
hand [2] 18:17 20:2
handing [1] 19:1
hands [1] 37:3
hang [1] 32:22
happen [1] 30:23
happened [2] 35:3 36:23
happening [2] 31:6 34:1
happens [2] 7:5 20:11

happy [1] 36:14
harbor [1] 31:12
hard [3] 9:12 15:10 40:21
harm [7] 6:11 8:19 10:19
16:14,15 27:13 36:23
harmed [3] 27:11,13 36:4
hasn't [3] 9:23 16:7 17:5
haste [2] 18:13 19:4
haven't [1] 35:25
he's [3] 22:23 23:16 24:24
head [1] 8:6
hear [6] 7:11 12:22 14:14
19:25 38:3,6
heard [1] 21:16
hearing [5] 12:17 34:9 41:
16 42:4 44:8
held [2] 7:3 12:10
helpful [1] 39:19
here's [4] 36:22,23 38:10
41:8
high [6] 6:8 14:12 21:11 35:
17 41:1,10
highlight [1] 17:1
hill [1] 6:8
hit [1] 8:5
hoc [2] 4:17 12:25
hold [1] 43:5
holds [1] 6:25
honest [1] 42:14
honor [66] 4:8,14,19,20,23
5:3,7,18 8:4,8 9:2,9 10:1,
15 11:1,24 12:9,23 13:1,17,
24 14:10 15:2,9,18 16:11,
25 17:18 18:12 19:3,12,23
20:19 21:20 26:6,21 27:18,
22,25 28:9 29:2 30:5,25 31:
16,17 32:3,7,15 33:20 34:5,
20,24 35:25 36:7,15,18 37:
16 38:2 41:25 43:11,15,20,
21 44:9,15 45:9
hope [1] 31:20
hour [3] 9:11 15:14 35:25
however [1] 9:22
hundreds [1] 17:4
hypothetically [1] 30:24

### I

i'd [2] 18:17 41:3
i'll [11] 6:2 9:3,8 11:24 17:1,
1 18:20 33:10 43:7 44:13

45:7
i've [10] 5:25 7:14,25 9:11,
11 26:9 27:10 35:23 40:12
41:17
idea [1] 12:14
identified [4] 17:5,16 25:
25 32:7
identify [1] 4:7
illuminating [1] 34:14
immediate [1] 22:17
immediately [1] 14:2
impact [1] 38:20
implicate [1] 33:21
important [1] 20:18
impound [1] 36:23
impoundment [1] 44:1
impugn [1] 15:4
inaccurate [1] 37:7
inadvertently [1] 44:2
inappropriate [2] 36:6,11
inc [2] 4:6 44:12
inclination [2] 6:22 41:23
inclined [1] 41:20
include [1] 8:11
included [4] 18:13 19:5
22:2 30:18
including [1] 25:16
individuals [5] 17:7 27:17,
18 28:13 29:1
industry [2] 24:6 40:2
inference [1] 25:4
information [2] 38:19 45:
5
informed [1] 26:19
initially [1] 22:11
injunction [4] 6:6,7 11:6,7
injunctive [2] 8:14 39:2
instance [2] 17:8,12
instead [1] 34:7
intelligent [1] 12:17
intend [1] 41:12
intent [1] 38:23
interest [5] 6:10 7:8,21 8:
12 38:22
interested [1] 10:20
interesting [2] 15:21 32:
10
internal [1] 18:15
internally [1] 37:18
intrigued [1] 9:21

*DH Reporting Services, Inc. (781) 575-8000*

**introduce** [1] 20:22
**introduced** [1] 18:22
**investigation** [2] 9:10 13:25
**investigations** [1] 13:25
**involved** [2] 18:8,10
**irreparable** [4] 6:11 8:19 16:14,15
**isaac** [3] 4:22,23 37:23
**isaac's** [1] 13:20
**isn't** [1] 21:10
**issue** [8] 7:18 21:24 22:7 24:3 31:16 41:12 44:7,24
**issues** [5] 14:7 27:5 32:6 42:8,11
**it's** [30] 7:9 8:18 10:1 11:11, 14 15:1,21 17:13 21:12 22:11,15 23:23,23,23 24:6,24 26:24,24 28:25 29:25 32:10 36:6 39:23,24 40:6,11, 21 41:15 43:8 44:22
**itself** [1] 16:15

## J

**job** [2] 7:8 28:21
**joined** [1] 4:10
**judge** [3] 7:19 8:17 14:20
**judgment** [4] 8:22 15:22, 25 16:1
**july** [2] 13:18 14:2
**jury** [1] 14:20

## K

**keep** [1] 16:22
**key** [2] 11:2,10
**kind** [3] 10:1 42:8,8
**knowledge** [1] 33:22
**known** [2] 24:6 31:2
**knows** [3] 11:20 25:6 28:10

## L

**language** [1] 42:25
**largely** [1] 36:8
**larger** [1] 36:4
**last** [5] 9:4,7 12:7,21 38:2
**later** [3] 12:17 41:11 45:1
**law** [6] 20:6,14 30:19 31:12, 14 39:16
**lawyers** [1] 41:9

**lay** [1] 6:2
**leads** [1] 8:24
**least** [2] 30:24 40:19
**leave** [1] 40:22
**legislature** [1] 8:10
**letter** [1] 26:22
**liability** [2] 14:11 30:24
**liable** [1] 28:11
**light** [4] 7:20,21 8:2,20
**likelihood** [5] 6:9 7:13 8:22 37:1 41:6
**likely** [1] 35:4
**limitations** [1] 14:7
**line** [2] 34:13 40:11
**lining** [1] 33:6
**list** [1] 32:22
**listen** [3] 17:23 37:17,21
**listened** [3] 17:15 31:6 32:18
**listening** [1] 34:2
**literally** [2] 33:1 34:10
**litigant** [1] 8:16
**litigated** [1] 8:16
**litigation** [1] 8:13
**little** [8] 9:12 12:4 13:2,24 38:19 39:12 40:1 43:8
**live** [2] 20:3 41:12
**lob** [1] 22:21
**location** [1] 23:14
**logical** [2] 40:13 45:3
**long** [5] 9:22 19:8 33:12,17 38:11
**look** [6] 27:14 31:21 32:24 36:3 38:15 41:19
**looked** [2] 35:21 40:9
**looking** [9] 7:1,2 20:15 24:21 28:19 38:20 39:25 40:7 43:5
**lose** [1] 35:18
**lot** [4] 9:10 10:18,19 39:24
**lower** [1] 25:21
**lured** [1] 36:9

## M

**ma** [1] 33:2
**machine** [1] 20:2
**made** [16] 9:21 11:17 13:22 14:9 17:9,16,19,21 20:20 21:2,15 32:5 34:4 39:19 40:9,13

**main** [1] 24:3
**manager** [2] 20:22 33:6
**managers** [1] 33:22
**many** [3] 10:11 29:4 44:25
**margin** [1] 23:12
**marissa** [1] 5:14
**market** [3] 23:17,20 26:25
**marketing** [4] 11:20 29:5, 6 30:15
**markets** [1] 25:15
**mass** [4] 5:17 8:7,15,24
**massachusetts** [17] 4:6 6:16 11:20 13:6,9,10,18 15:25 16:20 17:17 20:5 21:3 25:16 28:24 31:12 35:16 43:19
**materials** [1] 44:1
**math** [1] 22:21
**matter** [4] 14:14 30:19 43:25 44:16
**maximum** [1] 40:20
**mean** [4] 11:19 15:4 40:6 45:2
**means** [2] 8:16 23:16
**measure** [2] 8:13 40:7
**measures** [4] 31:1,4,11, 13
**members** [1] 12:13
**merits** [6] 6:9 7:13 16:25 35:5 37:2 41:6
**message** [1] 14:15
**met** [2] 31:5 39:2
**middle** [3] 7:6 13:16,16
**might** [6] 16:20 29:16,21 37:17 42:25 44:20
**million** [6] 6:17 11:12,17 12:3 22:22,22 36:3 40:8,24
**mind** [1] 7:6
**minimum** [2] 12:5,6
**minutes** [1] 5:6
**misconduct** [1] 30:3
**misled** [1] 9:24
**misrepresentation** [2] 17:9 18:1
**misrepresentations** [2] 10:5 17:24
**missed** [2] 5:9 7:25
**mistake** [1] 19:4
**mistakenly** [1] 18:12
**monday** [3] 14:17 15:10

44:17
**money** [11] 7:3 10:8 13:7 15:24 16:10,17,23 23:17 38:6,17 39:22
**moneys** [1] 11:7
**month** [7] 22:9,9 26:15,15, 24,24 35:19
**months** [2] 25:21 38:15
**moreover** [1] 36:10
**morning** [12] 4:11,12,13, 14,20,23 5:2,3,16,19,20 15:15
**most** [1] 20:6
**motion** [11] 4:17 11:5 12:25 18:14 19:6 22:2 32:11, 11 43:3,5 44:1
**motions** [1] 40:8
**movement** [1] 38:17
**ms** [17] 4:23 5:3,11,13 13:20 17:8,14 29:11 32:16 36:22 37:23 41:25 42:3,14,17, 19 43:10
**much** [7] 5:25 6:24 7:18 24:23 25:2 31:17 45:13
**multiple** [1] 17:6
**multiplier** [1] 40:25
**murtishi** [5] 27:21,22 28:21 33:2,3
**myself** [1] 41:18

## N

**nail** [1] 8:5
**named** [2] 5:15 28:11
**nathan** [1] 4:8
**national** [10] 11:8 12:2 13:8 16:23 18:4 23:9,21 36:11 38:17 41:13
**nearly** [1] 11:17
**necc** [1] 7:19
**need** [14] 6:11 7:12,18 8:14 12:8 39:7,8,12 41:5 42:9 43:13,23 44:25 45:7
**needed** [1] 40:12
**needs** [3] 8:19 16:1 39:12
**negotiate** [1] 15:5
**net** [3] 35:22 36:3 40:3
**next** [3] 7:22 41:20 44:17
**nickel** [1] 6:18
**nine** [1] 26:12
**nonetheless** [1] 40:16

*DH Reporting Services, Inc. (781) 575-8000*

**normally** [1] 45:6
**nose** [1] 34:5
**notable** [1] 34:8
**noted** [1] 9:9
**notes** [1] 29:8
**nothing** [7] 7:5 9:14 31:2 34:10 39:24
**notice** [3] 14:1 15:7 22:13
**notion** [1] 7:10
**notwithstanding** [1] 35:6
**nstar** [1] 38:17
**number** [6] 6:20 19:25 27:3 36:3,5 40:24
**numbers** [2] 35:12 41:1

# O

**objections** [1] 41:3
**october** [1] 14:15
**odd** [2] 16:5,19
**offer** [4] 14:9,11,13,16
**offered** [1] 38:5
**officer** [2] 4:3 45:14
**often** [1] 26:15
**okay** [8] 5:11 13:3,12 42:17,19 43:10 44:4 45:14
**old** [1] 18:8
**once** [1] 39:10
**one** [24] 6:3 7:9,18 9:21 16:4 17:5,8 18:8,23 21:2 27:11 28:22 29:22 31:18 32:19 34:13,13 36:21,21,21 38:8 39:7 41:9 43:14
**only** [10] 7:11 11:13 13:13 15:14 22:25 27:14 36:3 37:7 41:21 44:7
**operating** [1] 13:18
**operator** [1] 20:3
**opponent** [1] 33:14
**opposed** [2] 41:10 43:1
**opposition** [3] 11:5 18:14 22:2
**order** [14] 4:2 6:10 8:18 11:25 12:15 38:16 41:12 42:4,6,10,11,15 43:7,7
**ordered** [1] 22:9
**other** [12] 12:12 18:1 19:12 20:17 23:5,15,21 24:3 26:25 27:16 34:12 36:9
**others** [1] 37:5

**otherwise** [2] 6:7 13:10
**ourselves** [3] 16:5,24 25:10
**out** [14] 7:1,2,5 10:21,24 11:9 15:11 17:16,17 31:17 38:23 43:22,24 44:18
**outset** [2] 38:22 45:2
**outside** [2] 30:4,6
**over** [5] 10:8 11:10 25:23 30:23 35:21
**overall** [1] 25:16
**overcharge** [2] 35:22 40:3
**overhead** [1] 23:4
**overtime** [1] 11:8
**own** [4] 10:13 25:8 31:3 41:1
**owned** [1] 28:21

# P

**package** [3] 26:20,20 27:2
**packages** [1] 31:9
**pages** [1] 17:4
**paid** [1] 23:25
**paper** [2] 34:5 35:7
**papers** [4] 5:24,25 15:10 18:13
**paragraph** [2] 11:3 24:21
**part** [2] 26:21 31:7
**particular** [3] 17:9 18:4 30:9
**particularly** [1] 38:19
**parties** [7] 6:3 15:5 37:10 39:3 41:17,24 43:13
**parties'** [1] 6:25
**partner** [1] 4:16
**party** [2] 11:13 37:4
**pass** [1] 23:19
**path** [3] 8:1 10:17 11:23
**pause** [1] 20:1
**pay** [10] 11:11,12,21 12:5,15,19 15:22 24:19,23 25:2
**paying** [1] 25:4
**payment** [2] 11:7 42:8
**pays** [1] 23:14
**penalties** [5] 6:16 40:16,18,18,19
**penalty** [1] 10:23
**pending** [1] 4:16
**people** [7] 12:10,11,12,12,

12 18:6 35:14
**percent** [8] 17:18,21 18:22,24 21:23 22:19 28:22 35:18
**perfect** [1] 44:6
**perhaps** [1] 24:25
**period** [2] 22:15 41:13
**permanently** [1] 45:5
**person** [3] 10:10 20:4 37:20
**personal** [1] 44:15
**persuaded** [2] 6:13,24
**persuasive** [1] 40:13
**phone** [4] 14:15 19:17 20:8 27:3
**pick** [1] 39:4
**picked** [2] 18:6 26:12
**piece** [2] 34:5 35:7
**place** [1] 31:13
**placed** [1] 21:2
**plaintiff** [1] 8:22
**plan** [1] 22:7
**planning** [1] 11:23
**plans** [2] 22:6 35:15
**play** [1] 41:5
**players** [1] 5:14
**pleadings** [4] 9:11 16:19 17:13 31:3
**please** [1] 43:9
**point** [4] 28:10 31:19 35:14 43:19
**pointed** [1] 27:9
**points** [1] 37:23
**policies** [1] 8:11
**policy** [1] 8:10
**poor** [2] 28:21 30:12
**positions** [1] 6:25
**possession** [1] 11:8
**possible** [2] 15:19 43:1
**potentially** [1] 28:11
**practical** [2] 42:23 43:2
**practices** [1] 31:13
**prefer** [1] 25:14
**preliminary** [6] 6:6,7,23 11:6 43:12 44:23
**prepared** [1] 16:25
**presentation** [1] 32:20
**prevailing** [1] 37:1
**preview** [1] 38:13
**price** [2] 23:8,19

**prices** [1] 25:16
**pricing** [1] 23:6
**principal** [3] 30:22,24,25
**principals** [2] 33:22 35:1
**principle** [1] 10:16
**private** [2] 8:13 15:5
**pro** [2] 4:17 12:25
**probably** [1] 28:20
**problem** [5] 22:17,23 42:20 43:3,9
**problematic** [1] 18:19
**problems** [1] 31:22
**procedures** [1] 31:13
**process** [9] 8:11,20 12:1 18:15 20:9 22:3 34:11 37:9 43:16
**processes** [1] 7:3
**produced** [3] 21:17 31:8 36:1
**product** [7] 22:8,11,12,15,25 23:1 36:9
**products** [1] 10:7
**profit** [2] 23:3,12
**profitable** [2] 12:18 43:23
**program** [1] 31:9
**proof** [1] 6:4
**proposal** [1] 13:22
**propose** [1] 39:3
**proposed** [3] 13:5,15 38:4
**proposing** [2] 16:2 31:20
**proprietary** [1] 8:13
**protection** [1] 20:17
**prove** [4] 39:17 40:22,23,24
**provide** [11] 6:23 12:6,8,16 32:13,17 33:15 34:22 36:13 43:17 44:8
**provided** [6] 25:19 26:14 30:17 31:9 34:9 44:2
**providing** [2] 11:23 41:14
**provisions** [1] 8:23
**public** [6] 6:10 7:8,21 8:12 23:1,2
**purchases** [1] 23:20
**purposes** [1] 40:12
**put** [13] 7:1 9:9 10:23 11:8 25:17 30:11,12 31:21 36:16,25 38:23 43:7,22
**putting** [2] 10:21 15:3

**Sheet 6**

## Q

**qa** [1] 34:11
**qualifications** [1] 24:13
**quality** [4] 18:6 31:4,8 37:
9
**quantify** [2] 39:20 40:2
**question** [1] 35:4
**questions** [3] 32:17 35:11
36:15
**quickly** [1] 41:2
**quite** [1] 9:12

## R

**random** [1] 31:6
**rarely** [1] 40:15
**rate** [25] 17:25 18:1 21:23,
25 22:10,12,13,25 23:3,3,
11 25:21 26:15,22,24,25
32:23,23,24 34:7,17 35:13,
13,15 36:13
**rates** [9] 25:7,20,22 26:13,
14,16,18 27:4,4
**rather** [3] 7:4 28:22 45:1
**read** [6] 5:25 7:14 38:24 39:
11,12,18
**reading** [4] 8:23 34:6,16
40:3
**real** [1] 34:1
**realities** [1] 43:6
**really** [2] 7:25 10:12
**reason** [2] 18:5 34:11
**reasonable** [10] 7:13 8:21
10:17 13:15,16 23:3,3 31:1,
11,13
**reasonably** [4] 15:19 35:4
42:23 43:2
**reasons** [2] 34:12 39:7
**re-assert** [1] 43:17
**received** [1] 10:10
**recess** [1] 45:16
**recollection** [1] 10:11
**reconvene** [1] 39:4
**record** [2] 19:7 33:18
**recording** [2] 32:13 34:3
**recordings** [18] 9:14 10:4
17:15,16,23,24,24 18:5,18,
21 19:12 21:4 32:18,19 35:
2 37:3,6,8
**records** [2] 10:9 22:18

**recover** [4] 8:22 23:11,12
41:1
**recovered** [1] 23:13
**recovering** [2] 23:7,17
**recovery** [1] 6:15
**red** [1] 33:6
**reduction** [6] 17:25 18:1
32:23,24,24 36:13
**reductions** [2] 34:7,17
**redundant** [1] 10:12
**referencing** [1] 8:8
**referring** [1] 33:21
**reflect** [1] 8:23
**reflects** [1] 11:16
**refutes** [1] 25:22
**regard** [1] 11:3
**regularly** [1] 31:5
**regulated** [2] 23:20,20
**regulatory** [1] 20:21
**rejecting** [1] 14:16
**related** [1] 23:23
**relates** [1] 28:9
**reliable** [1] 23:24
**relief** [9] 6:23 8:14 32:8 38:
14 39:2,5 43:22,24 44:23
**remind** [1] 26:4
**represent** [3] 27:16,18,23
**representations** [1] 18:2
**representative** [1] 35:20
**representatives** [2] 17:4
32:13
**represented** [2] 13:19 28:
19
**representing** [1] 28:20
**request** [4] 32:8 34:3 43:
17 44:7
**requested** [1] 34:20
**requirements** [1] 8:13
**rescinded** [2] 18:9 34:15
**resolve** [3] 7:18 14:4,12
**resolved** [1] 7:19
**respect** [2] 6:12 41:14
**respectfully** [1] 16:11
**respects** [1] 44:25
**respond** [3] 15:11,19 32:4
**response** [3] 13:13,23 15:
11
**responsible** [1] 30:1
**restrain** [2] 41:13 42:4
**restraining** [1] 8:18

**restrains** [1] 38:16
**restraint** [1] 38:20
**result** [1] 10:22
**resulted** [1] 17:20
**resume** [1] 39:25
**retail** [1] 25:13
**return** [1] 23:3
**returns** [3] 12:7 43:18 44:
8
**review** [3] 32:19 41:17,18
**reviewed** [1] 31:5
**revision** [1] 41:16
**ringing** [1] 20:9
**ringless** [7] 19:15,15,21
20:7,14,16 21:14
**rise** [2] 4:3 45:15
**road** [4] 2:40 7:6 13:16,16
**rob** [1] 20:22
**robbery** [1] 10:3
**robert** [1] 33:5
**robocall** [2] 19:22,24
**robocalls** [4] 19:13,14 20:
5 21:18
**room** [1] 43:8
**rosenbleet** [2] 5:1,3
**routine** [1] 37:22
**running** [1] 12:11

## S

**safe** [1] 31:11
**sale** [5] 17:20 18:9 23:17,
20 34:14
**salera** [2] 17:14 32:16
**salera's** [2] 21:5 31:8
**sales** [3] 17:21 18:10 32:
20
**same** [8] 8:23 12:10,11 16:
3 28:25 38:23 39:18 41:4
**sample** [1] 34:20
**sat** [1] 14:13
**sates** [1] 26:22
**savings** [1] 36:2
**saw** [1] 5:24
**saying** [9] 15:1 24:18,24
31:18 32:9 36:12,22 40:11,
23
**saylor** [1] 7:19
**says** [13] 8:8 11:6 15:21 22:
4 24:6,15,20,22 25:14 30:
14 33:2 34:14 36:16

**scant** [1] 27:7
**schedule** [3] 41:23 44:15
45:4
**scheduled** [1] 44:16
**scope** [3] 30:4,6,21
**script** [16] 29:4,5,10,10,14,
22 32:14 33:1,2,6 34:6,7,
16 35:4,6,8
**scripts** [5] 10:8 29:6 30:9,
15,16
**seamans** [1] 4:25
**seasonably** [1] 19:10
**seated** [1] 4:4
**second** [3] 21:22 22:23 43:
25
**secure** [3] 15:23 22:11,14
**secured** [1] 11:22
**security** [1] 10:18
**see** [3] 13:16 17:12 22:1
**seeking** [3] 6:17 8:18 16:
16
**seeks** [2] 6:6
**seem** [2] 24:24 29:12
**seemed** [1] 40:4
**seems** [4] 7:17 8:22 9:15
39:25
**seen** [3] 5:25 35:24 41:17
**seize** [1] 38:7
**self-serving** [3] 9:15 34:
25 35:1
**sell** [1] 13:9
**selling** [1] 16:20
**sense** [2] 40:9,14
**sent** [1] 15:12
**sentence** [1] 44:11
**september** [1] 14:9
**series** [1] 13:25
**seriously** [4] 9:25 29:1,2,
3
**served** [1] 27:20
**service** [6] 24:10 25:5,21
26:15 36:6,9
**session** [1] 4:4
**set** [1] 5:5
**sets** [1] 40:17
**settlement** [1] 6:12
**seven** [2] 27:14 35:18
**several** [1] 32:25
**shaina** [1] 4:25
**shareholders** [2] 11:18

*DH Reporting Services, Inc. (781) 575-8000*

12:9

**she's** [1] 32:16

**shoretech** [1] 27:24 37:4

**short** [4] 9:8 38:14 41:13, 15

**shouldn't** [1] 9:25

**shouldn't** [3] 29:1 34:17 36:11

**show** [5] 6:9,11 18:17 27: 13 31:4

**showed** [2] 19:3 34:9

**showing** [1] 8:19

**shown** [2] 16:14 27:8

**side** [1] 8:20

**sides** [1] 6:25

**signed** [1] 35:15

**significant** [3] 9:9 11:22 15:22

**simple** [1] 22:8

**simpler** [1] 8:15

**simply** [4] 13:23 23:24 24: 16 26:17

**since** [4] 13:18,19,20 20: 15

**single** [4] 9:23 32:13,15,19

**sitting** [1] 7:20

**situation** [5] 14:4 16:5,24 25:10 38:6

**six** [2] 27:14 35:18

**size** [1] 34:20

**skills** [1] 22:21

**smith** [2] 17:8 36:22

**sold** [2] 23:1,2

**sole** [1] 23:16

**somebody's** [2] 19:24 20: 8

**somehow** [1] 21:22

**someone** [2] 9:23 10:2

**someone's** [1] 19:16

**sometime** [1] 41:20

**sometimes** [3] 15:6 23:15 32:21

**somewhere** [1] 35:7

**soon** [3] 42:23 43:1,1

**sooner** [2] 41:11 45:1

**sorry** [2] 5:10 23:18

**sort** [3] 6:2 18:11 43:17

**sought** [7] 6:17 16:6,8,11, 13,16,17

**sounds** [1] 44:18

**specific** [1] 27:9

**spreadsheets** [1] 35:24

**spring** [1] 26:8

**stage** [2] 5:5 28:18

**stages** [1] 38:12

**stakes** [1] 14:12

**stand** [2] 38:5 39:17

**standard** [10] 6:4,5 7:24 8: 6,12,21,24 16:12 31:15 39: 2

**standards** [1] 18:7

**stands** [1] 45:16

**starion** [32] 4:6,15,22 11:9 12:24 13:5,19 15:21 17:7, 25 18:3 22:6,7,7,11,14 24: 10 29:23 30:20 31:4,11 32: 13,25 33:6 35:14 36:7 37:7, 7,16,18,21 44:12

**starion's** [11] 11:5,7 18:2, 7 21:2,23,25 22:25 26:25 29:25 33:21

**start** [1] 31:19

**started** [1] 11:19

**state** [1] 12:7

**stated** [1] 17:6

**statement** [1] 16:19

**statements** [4] 9:16 32:23 34:25 35:1

**states** [1] 20:17

**statute** [5] 8:9 14:7 16:7, 13,15

**statutes** [1] 40:17

**steiner** [2] 25:18,24

**steiner's** [1] 11:4

**step** [1] 7:22

**steps** [1] 30:22

**still** [3] 6:17 30:24 38:24

**stipulation** [2] 13:5 38:4

**stop** [2] 16:17,20

**stopping** [1] 42:8

**straight** [2] 22:8 23:19

**study** [2] 25:12 27:13

**subject** [2] 34:13 41:16

**submission** [4] 9:10,15 26:21 32:24

**submit** [3] 19:6 25:12 37:1

**submitted** [5] 17:14,17,22 19:13 31:7

**subsequent** [2] 41:16 43: 16

**subsequently** [1] 22:12

**subtract** [1] 23:25

**succeed** [1] 35:5

**success** [3] 6:9 7:13 41:6

**suffered** [1] 17:10

**suggest** [3] 10:23 32:25 37:6

**suggested** [1] 14:5

**suggesting** [1] 35:3

**suggestion** [1] 20:25

**suit** [1] 14:17

**summarizing** [1] 28:20

**supervisor** [1] 37:15

**supplier** [1] 23:6

**supply** [7] 22:25 23:8,10 24:1,10 25:13,16

**support** [1] 22:16

**supported** [1] 45:3

**supposed** [1] 30:22

**supposedly** [2] 16:9 17: 22

**surfaced** [1] 9:23

**sylvan** [1] 2:40

**systems** [1] 42:7

---

**T**

**tab** [1] 29:11

**tactics** [2] 14:19,20

**tape** [1] 10:3

**tax** [3] 12:7 43:18 44:8

**technology** [1] 20:11

**telelink** [3] 27:23 28:3 37: 4

**telemarketers** [7] 21:2 28:11 29:23 30:16 31:5,14 37:4

**telemarketing** [7] 27:5 30:9 31:9 32:6 37:14,16 40: 18

**telemarking** [1] 28:22

**telephone** [1] 20:17

**teleshores** [1] 37:4

**telestars** [1] 27:23

**temporary** [2] 39:5 42:4

**ten** [6] 15:7 17:16,17 25:19 26:12,14

**tenth** [1] 15:8

**term** [1] 38:14

**terminate** [1] 24:10

**termination** [1] 24:12

**terms** [5] 26:21 34:20 35: 12 36:5 43:16

**test** [1] 38:25

**testified** [1] 35:17

**testimony** [8] 10:2,6,10 23:24 24:11,15 25:9,19

**that's** [27] 5:11 7:3 13:14 16:21 17:18,20 18:24 20: 11 21:7 23:2,19 25:17 26: 20,21 29:11 30:11,20 31: 11 34:2,4 36:16 39:5,14 40: 20 42:8 44:16 45:1

**themselves** [1] 24:5

**there's** [29] 6:9 7:12 9:12, 13,13,14 10:19,23 11:2 12: 1 17:8,23 18:1 20:1,1,2,19, 24 21:14 24:12 25:11,15 27:9,10 29:8 35:4,23 36:21 39:14

**there's** [1] 12:1

**thesis** [1] 25:22

**they're** [16] 6:17 11:21 12: 1 14:20 16:10,20 18:3 19: 14,15 23:23 24:25 25:4,5 28:19 37:12 40:19

**they've** [10] 6:8 20:3,15 27: 9 34:2,11 35:21 36:25 39:1 40:23

**thinking** [1] 8:23

**third** [2] 37:4,9

**though** [1] 33:14

**thoughts** [1] 43:12

**thousands** [1] 17:4

**three** [5] 12:3 14:1 17:3 34: 8 36:25

**till** [1] 28:23

**timeframe** [1] 15:19

**today** [11] 5:24,25 7:1,20 11:23 19:6 27:19 32:8 40: 12 41:12 42:5

**together** [2] 30:12 36:25

**token** [2] 38:24 39:18

**tolling** [2] 14:6,8

**took** [4] 18:23 25:19 31:11, 12

**total** [1] 24:19

**training** [2] 30:17 31:9

**transaction** [5] 17:5 27:9 36:21,21 38:8

**transcript** [1] 26:9

---

**Sheet 8**

*DH Reporting Services, Inc. (781) 575-8000*

**transfer** [1] **13**:10
**transferred** [1] **28**:23
**transparent** [1] **45**:10
**trial** [2] **34**:23 **41**:22
**trials** [1] **39**:15
**true** [1] **30**:20
**truncated** [1] **45**:4
**trustee** [8] **5**:15,18 **7**:3,3 **8**: 11,20 **11**:25 **18**:15
**trying** [1] **42**:12
**tuesday** [1] **44**:17
**turn** [1] **35**:18
**two** [12] **5**:9 **8**:23 **18**:23 **27**: 18 **28**:1 **38**:12 **39**:7,8 **40**:17 **42**:22 **43**:15 **45**:5
**typically** [3] **19**:25 **20**:8 **24**: 22

## U

**un** [1] **37**:12
**unavailable** [1] **41**:21
**under** [8] **8**:21 **20**:5 **31**:12, 12 **34**:4 **38**:11 **40**:16 **45**:4
**underlies** [1] **6**:13
**underlying** [1] **6**:15
**understand** [7] **18**:10 **20**: 10 **24**:16 **39**:14 **41**:3 **43**:6 **45**:9
**understanding** [1] **12**:2
**unfortunately** [1] **11**:13
**unless** [5] **6**:7 **7**:24 **14**:16 **37**:8,12
**unlike** [1] **16**:5
**until** [2] **37**:11 **38**:18
**unusual** [3] **14**:25 **15**:1 **16**: 4
**up** [12] **18**:6,6,17 **19**:2 **25**: 22 **26**:13,17 **27**:3 **29**:21 **32**: 22 **35**:15 **40**:19
**urgently** [1] **18**:11
**using** [2] **32**:14 **33**:1
**utilities** [2] **43**:6 **45**:5

## V

**variable** [10] **21**:23,25 **22**: 8,10,11,13 **26**:23,24 **35**:13 **40**:3
**various** [1] **35**:15
**victim** [1] **9**:23
**view** [4] **6**:19 **7**:21 **8**:15 **40**:

5
**violate** [1] **20**:16
**violated** [1] **39**:16
**violation** [5] **6**:10 **14**:2 **16**: 13,15 **40**:16
**violations** [6] **15**:7 **16**:7,9 **27**:8 **40**:24,25
**voicemail** [6] **19**:15,16,21 **20**:7,8,10
**voicemails** [5] **19**:15 **20**: 12,14,16 **21**:14

## W

**waksler** [3] **4**:14,15,19
**walk** [1] **7**:2
**wanted** [3] **14**:17 **16**:21 **45**: 9
**wants** [2] **38**:7 **43**:21
**wasn't** [1] **20**:24
**way** [5] **6**:21 **12**:1 **14**:4 **16**:3 **39**:9
**we'd** [1] **35**:4
**we'll** [1] **16**:2
**we're** [14] **5**:13,13,14 **7**:10 **10**:18,18 **13**:23 **16**:2 **17**:25 **18**:2,3 **19**:6 **39**:4,22
**we've** [7] **5**:23 **15**:18 **21**:5 **26**:14 **27**:14 **30**:11 **38**:5
**wednesday** [1] **44**:17
**week** [6] **12**:16,16 **41**:20 **44**:17,20 **45**:7
**weeks** [1] **14**:13
**welcome** [3] **26**:20,22 **27**: 2
**weren't** [1] **20**:22
**what's** [1] **7**:21
**whatever** [1] **38**:18
**whether** [8] **6**:20,22 **7**:12 **14**:3 **18**:4 **20**:16 **39**:1 **40**:22
**who's** [4] **7**:11 **25**:18 **27**:10, 12
**whoever** [1] **28**:4
**whole** [2] **23**:17 **39**:24
**wholesale** [4] **23**:17,20 **24**: 1,1
**wife** [1] **28**:23
**wiggle** [1] **43**:8
**wildly** [1] **27**:14
**will** [12] **4**:18 **6**:24 **7**:17 **10**: 22 **11**:8 **15**:8 **38**:12 **41**:12,

13,15 **42**:6,22
**willing** [2] **32**:17 **33**:15
**win** [2] **43**:21,21
**wise** [1] **42**:16
**within** [1] **42**:22
**without** [3] **14**:11 **20**:8 **38**: 8
**witness** [1] **35**:10
**witnesses** [1] **35**:1
**woman** [1] **18**:8
**wondering** [1] **44**:19
**word** [3] **9**:4 **12**:21 **40**:6
**words** [2] **11**:10 **30**:13
**work** [2] **10**:7 **28**:24
**worked** [1] **15**:10
**works** [1] **20**:11
**world** [2] **34**:1 **37**:6
**wouldn't** [2] **24**:8 **43**:22
**wrongdoing** [1] **17**:22
**wrote** [1] **34**:10

## Y

**year** [4] **14**:2,10 **18**:8 **26**:5
**years** [7] **10**:11 **12**:7 **14**:1 **17**:3 **25**:8 **36**:25 **43**:18
**yesterday** [1] **15**:11
**you'd** [2] **35**:2,11
**you'll** [4] **6**:8 **12**:21 **19**:25 **22**:1
**you're** [5] **19**:1 **21**:20 **33**: 12 **41**:10 **42**:12
**you've** [1] **9**:22
**yourselves** [1] **4**:7

## Z

**zdebski** [58] **4**:16,20,21,25 **12**:23,24 **13**:5,13 **14**:19,24 **15**:1,9 **18**:21 **19**:3,9,12,20, 23 **21**:9,12,20 **24**:20 **25**:2 **26**:2,5,8,12 **27**:18,22,25 **28**: 6,9,15,17 **29**:2,13,18,20,22 **30**:2,4,8,11,25 **31**:25 **32**:5 **36**:16,18,20 **37**:12,15,20, 24 **38**:2 **44**:15,19 **45**:9,12
**zdebski's** [1] **35**:9